IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

HAROLD CUNNINGHAM, ET AL,            )
                                     )
              Plaintiffs,            )
                                     )
       vs.                           )      1:12-cv-01570-RPM-MEH
                                     )
FEDERAL BUREAU OF PRISONS, ET AL.,   )
                                     )
              Defendants.            )
_____

MOTION HEARING
TRANSCRIPT OF PROCEEDINGS
_____

          Proceedings held before the HONORABLE RICHARD P.

MATSCH, U.S. District Judge for the District of Colorado,

beginning at 1:57 p.m. on the 1st day of November, 2013, in

Courtroom A, the States Courthouse, Denver, Colorado.


APPEARANCES

For the Plaintiffs:          Edwin Packard Aro, Esq.
                             Arnold & Porter LLP-Denver
                             370 Seventeenth Street
                             Suite 4400
                             Denver, CO  80202-1370

                             Maurice Abraham Leiter, Esq.
                             Arnold & Porter LLP-Los Angeles
                             777 South Figueroa Street
                             44th Floor
                             Los Angeles, CA  90017-5844


          Proceedings recorded by electronic sound recording;
          transcript produced by transcription service.

APPEARANCES (Continued)

For the Plaintiffs:          Robert Paul Taylor, Esq.
                             Meredith Esser, Esq.
                             Arnold & Porter LLP-San Francisco
                             Three Embarcadero Center
                             7th Floor
                             San Francisco, CA  94111-4024

For the Defendants:          Amy L. Padden, Esq.
                             U.S. Attorney's Office-Denver
                             1225 17th Street East
                             Suite 700
                             Denver, CO  80202

                             Marcy Elizabeth Cook, Esq.
                             U.S. Attorney's Office-Denver
                             1225 17th Street East
                             Suite 700
                             Denver, CO  80202

1          P R O C E E D I N G S

2          (At 1:57 p.m. on November 1, 2013, in the United States

3    District Court at Denver, Colorado, before the HONORABLE

4    RICHARD P. MATSCH, U.S. District Judge, with counsel for the

5    parties present, the following proceedings were had:)

6          THE COURT:  Please be seated.  Good afternoon.

7               We are here in Civil 12-cv-1570, Harold Cunningham

8    and others, including the Center for Legal Advocacy, against

9    the Federal Bureau of Prisons.  We are here on the

10   plaintiffs' motion for partial summary judgment on the issue

11   of the Center's ability to proceed here on behalf of unnamed

12   plaintiffs, which has been fully briefed.

13              So I'll call for the entry of appearances here.

14              So, Mr. Leiter.

15         MR. LEITER:  Good afternoon, Your Honor, Maury Leiter

16   from Arnold and Porter on behalf of the plaintiffs.

17         THE COURT:  Mr. Aro.

18         MR. ARO:  Good afternoon, Your Honor.  Ed Aro also from

19   Arnold and Porter for the plaintiffs.

20         THE COURT:  And, Mr. Taylor.

21         MR. TAYLOR:  Robert Taylor (inaudible).

22         THE COURT:  All right.  And Ms. Padden and Ms. Cook.

23         MS. PADDEN:  Good afternoon, Your Honor.

24         THE COURT:  Good afternoon.

25              Now, I guess from the briefing that I have seen,

1   the Bureau of Prisons, as I understand it, Ms. Padden, is not

2   going to--or is in no position to challenge the factual

3   statement that the Center makes that there are no federal

4   grant monies being used to--have been used or will be used to

5   prosecute this matter; right?

6       MS. PADDEN:  Yes, Your Honor, we have the 2014 grant,

7   and that's correct that we don't have the documentation for

8   2013, but we're relying on the representations of counsel.

9       THE COURT:  But, as I understand it, plaintiff's really

10  not challenging that.  It's a restriction by regulation, I

11  guess, that comes through the OMB as opposed to the statutory

12  restriction.  But you're not challenging that, as I

13  understand it.

14      MR. LEITER:  Well, Your Honor, what we are challenging,

15  of course, is--

16      THE COURT:  Why don't you come on up?  You're going to

17  argue the motion; right?

