```
             IN THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF COLORADO


HAROLD CUNNINGHAM, ET AL,          )
                                   )
           Plaintiffs,             )
                                   )
    vs.                            )    1:12-cv-01570-RPM
                                   )
FEDERAL BUREAU OF PRISONS, ET AL,  )
                                   )
           Defendants.             )
_____

                   STATUS CONFERENCE
                 TRANSCRIPT OF PROCEEDINGS
_____
```

Proceedings held before the HONORABLE RICHARD P. MATSCH, U.S. District Judge for the District of Colorado, on the 22nd day of April, 2015, in Courtroom A, the United States Courthouse, Denver, Colorado.

                    APPEARANCES

For the Plaintiffs:        Edwin Packard Aro, Esq.
                           Arnold & Porter LLP-Denver
                           370 Seventeenth Street
                           Suite 4400
                           Denver, CO  80202-1370

                           Maurice Abraham Leiter, Esq.
                           Arnold & Porter LLP-Los Angeles
                           777 South Figueroa Street
                           44th Floor
                           Los Angeles, CA  90017-5844


    Proceedings recorded by electronic sound recording;
       transcript produced by transcription service.

```
                        APPEARANCES (Continued)

    For the Defendants:           Amy L. Padden, Esq.
                                  U.S. Attorney's Office-Denver
                                  1225 17th Street East
                                  Suite 700
                                  Denver, CO  80202

                                  Marcy Elizabeth Cook, Esq.
                                  U.S. Attorney's Office-Denver
                                  1225 17th Street East
                                  Suite 700
                                  Denver, CO  80202
```

```
 1                     P R O C E E D I N G S
 2        (At 9:58 a.m. on April 22, 2015, in the United States
 3   District Court at Denver, Colorado, before the HONORABLE
 4   RICHARD P. MATSCH, U.S. District Judge, with counsel for the
 5   parties present, the following proceedings were had:)
 6        THE COURT:  Please be seated.  Good morning.
 7        MR. ARO:  Good morning, Your Honor.
 8        THE COURT:  We're here in trial cv-1570, Harold
 9   Cunningham and others against the Federal Bureau of Prisons
10   and also Center for Legal Advocacy as a party.  And we're
11   here for--to discuss where we go from here.  And you have
12   filed a joint status report on--on April 20$^{th}$, which I've
13   read.
14            This was scheduled for the conference room, but
15   we're talking now about adjudicatory aspects of the case, and
16   I think all such things should be in open court and
17   transparent because of the public interest involved and the
18   subject matter of the case.
19            So appearances?
20        MR. ARO:  Good morning, Your Honor.  Ed Aro and Maury
21   Leiter of Arnold & Porter on behalf of the plaintiffs, also
22   with us is Mark Ivandick the CLA.
23        THE COURT:  CLA, yes.
24            And?
25        MS. PADDEN:  Good morning, Your Honor, Amy Padden and
```

```
 1   Marcy Cook from the U.S. Attorney's Office on behalf of
 2   Bureau of Prisons, and with us is Bureau of Prisons attorney
 3   Kaitlin Turner.
 4        THE COURT:  Good morning.
 5           There are a couple of preliminary things that
 6   concern me; one is, at one time there was some concern about
 7   whether the Center For Legal Advocacy has the authority to
 8   proceed on behalf of unnamed inmates.  And I don't know if
 9   that's still an issue or something that has to be resolved.
10   It sort of relates over to whether we need a class
11   certification, and that's one of the things that may be
12   discussed this morning, I don't know.  But I guess, Ms.
13   Padden or Ms. Cook, have you come to a--to take a position on
14   that?
15        MS. PADDEN:  Your Honor, would you like me to go to the
16   podium?
17        THE COURT:  Sure.  Yes.  Make sure we get it on the
18   record.
19        MS. PADDEN:  Your Honor, our position on that is as set
20   forth in the brief that we filed on that issue, and that
21   was--
22        THE COURT:  I don't remember it.
23        MS. PADDEN:  Right.  Frankly, I don't exactly either.
24   But the way the position was that the CLA can act on behalf
25   of inmates request for representation, but we took the
```