18      MR. LEITER:  Yes, Your Honor.

19      THE COURT:  So--

20      MR. LEITER:  Thank you.

21      THE COURT:  Sure.  Well, my understanding is that you

22  are representing that federal grant monies are not going to

23  be used.

24      MR. LEITER:  Federal grant money is not going to be

25  used.

1          THE COURT:  Okay.

2          MR. LEITER:  And we believe, at most, that section that

3     the Government points to, Section 10804 (phonetic), at most,

4     would impose a restriction on use of federal funds for an

5     associational plaintiff here.

6          THE COURT:  Yeah.  But, actually, the restriction comes

7     through a regulation as opposed to the statute itself,

8     doesn't it?

9          MR. LEITER:  The statutory language says that federal

10    funds may be used for representation of individuals who seek

11    representation.

12         THE COURT:  Yeah.

13         MR. LEITER:  The OMB regulation seems to say the

14    opposite of that.  And to the extent that that's what the OMB

15    regulation says, our position would be the OMB regulation

16    misinterprets the statute, and the Court should focus on the

17    statute.

18         THE COURT:  But, at any rate, we don't have to worry

19    about it.

20         MR. LEITER:  But, in any event, it should not be an

21    issue here, because federal funds are not being used.

22         THE COURT:  Right.  So we have a briefing on the

23    questions that are raised here dealing with the standing to

24    represent people who have mental disabilities but who have

25    not requested representation.  That's the primary issue.  And

1  then we have the question of--well, you're not really

2  contending that the Center can represent the people in what

3  you're calling the subclass, the diagnosis and screening

4  class--

5        MR. LEITER:  Because--

6        THE COURT:  --because those would include people without

7  mental disabilities.

8        MR. LEITER:  That's correct, Your Honor.  And that's why

9  we are treating the diagnosis screening class as separate--

10       THE COURT:  Right.

11       MR. LEITER:  --from CLA's representation.

12       THE COURT:  Okay.  So we've got extensive briefing, but

13  I'll hear from you.

14       MR. LEITER:  Thank you, Your Honor, and I will be brief.

15  The issue here, of course, is very narrow, because the

16  Government does not challenge the two constitutional prongs

17  of the Hunt test.

18       THE COURT:  Right.

19       MR. LEITER:  The only prong that they challenge is the

20  Prudential prong.  And the issue really is even more narrow

21  than that.  It's whether Section 10804 takes away the ability

22  of CLA to proceed as an associational plaintiff.  And the

23  reason I say take away is that there is no real dispute here

24  that CLA actually satisfies the prong, the Prudential prong,

25  of the test that neither the claims nor the relief require

1   the participation of each individual CLA member.  That's

2   undisputed.

3        It's also undisputed that there is case law, which

4   finds that congress intended P&A systems like CLA to proceed

5   as an associational plaintiff.

6        THE COURT:  The Ninth Circuit.

7        MR. LEITER:  The Ninth Circuit and other courts as well,

8   Your Honor.  And where those courts find that congressional

9   intent is not in Section 100804 (phonetic), the allotment

10  section.  It's the next section, 10805, which specifically

11  holds that a P&A system has the authority--and this is

12  Section (a)(1)(b)--

13       THE COURT:  Right.

14       MR. LEITER:  --has the authority to pursue legal and

15  other remedies.  Now, while the cases that have interpreted

16  that statute in the past have been cases in which a P&A was

17  suing a state institution, not a federal institution, there

18  is nothing in the language of the statute or in the analysis

19  done by those courts that would lead to a different result

20  under 10805(a)(1)(b) where it's a federal facility as opposed

21  to a state facility.

22       THE COURT:  Although the statute refers to the state.

23       MR. LEITER:  The statute refers to the--the state is

24  the--the entities are set up through the state--

25       THE COURT:  Yeah, so--

1          MR. LEITER:  --but the legal and administrative and

2     other remedies that the CLA or the P&A may pursue are not

3     limited in this section to suits against state authorities.