                                                                       5

1    position they couldn't act on behalf of inmates who did not
2    request representation.
3              However, as we've--as we've indicated to the Court,
4    the plaintiffs are intending to file an amended complaints,
5    and so it may make the most sense for the parties, once said
6    amended complaint has been prepared for the parties to take a
7    look at what the amended complaint says and then determine
8    what the positions are on that issue.
9         THE COURT:  All right.
10        MS. PADDEN:  And if the--if the briefing needs to be
11   supplemented or amended at that--at that point in time.
12        THE COURT:  Well, also relating to whether we need to do
13   class certification is I note that two of the named
14   plaintiffs have been transferred in your joint status report,
15   and there may have been others, I'm not sure, but Powers and
16   another one I can't remember.
17        MS. PADDEN:  Pinson.
18        THE COURT:  Yeah.
19        MS. PADDEN:  Mr. Pinson.
20        THE COURT:  Pinson?
21        MS. PADDEN:  Yes.
22        THE COURT:  Well, he's pro se now, so--
23        MS. PADDEN:  Yes, that's correct.
24        THE COURT:  But, you know, I expressed concern earlier
25   that transferring people out to move the case is one of the

1  reasons that we need class, maybe.  So I don't know where you
2  are on that.
3       MS. PADDEN:  And we're not transferring them to move the
4  case.  They've been transferred--
5       THE COURT:  Well, I know, but they're not--
6       MS. PADDEN:  Right.
7       THE COURT:  --they're not here in this Court's
8  jurisdiction at the moment.
9       MS. PADDEN:  Well, in fact Mr. Powers and Mr. Pinson are
10 both down in Florence.  They're across the street at the
11 United States Penitentiary in that new treatment unit that we
12 opened.
13      THE COURT:  Well, I thought one of them was going to
14 Springfield.
15      MS. PADDEN:  Mr. Pinson was at Springfield, but now he
16 returned, I believe, in the past week or two.
17      THE COURT:  Okay.
18      MS. PADDEN:  So--but that's--I think that's another
19 issue the parties are going to need to confer further about
20 once we see the amended complaints so we can determine, you
21 know, how to proceed.
22      THE COURT:  Yeah.  Well, I don't want to lose sight of
23 that because--I'm not suggesting anything about your
24 position, but, you know, you're a part of a very large
25 executive branch agency, and I don't have a great deal of--

 1   well, I should say I have some skepticism about
 2   representations by government agencies as to future conduct.
 3              As a matter of fact, who actually makes policy
 4   decisions here for the Bureau of Prisons and this
 5   institution?  I--ultimately it's the Attorney General, I
 6   assume?
 7         MS. PADDEN:  Well, are you talking about specific
 8   policies that apply to the institution or--
 9         THE COURT:  Yeah.  Well, the things that we're talking
10   about--
11         MS. PADDEN:  Right.
12         THE COURT:  --in this case, and some of the things that
13   you represented have already been done to improve the care
14   available in the facility.
15         MS. PADDEN:  Some of those are done at the local level.
16   So, for example, the change in policy that--that clarified
17   that inmates in the Control Unit to receive psychotropic
18   medication, that was done at the local level.  Some of them
19   are broader policies; for example, there was a national
20   program statement that was issued, so that's actually signed
21   by the Director of the Bureau of Prisons.  So the Attorney
22   General--
23         THE COURT:  Who appoints the director?
24         MS. PADDEN:  I believe it's the Attorney General, but
25   I'm not sure if he's a Presidential appointee.  I'm sorry,

```
 1   I'm not sure, Your Honor.
 2           THE COURT:  Well, I've assumed that it's the Attorney
 3   General, but I don't know the command in control structure,
 4   but--
 5           MS. PADDEN:  So the Bureau of Prisons does--I mean the
 6   director ultimately does report to the Attorney General.
 7           THE COURT:  Yeah.  So the final authority here is the
 8   Attorney General in terms of--I'm thinking now about staffing
 9   and all of that, which of course also involves availability
10   of funds, which in turn brings Congress into the picture, I
11   suppose.
12           MS. PADDEN:  Depending on the issue.  I mean, some of
13   these things can be done internally within the Bureau of
14   Prisons.  They can free up resources from other places to put
15   them here at the ADX.
16           THE COURT:  Yeah.
17           MS. PADDEN:  So it--it really kind of depends on the
18   issue.
19           THE COURT:  All right.  Well, I should hear from
20   plaintiff's counsel--
21           MS. PADDEN:  Okay.  Thank you, Your Honor.
22           THE COURT:  --I guess, then as to what you propose to
23   do.  I see an amended complaint, and I assume the amended
24   complaint may deal with the circumstances as they exist
25   today.  I don't know, but I would hope it doesn't include the
```

1  history of penology in Anglo-American law.