4          THE COURT:  Okay.

5          MR. LEITER:  So there is nothing in this section of the

6     statute or in the case law that would lead to a different

7     result for a suit against a federal facility as opposed to a

8     suit against a state facility.  So, really, the only thing

9     the Government hangs its hat on is whether the use of

10    allotments provision, Section 10804, somehow takes away

11    congress's grant of Prudential authority and the fact that

12    CLA satisfies the Hunt test.

13          And we submit, Your Honor, that the wording of

14    Section 100804 doesn't support the Government's position.

15    There is nothing there that shows a congressional intent to

16    take away the right of a P&A to sue a federal facility as an

17    associational plaintiff.  At most, as we talked about a few

18    minutes ago, it deals with how federal funds may be used.

19    And in this case, as we've agreed, there are no federal funds

20    being used for purposes of this action.  So we submit that

21    100804 does not take away the congress's granting of that

22    Prudential prong to the CLA.

23          THE COURT:  Okay.

24          MR. LEITER:  Thank you, Your Honor.

25          THE COURT:  Ms. Padden.

1      MS. PADDEN:  Thank you, Your Honor.  The plaintiffs in

2   this case--the CLA in this case has a burden to show that it

3   has standing to proceed as an association.  So I don't think

4   the issue is whether 100804 takes away; it's whether there is

5   anything in the statute that grants its standing to proceed

6   as an association and to proceed against a federal facility

7   as an association.

8          And Hunt's third prong looks at whether the claim

9   asserted and the relief requested requires a participation of

10  individual members; and, respectfully, there is a dispute on

11  that issue.  This is an Eighth Amendment claim presumably.

12  There are actually no claims in the complaint filed on behalf

13  of the CLA, but I presume it would be the same as the Eighth

14  Amendment claim pled in the complaint.

15         And those Eighth Amendment claims are necessarily

16  dependent on the individuals.  The Court is going to need to

17  analyze whether the objective and subjective components for

18  the individual inmates has been met, and that's necessarily

19  going to involve the individuals themselves.  So many of the

20  cases are distinguishable that the plaintiffs have cited,

21  because, for example, some of those cases involved challenges

22  under the AEA; that was the Aiken case or the Oregon case

23  that involved the due process claim.  So I respectfully

24  submit the Eighth Amendment analysis is a bit different.

25         And there are a number of practical consequences

1  for that.  For example, the CLA is required to engage in

2  mediation in an attempt to resolve the claims.  But how can

3  it resolve claims for individuals who have not requested the

4  CLA to represent it and for whom it does not have the consent

5  to represent?

6          So the appropriate procedure to represent

7  individuals who have not requested representation in this

8  case would be for the plaintiffs to seek the certification of

9  a class, but we don't believe the CLA can proceed on behalf

10  of individuals who have not requested or consented to having

11  the CLA represent them.

12      THE COURT:  Which is also--you know, that's in 10804(c),

13  but it's also, as I understand your argument, included within

14  this concept of participation--

15      MS. PADDEN:  Yes.

16      THE COURT:  --because the participation, while they

17  don't have to be plaintiffs as such, they have to have asked

18  for help.  That's your argument; right?

19      MS. PADDEN:  Right.  And they would need to participate

20  in order for these claims to proceed.  For example, we need

21  to be able to serve discovery on the inmates, not on the CLA;

22  and we would need responses to those discoveries from the

23  inmates, not from the--

24      THE COURT:  What is your position on the class

25  certification for screening, diagnosis?

1      MS. PADDEN:  Well, we haven't seen the plaintiffs' brief

2   yet, so I can't say at this point what--

3      THE COURT:  Well, I'm asking you straight out.

4      MS. PADDEN:  Yes.

5      THE COURT:  Suppose we have a certification of a class

6   being everybody who's gone through the door and hasn't been

7   screened, but it is a requirement for screening?

8      MS. PADDEN:  We are not in a position to stipulate to

9   that at this point, Your Honor.  I understand the plaintiffs'

10   briefs were coming, and we'll respond to that.  There may be

11   certain issues that we can agree to in that briefing, but at

12   this point we can't stipulate to the entry of that class.