2      MR. ARO:  There might be a touch of that, but probably
3  not very much, Your Honor.

4          To a very large extent, the amended complaint is
5  going to address both factual issues, some of the changes
6  that have been made at the institution, and some legal issues
7  that result from those changes.  As one example: When we
8  filed the case, we did not take a position on the question of
9  whether people who had serious mental illness who meet that
10 criteria had to be removed from the ADX.  The position was,
11 you have to treat them.  And it's--

12     THE COURT:  Right.

13     MR. ARO:  --your decision where you're going to treat
14 them.  They've now made a decision.  The BOP has made a
15 decision that most of the people with serious mental illness
16 will be removed from the ADX and treated elsewhere.  There
17 will be a very small number of them who remain behind at the
18 ADX due to security concerns.  And as to those people,
19 treatment will be provided onsite.

20         That decision by the BOP opens up a whole new set
21 of issues about, if you're going to place most of the people
22 with serious mental illness outside the institution, what are
23 you going to do to manage the infrastructure at the
24 institution to deal with people who have other forms of
25 mental illness, whether they're acute or whether they're

1  chronic but not serious mental illness.
2          And the--
3     THE COURT:  That is to say maybe who did not meet the
4  diagnostic--the statistical diagnostic manual?
5     MR. ARO:  Or they don't meet--so the program statement
6  that Ms. Padden referred to defines serious mental illness
7  by--primarily by diagnosis.  If you have one of these
8  conditions, you are determined to have SMI.
9     THE COURT:  Yeah, well--and the diagnosis is under that
10 DSM (5), I suppose.
11    MR. ARO:  That's correct, Your Honor.
12    THE COURT:  All right.
13    MR. ARO:  But there are other mental disorders that
14 require treatment that aren't serious mental illnesses for
15 purposes of their diagnosis.  And the amended complaint, now
16 that we know they're moving the people with serious mental
17 illness away, we have to address--
18    THE COURT:  Well--
19    MR. ARO:  --how are the needs of the people with mental
20 illness addressed at the prison.  And so--
21    THE COURT:  Now--
22    MR. ARO:  --the amendments will add some plaintiffs,
23 they will subtract some historical information, and another
24 question we're trying to work through with the Government is
25 the question, do the folks who were plaintiffs--Mr. Powers

```
 1   being a good example--who have been removed from the ADX
 2   still have the ability to serve as representatives of--
 3        THE COURT:  Yeah.
 4        MR. ARO:  --the serious mental illness class.  The
 5   Government is considering the position they're going to take
 6   on that.  If their position is that, yes, we will--we will
 7   concede that they can continue to represent the plaintiff
 8   class, that will streamline our amended complaint.  If they
 9   say, no, we're not going to agree to that, we may have to add
10   some other serious mental illness plaintiffs to ensure that
11   we have representative plaintiffs for that sub class.  So--
12        THE COURT:  Well, we also have people who are not going
13   to be able to be transferred, I presume.
14        MR. ARO:  But there's--there's a handful whom the
15   Government--
16        THE COURT:  Like the people who have SAMs?
17        MR. ARO:  The people who have SAMs and a handful of
18   other folks whom they've identified as having extraordinary
19   security concerns--
20        THE COURT:  Right.
21        MR. ARO:  --that can't be met elsewhere--
22        THE COURT:  Yeah.
23        MR. ARO:  --and figuring out--
24        THE COURT:  Now, if they develop a mental illness, they
25   would necessarily have to be treated at ADX?
```

1      MR. ARO:  That's right.  And their complaint--now that
2  we have a better understanding of their plans, the complaint
3  has to address those kinds of changes.
4      THE COURT:  Yeah.
5      MR. ARO:  And we're sorting out exactly how that works.
6  That we've been on a settlement mode for a long time, we're
7  returning to the discussion of how we frame the legal claims
8  for purposes of litigation.
9      THE COURT:  Yeah, you know, since the ruling--my ruling
10 on the motion to dismiss, I've sort of been nothing but a
11 fulcrum here, I guess, for leveraging positions in settlement
12 negotiations.  And I must say, you know, I--I want to make it
13 clear that I am not asking for reports from Magistrate Judge
14 Haggerty except as certain questions have been asked of me
15 about procedural aspects, which counsel have raised with him
16 and ask him to ask me.  I've responded to those things, but
17 I--you know, I am keeping the settlement negotiations with
18 him entirely.  I don't want anything to do with that.  It's
19 not my role.  And I'm--to be candid, I'm kind of impatient
20 and I like to get going on my role in the case.  You know,
21 this is getting to be an old matter and I'm sure an old man,
22 so I want to get dealing with it.
23     MR. ARO:  We--
24     THE COURT:  I'm not suggesting you should stop those
25 negotiations.  That's not my point.  But it does seem to me