13      THE COURT:  Well, I'll tell you what bothers me here--

14   well, among the things that bother me--is if I agree with the

15   plaintiffs and they request that it be a 54(b) certification

16   so that it could be reviewed by the Tenth Circuit Court of

17   Appeals right away, that's going to delay things, because who

18   knows how long that process may require.  But I would like to

19   move the case forward on merits.  That runs the risk, I

20   suppose of your client seeking to moot it out by transferring

21   the plaintiffs to Springfield or Rochester or someplace,

22   which then raises the capable-of-repetition argument.

23         So I don't know.  I mean, there is a conflict here

24   in a sense that would benefit plaintiffs to be transferred, I

25   suppose.  On the other hand, transferring them out and

1    mooting this case as we go along would be unjust.

2         MS. PADDEN:  And, Your Honor, I believe this issue came

3    up once before when we met back--

4         THE COURT:  Yeah.

5         MS. PADDEN:  --in the conference room, and my client has

6    no intention of transferring inmates for the purposes of

7    mooting out this case.  However--

8         THE COURT:  So that even if a plaintiff were--or all

9    these plaintiffs--I don't want to foreclose the possibility

10   of some of these folks being transferred.  I mean, that's in

11   their individual interest.  They are not here just to become,

12   you know, part of the lawsuit.  It's their individual health

13   that's of concern to all of us.

14         But perhaps you could agree that it would meet

15   the--this case would meet the requirement of Sosa

16   (phonetic)--or whatever that case that I can't remember the

17   name of--is where the Supreme Court says that if it's capable

18   of repetition and avoid review, there is no mootness.

19         Would you agree with that?

20         MS. PADDEN:  I can't stipulate to that right now, Your

21   Honor, but I'll get the appropriate authority to do so.  But

22   the BOP has been looking at these individuals individually,

23   and some of them have been transferred to Springfield--

24         THE COURT:  I know.

25         MS. PADDEN:  --for evaluations and for treatment.  And,

1   indeed, the new unit at Atlanta that we discussed with Your

2   Honor, that opened this week; and three individuals who are

3   clients of Arnold and Porter but not named plaintiffs of this

4   case have been moved down there to participate in that new

5   program.  But I'm happy to consult with the individuals I

6   need to consult with and then confer with opposing counsel

7   and see what sort of stipulations we can come up with on that

8   ground.

9       THE COURT:  Yeah.  And I don't know that it's necessary

10  to--assuming that the Government agrees to that, I don't know

11  that we need class certification to develop an effective

12  remedy in the case unless--and this is something I've mused

13  about before with you--is we certify a class later on in the

14  case instead of in the beginning so that we don't have to

15  waste a lot of time, resources, and energy on Rule 23

16  proceedings at this time, because, you know, this is getting

17  to be an old case.

18      MS. PADDEN:  I understand, Your Honor, and we also want

19  to move the case along.

20          One other issue that I noticed just last week is

21  that the only claims in the case right now are the claims on

22  behalf of class.  There aren't any claims on behalf of

23  individuals.  So I think that would be another reason why,

24  one way or another, the class issue needs to be resolved

25  sooner rather than later.

1      THE COURT:  Well, I'm assuming you're going to oppose

2  class certification on the treatment class.

3      MS. PADDEN:  Yes.

4      THE COURT:  Yeah.  Okay.  Well, let me hear from

5  plaintiffs' counsel again.

6      MS. PADDEN:  Thank you, Your Honor.

7      THE COURT:  I'm sort of looking at this thing

8  strategically, I guess, in terms of, you know, I don't want

9  to get this case hung up on procedural problems when we want

10  to get on to the merits.

11      MR. LEITER:  And, of course, our interest on the

12  plaintiffs' side is getting this to a decision on the merits

13  as rapidly as we can--

14      THE COURT:  Right.

15      MR. LEITER:  --so that we can get relief to our clients

16  and to everybody at the institution.

17          And let me, if I may, Your Honor, address a couple

18  of points that Ms. Padden raised.