1   that we can't wait forever.
2        MR. ARO:  We agree with that, Your Honor, and thus the
3   proposal that we stage our re-entry into your part of this
4   case--
5        THE COURT:  Okay.
6        MR. ARO:  --with an amended complaint and a--a
7   scheduling order that takes into account the fact that the
8   dates that we have are not, I think, going to work for
9   anybody, the dates that are currently in place, because we've
10  just been rolling all of the scheduling order dates back--
11       THE COURT:  Yeah, always back, back.
12       MR. ARO:  --but--
13       THE COURT:  So when do you expect to file the amended
14  complaint?
15       MR. ARO:  We would like to have 60 days to do that,
16  because we're going to have to add plaintiffs and do a whole
17  bunch of other logistical work, which would put our deadline
18  sometime in the middle of the--I guess the third week of
19  June.  That doesn't--from our standpoint, we spoke with Ms.
20  Padden before--
21       THE COURT:  I'm sorry, I'm losing hearing here.
22       MR. ARO:  Sorry about that, Your Honor.
23       THE COURT:  I didn't hear the last.
24       MR. ARO:  We would like to have 60 days to file the
25  amended complaint.

14

1       THE COURT:  Yeah.

2       MR. ARO:  We also discussed with Ms. Padden this morning
3  how to coordinate that timeline with the entry of a
4  scheduling order, and I think we--

5       THE COURT:  Well, it seems to me the scheduling order
6  should relate to the--whatever the issues come up on the
7  amended complaint and the answer.  I hope it's an answer and
8  not another motion to dismiss.

9       MR. ARO:  As do we, Your Honor.  And--

10      THE COURT:  Yeah.  So I don't see a scheduling order;
11 it's sort of inverse, you know.  The normal thing is join the
12 issues with complaint and answer and then we do a scheduling
13 order so that the scheduling will be proportionate, as we
14 like to say these days, I guess, to what the issues are.

15      MR. ARO:  We are comfortable with that process, Your
16 Honor.

17      THE COURT:  Yeah.  So we'll file--you will file the
18 amended complaint, what, June 15th.

19      MR. ARO:  Sounds fine with us, Your Honor.

20      THE COURT:  Is that okay with defendant?

21      MS. PADDEN:  Yes, it's fine with us, Your Honor.

22      THE COURT:  All right.  And is this going to be--well,
23 will the CLA be on the amended complaint?

24      MR. ARO:  It will, Your Honor.

25      THE COURT:  Okay.  So--and that, I guess, will--whatever

1   the Government says in response as to their participation and
2   who is being represented according to the allegation can tee
3   up this question of can those people be represented by this
4   agency.
5        MR. ARO:  We think that's right, Your Honor.
6        THE COURT:  Yeah, okay.  So I guess that's it.  I mean
7   you file amended complaint by June 15th and we take it from
8   there.
9        MR. ARO:  That's terrific, Your Honor.  Thank you very
10  much.
11       THE COURT:  That's okay with the defendant, I assume?
12       MS. PADDEN:  Yes, it is, Your Honor.  Thank you.
13       THE COURT:  Okay.  Well, we'll see what happens.  As I
14  said, I like to get going.  I like to get on to this case.
15  Okay.  Questions?
16       MR. ARO:  Thank you very much.
17       UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
18       (10:14 a.m. - Whereupon, the proceedings were
19  concluded.)
20
21
22
23
24
25

1                    TRANSCRIBER'S CERTIFICATE

2            I hereby certify that the foregoing has been

3   transcribed by me to the best of my ability, and constitutes

4   a true and accurate transcript of the mechanically recorded

5   proceedings in the above matter.

6            Dated at Aurora, Colorado, this 29th day of July,

7   2013.

8

9

10                              /s/ Suzanne H. Ben Majed

11                              Suzanne H. Ben Majed

12                              Federal Reporting Service, Inc.

13                              17454 East Asbury Place

14                              Aurora, Colorado   80013

15                              (303) 751-2777

16

17

18

19

20

21

22

23

24

25