19      THE COURT:  Yes.

20      MR. LEITER:  The first is, she raised the issue of

21  individual participation, which is a little bit of a red

22  herring for the issue that she'll raise in opposition to a

23  class.  This is not a series of claims brought by

24  individuals, each of whose particular issues need to be

25  resolved independently.  The amended complaint clearly

1    alleges that the issue here are the practices and the

2    policies that apply across the board at the institution.

3         THE COURT:  Which affect the named plaintiffs.

4         MR. LEITER:  Which affect the named plaintiffs, which

5    affect all of the CLA constituents, and which, whether CLA

6    proceeds as an associational plaintiff or whether we proceed

7    with class certification, the focus is how the individual

8    cases are evidence of the practices and the policies which

9    need to be the subject of the relief.

10        THE COURT:  Yeah.  You know, it's sort of like disparate

11   impact is, if you want to look for an analogy.

12        MR. LEITER:  And that's exactly the analysis as to why

13   the courts that have addressed P&A associational standing

14   focus on those issues, because it's the policies and the

15   practice.

16             A second issue that I wanted to raise, Your Honor,

17   is the issue of, if Your Honor grants this motion, finds that

18   CLA can proceed as an associational plaintiff, and the

19   Government chooses that it wants to seek prompt Tenth Circuit

20   review of that, it would be our view and our understanding of

21   the law that this case does not need to stop while that

22   happens.

23        THE COURT:  Well, yeah, I don't lose jurisdiction as the

24   result of a 54(b) certification, because the whole theory is,

25   there are multiple claims in the case, and there are multiple

1   parties, and that doesn't deprive--well, unless there is some

2   new precedent that I'm not aware of, that doesn't deprive us

3   of jurisdiction to proceed.

4        MR. LEITER:  Right.  And if Your Honor rules in our

5   favor and if the Government wishes to pursue an appeal, as

6   Your Honor is aware, the reason we are proceeding right now

7   on both tracks--CLA associational standing plus certification

8   of a treatment class when we get there--is to make sure that

9   if at some point down the road the Tenth Circuit disagrees

10  with Your Honor, all of our work won't have gone to waste.

11       But it would be our view that if the Government

12  does decide to take this issue up now, it does not require us

13  to stop in our tracks.  We would move forward with the case.

14       THE COURT:  Well, are you going to also file class

15  certification?

16       MR. LEITER:  We are also going to move for class

17  certification.  Unless and until this issue is finally

18  resolved--

19       THE COURT:  Yes.

20       MR. LEITER:  --we would proceed on both tracks.

21       THE COURT:  So with respect to timing, we have--you

22  know, I grant your motion, the Government has 60 days--and I

23  do a 54(b)--the Government has 60 days to decide to appeal

24  that--and that's two months gone--they go ahead and appeal

25  it, that's indefinite then as to how long before there is an

1  adjudication of that by the appellate court, you know, that

2  could be a year or more.  So are we--in the meantime, are you

3  talking about proceeding with Rule 23?

4      MR. LEITER:  In the meantime, yes, Your Honor, we would

5  proceed with discovery.

6      THE COURT:  Then why bother?  If you're going to do that

7  anyway, sort of a belt and suspenders, I guess, why bother

8  with this?

9      MR. LEITER:  We are hopeful, maybe naively so, that we

10 might get a definitive ruling from the Tenth Circuit in time

11 to give us some certainty as to where we stand.  And, in any

12 event, we always understand the possibility that we could

13 have issues with class certification in the Tenth Circuit.

14     THE COURT:  Right.

15     MR. LEITER:  And this gives us, candidly, another

16 opportunity to get the relief that we think we should get for

17 our constituents and plaintiffs and an increased likelihood

18 that we will survive an appeal in the Tenth Circuit.

19     THE COURT:  Well, as I said, the other thing that

20 worries me is mootness if all of these people were to be

21 transferred.  And I'm not suggesting a tactical maneuver by

22 the Government, although I can't rule it out either.

23         So I would like, Ms. Padden, for you to file

24 something with respect to that as to some sort of a

25 stipulation that there be no mootness upon the transfer of

1    named plaintiffs.

2         MR. LEITER:  And, of course, Your Honor, if we proceed

3    with CLA as an associational plaintiff, that would also

4    address that problem, because the CLA would be an

5    associational plaintiff--

6         THE COURT:  Right.

7         MR. LEITER:  --regardless of whether an individual

8    inmate did or did not get transferred.

9         THE COURT:  Right.  You know, the thing is, I don't

10   think--I think the arguments you've made are persuasive but

11   not knock-outs.  That's the trouble.  And--well, officially

12   we'll take it under advisement.

13        MR. LEITER:  Thank you, Your Honor.

14        THE COURT:  And ask the Government to proceed, if you

15   can, Ms. Padden, with some sort of a stipulation about

16   mootness so we've got that in the record.  I'd like to do

17   that as soon as you can so that, in a sense, I'm armed with

18   that before making a ruling on this.

19             And I guess you've got to proceed, though, on the

20   diagnosis under Rule 23 anyway; right?

21        MR. LEITER:  That's correct, Your Honor.

22        THE COURT:  Okay.  Now, another thing is, you have filed

23   a joint status report about depositions here yesterday.  And,

24   I don't know, do you want me to do something about this, Mr.

25   Aro?

1      MR. ARO:  Your Honor, at the last appearance--I guess it

2  was the scheduling conference--you indicated that you wanted

3  to be intimately involved in the scheduling of depositions.

4      THE COURT:  Yes.

5      MR. ARO:  And so Ms. Padden and I put together the

6  status report to let you know (a) that we were moving

7  forward, (b) that we weren't having any disputes over the

8  scope of the deposition discovery.  And we are happy to

9  report to you on a monthly basis if you'd like.  We thought

10  that it probably wasn't sensible to try to do an entire

11  deposition plan for eight or ten months in advance.

12      THE COURT:  No, I--yeah, I agree.  I think the thing is,

13  are the logistics going to be satisfactory?  Are you going to

14  video these?

15      MR. ARO:  We intend to.

16      THE COURT:  Yeah.

17      MR. ARO:  And we are talking about logistics right now.

18  It sounds to me like we're going to be able to work that out,

19  and hopefully we won't need to come back to see you.

20      THE COURT:  Well, that would be good.  You know, I don't

21  want to be--while I have indicated that I want to follow

22  progress, I don't want to be considered to, you know, have

23  control over how you do it.  I just want to know what's

24  happening so it isn't--I appreciate the status report.  I

25  don't consider it to be something that I need to act on other

1   than having a sort of situational awareness.

2        MR. ARO:  On a going-forward basis, would you like us to

3   let you know on a periodic basis what we're doing--

4        THE COURT:  I don't think that--

5        MR. ARO:  --with respect to depositions or--

6        THE COURT:  No, I don't think that's necessary.  That's

7   just more filing.

8        MR. ARO:  Only if there is a dispute--

9        THE COURT:  Right.

10        MR. ARO:  --you want us to let you know?

11        THE COURT:  If there's something that requires

12   refereeing, I'll be here.

13        MR. ARO:  Fair enough.  Thank you.

14        THE COURT:  Okay.  What's a reasonable time frame for

15   you to get your necessary communication with those with whom

16   you must communicate?

17        MS. PADDEN:  Your Honor, if I can have two weeks.  And I

18   just ask for that much, because I'm not sure exactly who I

19   need to get concurrence from.  I'm not sure if I need to talk

20   with the Federal Programs branch or exactly who.  So--

21        THE COURT:  Okay.

22        MS. PADDEN:  --if I could have two weeks, that would--

23        THE COURT:  Okay.  So that would be what date, Mr.

24   Smith?

25        THE CLERK:  November 15th.

1      THE COURT:  November 15th.

2      MS. PADDEN:  Thank you, Your Honor.

3      THE COURT:  All right.  Anything else before we go to

4  the case or the Republic?

5      MR. ARO:  Just one more.  I'll call it a heads-up.  We

6  have a motion for class certification that's due in a couple

7  of weeks.  We served some written discovery, to which the

8  Government is beginning to respond.  We're trying to get all

9  of our evidence together.  There are some logistics issues

10  with that.  It is possible, although not certain, that we may

11  ask for a couple of additional weeks just given the

12  difficulty we're having getting particularly prisoner

13  declarations.  And I just wanted to make the Court aware that

14  that may be forthcoming.

15      THE COURT:  That's okay.  I don't remember what time I

16  said.

17      MR. ARO:  You gave us 45 days from the scheduling

18  conference.

19      THE COURT:  Oh, okay.

20      MR. ARO:  And I think that if we ask for more time, it

21  will probably be in the range of two or three weeks as

22  opposed to more time than that.  And we'll certainly try to

23  work that out with the Government.  I don't think--

24      THE COURT:  Yeah, you can stipulate--

25      MR. ARO:  --it'll be a problem.

1      THE COURT:  --stipulate to that.

2      MS. PADDEN:  We would have no objection, Your Honor.

3      MR. ARO:  I just wanted to let you know that may be

4  coming.  We'll get it to you as quickly as we can.

5      THE COURT:  Are you filing for both classes or just the

6  treatment class--I mean, the other--the diagnosis class?

7      MR. ARO:  The diagnosis class.  And we talked last week

8  about potentially deferring the other determination until

9  some later point in the case.

10      THE COURT:  Yeah.  Well, I don't know, maybe you want to

11  include the other class.

12      MR. ARO:  At this time?

13      THE COURT:  No, I mean, you know, I don't know.  I don't

14  know what I'm going to do.  I've just outlined what's in my

15  mind as a concern in the case.  If I get this stipulation,

16  I'll feel a little more comfortable about going one way or

17  the other, although I appreciate that you would like to

18  proceed with the association standing anyway.

19      MR. ARO:  That's right, Your Honor.

20      THE COURT:  But I'm not sure--it's too important if it

21  isn't a question of moving the case out.  I mean, you know, I

22  suppose it has something to do with the scope of discovery.

23  Each plaintiff--you know, the premise of the case is that

24  these people, the named plaintiffs, are being impacted by an

25  unconstitutional policy that is being followed by the Bureau

1   of Prisons with respect to this institution and people with

2   diagnosis of mental illness.  So that's our case.

3          And I think that adequately responds, Ms. Padden,

4   to your concern about whether individual claims have been

5   pleaded.  I think they have.

6       MR. ARO:  We agree, Your Honor.

7       THE COURT:  Well, I wouldn't expect you to disagree.

8          Okay?  All right, thank you.

9       MR. LEITER:  Thank you, Your Honor.

10      MS. PADDEN:  Thank you, Your Honor.

11      MR. ARO:  Your Honor.

12      THE COURT:  Yes?

13      MR. ARO:  Just as a personal matter, I thought you'd be

14  interested to know something.  Do you remember your former

15  law clerk, Joseph Berman, who worked with me when I was here

16  back in 1990?

17      THE COURT:  Yes.

18      MR. ARO:  He was just appointed to the Superior Court

19  bench in Suffolk County, Massachusetts, two days ago; and I

20  just got his announcement.  I thought you might like to know.

21      THE COURT:  Yeah.  Well, also former law clerk, Judge

22  James Bredar of the District of Maryland, has just issued an

23  interesting view of marijuana sentencing, which he sent--

24      MR. ARO:  I'll have to look it up.

25      THE COURT:  Yeah, which he sent to me.

1      MR. ARO:  Thank you, Your Honor.

2      MR. LEITER:  Thank you, Your Honor.

3      THE COURT:  In light of it being legal in states and

4  illegal federally.

5      (2:27 p.m. - Whereupon, the proceedings were concluded.)

6

7

8

9

10

11                    TRANSCRIBER'S CERTIFICATE

12          I hereby certify that the foregoing has been

13  transcribed by me to the best of my ability, and constitutes

14  a true and accurate transcript of the mechanically recorded

15  proceedings in the above matter.

16          Dated at Aurora, Colorado, this 2nd day of

17  December, 2013.

18

19

20                            /s/ Sylvia Besel

21                            Sylvia Besel

22                            Federal Reporting Service, Inc.

23                            17454 East Asbury Place

24                            Aurora, Colorado  80013

25                            (303) 751-2777