**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 12-cv-01570-RPM**

HAROLD CUNNINGHAM,
PERCY BARRON,
ALPHONSO BLAKE,
JABBAR CURRENCE,
CARLTON DUNBAR,
SCOTT FOUNTAIN,
SEAN GILLESPIE,
CHARLES HIPPS,
RONNIE HOUSTON,
JOHN LAMB,
HERBERT PERKINS,
JOHN J. POWERS,
ARNELL SHELTON, and
MARCELLUS WASHINGTON,

Each individually and on behalf of all others similarly situated,

and

CENTER FOR LEGAL ADVOCACY D.B.A. DISABILY LAW COLORADO,

Plaintiffs,

v.

FEDERAL BUREAU OF PRISONS,

Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO STRIKE
SECOND AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD................................................................................................... 3

    A.    The Allegations about Inmates Not Housed at or Designated to the ADX or about Conditions at Other Facilities are Relevant ............................................... 5

    B.    The Allegations Defendant Argues are "Immaterial" are Relevant...................... 11

        1.    "Unnecessary Particulars" .......................................................... 12

        2.    "Allegations About Other Litigation"...................................... 13

        3.    Allegations "Not Directed to Pleaded Claims"......................................... 14

            a.    Risks to Staff.................................................................... 14

            b.    "Objectives of the Litigation"...................................... 15

            c.    Allegations Relating to Standing and Mootness........................... 15

            d.    Effects of Solitary Confinement on Mental Health ..................... 16

            e.    Retaliation Against Plaintiffs and Other Prisoners ...................... 16

        4.    Allegations Regarding Plaintiff CLA ...................................... 16

        5.    The Exhibits............................................................................. 17

    C.    BOP Cannot Show that the Material It Wants Stricken Is "Scandalous" ............. 18

CONCLUSION............................................................................................................ 19

35323364

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-size:smaller">ASES</span>

*Archuleta v. City of Roswell*,
No. CIV 10-1224 JB/RHS, 2013 WL 1655978, at *2 (D.N.M. Mar. 29, 2013)..................3, 17

*Brown v. Plata*,
563 U.S. ----, No. 09-1233, slip op. (2010) .............................................................................17

*Brumfield v. Cain*,
576 U.S. ----, No. 14-1433, slip op. (2015) .............................................................................17

*Burrell v. Armijo*,
603 F.3d 825 (10th Cir. 2010) ...................................................................................................5

*Chihuahuan Grasslands All. v. Kempthorne*,
545 F.3d 884 (10th Cir. 2008) .................................................................................................10

*Dunn v. Blumstein*,
405 U.S. 330 (1972)...................................................................................................................10

*Escobar v. Maifield*,
No. 12-cv-1662, 2015 WL 902692 (D. Colo. Feb. 27, 2015)....................................................10

*Foster v. Pfizer Inc.*,
No. 00-1287-JTM, 2000 WL 33170897 (D. Kan. Dec. 12, 2000).............................................18

*Gateway Bottling, Inc. v. Dad's Rootbeer Co.*,
53 F.R.D. 585 (W.D. Pa. 1971) ................................................................................................18

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944)...................................................................................................................10

*Holderness v. Birner Dental Mgmt. Servs. Inc.*,
No. 12-cv-1391-WJM-MJW, 2013 WL 618162 (D. Colo. Feb. 19, 2013) ..............................18

*Home Quest Mortgage, LLC v. Am. Family Mut. Ins. Co.*,
393 F. Supp. 2d 1096 (D. Kan. 2005)...........................................................................4, 15, 16

*Jordan v. Sosa*,
654 F.3d 1012, 1019 (10th Cir. 2011) ........................................................................................7

*Klimpton Hotel & Rest. Grp.*,
No. 07-cv-1514-WDM-BNB, 2008 WL 140488 (D. Colo. Jan 11, 2008) .............................3, 5

- ii -

*Lucero v. Hilkey*,
No. 06-cv-1467, 2008 WL 552863 (D. Colo. Feb. 27, 2008)................................................11

*Meltzer v. Bd. of Pub. Instruction of Orange Cnty., Fla.*,
548 F.2d 559 (5th Cir. 1977) ...................................................................................10

*Mink v. Suthers*,
482 F.3d 1244 (10th Cir. 2007) ..............................................................................7

*Ortiz v. Cooper Tire & Rubber Co.*,
No. 13-cv-32, 2013 WL 2151674 (W.D. Okla. May 16, 2013).................................................3

*Parents Involved in Cmty. Sch. v. Seattle Sch.*,
551 U.S. 701 (2007)..................................................................................................10

*PETA v. Rasmussen*,
298 F.3d 1198 (10th Cir. 2002) .........................................................................8, 9

*Rawson v. Sears Roebuck & Co.*,
585 F. Supp. 1393 (D. Colo. 1984)..........................................................................4

*Rivera v. Dowis*,
No. 08-cv-2715, 2010 WL 745018 (D. Colo. Feb. 24, 2010)................................................10

*Sawo v. Drury Hotels Co.*,
No. 11-cv-2232-JTM-GLR, 2011 WL 3611400 (D. Kan. Aug. 15, 2011)..................3, 4, 5, 17

*Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*,
173 F.R.D. 275 (D. Colo. 1997) ...................................................................3, 4, 5, 13

*Sierra Club v. Young Life Campaign, Inc.*,
176 F. Supp. 2d 1070 (D. Colo. 2001)................................................................3, 4

*Sosna v. Iowa*,
419 U.S. 393 (1975)................................................................................................8, 9

*Stanbury Law Firm v. IRS*,
221 F.3d 1059 (8th Cir. 2000) ...............................................................................3

*Stanton v. Encompass Indem. Co.*,
No. 12-cv-00801-PAB-KLM, 2012 WL 4466555 (D. Colo. Sept. 27, 2012) .....................3, 4

*Tootle v. McGuire*,
90 F. App'x 379 (10th Cir. 2004) ..........................................................................10

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980)................................................................................................9

- iii -

*United States v. Shell Oil Co.*,
   605 F. Supp. 1064 (D. Colo. 1985)...........................................................................4, 5, 13, 14

*United States v. Smuggler-Durant Mining Corp.*,
   823 F. Supp. 873 (D. Colo. 1993)............................................................................................3

*United States v. Trans-Mo. Freight Assn.*,
   166 U.S. 290 (1897).................................................................................................................10

*Utah Animal Rights Coal. v. Salt Lake City Corp.*,
   371 F.3d 1248 (10th Cir. 2004) ...............................................................................................7

*Walling v. Helmerich & Payne, Inc.*,
   323 U.S. 37 (1944)...................................................................................................................10

*Wardell v. Duncan*,
   470 F.3d 954 (10th Cir. 2006) .................................................................................................10

*Wilkerson v. Bowen*,
   828 F.2d 117, 121 (3d Cir. 1987).........................................................................................8, 9

## RULES

Fed. R. Civ. P. 8(a) ...............................................................................................................15

Fed. R. Civ. P. 8(b) .................................................................................................................2

Fed. R. Civ. P. 12(f) .................................................................................................3, 4, 5, 15

Fed. R. Civ. P. 12(g)(2)..........................................................................................................17

Fed. R. Civ. P. 23....................................................................................................................9

## OTHER AUTHORITIES

5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL
   PRACTICE AND PROCEDURE § 1382 (1969)........................................................................4, 15

**INTRODUCTION**

Plaintiffs' Second Amended Complaint (SAC) details the years-long, system-wide failure of Defendant Bureau of Prisons (BOP) to provide adequate mental health screening, diagnosis and treatment at the U.S. Penitentiary Administrative Maximum Facility (ADX) in Florence, Colorado.  It shows that BOP housed in almost total solitary confinement, for years on end, dozens (or more) of prisoners who have mental illnesses, despite BOP's policies prohibiting housing of prisoners with serious mental illness at ADX.  It describes how these prisoners are routinely deprived of constitutionally adequate mental health care.  By telling the stories of just some of these prisoners, the SAC demonstrates the all-too-predictable results of suicides, mutilations and other destructive and delusional behavior that have occurred at ADX to men committed to BOP's custody despite, and often in direct contravention of, its policies on mental health care.  This and other evidence at trial will prove the need for class-wide injunctive relief, and the need for monitoring and enforcement to ensure that the injunction is implemented and change takes root.

In its Motion to Strike, BOP renews its efforts to craft the complaint to its liking, and to eliminate factual allegations it would prefer not to address at trial.  Back in 2012, BOP moved to dismiss the original complaint, arguing in part that Plaintiffs "alleged *no facts* showing deliberate indifference," and that the complaint alleged *insufficient* facts to show that Plaintiffs "have suffered a serious harm as a result of their serious mental health needs."  Mot. to Dismiss at 14 (Dkt. No. 27 filed Oct. 9, 2012) (emphasis added).  This Court denied that motion.  BOP then switched gears and moved in the summer of 2013 to strike portions of the Amended Complaint, arguing in part that the Amended Complaint contained *too many facts* to respond to, and was "scandalous."  Def.'s Partial Motion to Strike at 1–3 (Dkt. No. 288 filed July 22, 2015) ("Mot.").  The case was stayed before this Court resolved that motion.

Much of this Motion to Strike repeats arguments from BOP's earlier motion; Plaintiffs again respond to them below.  This motion, however, adds a new twist: BOP now asserts that the stories of some prisoners who suffered almost unimaginable mental and physical anguish at ADX, as a result of BOP's failure to treat them, and whose stories demonstrate the impact of BOP's constitutional violations, are irrelevant.   Most of the prisoners whose stories BOP hopes to expunge from the SAC were transferred by BOP to other facilities, in order to receive mental health treatment.  As noted elsewhere, Plaintiffs support BOP's transferring prisoners in order to provide them proper mental health treatment.  But BOP may not use their transfers as a sword, to carve out of the evidentiary record facts that help establish its longstanding practice of violating prisoners' constitutional right to mental health treatment, and help prove the need for enforceable injunctive relief.   Nor may BOP purge from the record facts relating to a prisoner with schizophrenia who is no longer housed at ADX *because he committed suicide at ADX more than a year after this case was filed.*

BOP also argues that the transferred inmates no longer have standing, or cannot be class representatives — neither of which is properly before the Court on a motion to strike.  BOP is wrong, but the Court need not address those issues here.  The stories of these men are relevant to proving the class-wide constitutional violations and the need for injunctive relief, and that is sufficient ground to deny BOP's effort to hide these facts from trial.

Motions to strike seek a "drastic," "disfavored" remedy.  BOP has no grounds to invoke that remedy here.  The usual options available to BOP under Rule 8(b) — admit, deny, state that it lacks knowledge, state an allegation concerns legal, not factual issues — address most of what BOP raises in this Motion, and following the rule is far less drastic than striking allegations from the complaint.  As discussed below, in a few instances — where BOP points to adjectives and

analogies, to the section outlining what constitutes a constitutionally adequate mental health program, or to the exhibits attached to the SAC — we do not oppose BOP's request that it need not answer.  This motion should be denied.

## LEGAL STANDARD

Motions to strike seek a "drastic remedy;" they are often made "as a dilatory tactic."  *See Sawo v. Drury Hotels Co.*, No. 11-cv-2232-JTM-GLR, 2011 WL 3611400, at *2 (D. Kan. Aug. 15, 2011); *see also Archuleta v. City of Roswell,* No. CIV 10-1224 JB/RHS, 2013 WL 1655978, at *2 (D.N.M. Mar. 29, 2013).  Motions to strike should not include attacks on issues that will "affect the outcome of the case," *United States v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993); *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997) (purpose of Rule 12(f) is to "conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case."); that is, a motion to strike is an inappropriate vehicle to raise substantive issues more properly addressed in a motion to dismiss.  *Ortiz v. Cooper Tire & Rubber Co.*, No. 13-cv-32, 2013 WL 2151674, at *1 (W.D. Okla. May 16, 2013); *see also Klimpton Hotel & Rest. Grp.*, No. 07-cv-1514-WDM-BNB, 2008 WL 140488, at *1 (D. Colo. Jan 11, 2008) ("Motions to strike are usually only granted when the allegations have no bearing on the controversy . . . .") (citing *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001)).

As a result, motions to strike are disfavored.  *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000); *Stanton v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2012 WL 4466555, at *2 (D. Colo. Sept. 27, 2012); *Kimpton Hotel & Rest. Grp., LLC v. Monaco Inn, Inc.*, No. 07-cv-01514-WDM-BNB, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008).  Courts deny them unless the allegations in question are "*so unrelated* to the plaintiff's claims as to be

unworthy of any consideration" (*United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985) (emphasis added)), and "have *no bearing on the controversy* and the movant can show that he has been prejudiced."  *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001) (emphasis added); *see also Tri-State*, 173 F.R.D. at 285 (allegations will not be stricken under Rule 12(f) unless they "have no possible bearing on the controversy"); *Stanton*, 2012 WL 4466555, at *2 (immaterial matter is that which "has no essential or important relationship to the claim for relief pleaded").

Each and every allegation need not fit neatly into one or more elements of a party's claim, so long as the allegations have a relationship to the party's claims.  *See Tri-State*, 173 F.R.D. at 285–86.  For example, pleaded facts that assist the court in evaluating a difficult legal issue or provide context, including historical background, to a party's claims have withstood motions to strike.  *See Home Quest Mortgage, LLC v. Am. Family Mut. Ins. Co.*, 393 F. Supp. 2d 1096, 1099–1100 (D. Kan. 2005); *Tri-State*, 173 F.R.D. at 285–86.  Any question as to whether the challenged allegations meet the requirements of Rule 12(f) is to be resolved against the moving party.  *Sawo*, 2011 WL 3611400, at *2.

Courts in the Tenth Circuit, like other courts, generally require a showing of prejudice before granting a motion to strike.  *See Rawson v. Sears Roebuck & Co.*, 585 F. Supp. 1393, 1397 (D. Colo. 1984) ("It is fundamental that a motion to strike will be denied if no prejudice can result from the challenged allegations, 'even though the matter literally is within the categories set forth in [R]ule 12(f).'") (quoting 5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1382 (1969)); *see also Tri-State*, 173 F.R.D. at 285 ("a party must usually make a showing of prejudice before the court will grant a motion to strike") (citing 5 Charles Alan Wright, Arthur R. Miller & Edward H.

- 4 -

COOPER, FEDERAL PRACTICE AND PROCEDURE § 1382 (1969)); *Kimpton Hotels*, 2008 WL 140488, at *1 (same).[1]

BOP must meet a high burden to establish that the allegations it seeks to strike with its Motion have *no* bearing on Plaintiffs' claims and cause BOP significant prejudice. *See, e.g.*, *Sawo*, 2011 WL 3611400, at *2. It cannot come close to doing so. The allegations it seeks to strike are intertwined with Plaintiffs' claims and go to the heart of the issues to be decided before this Court.

## ARGUMENT

### A.    The Allegations about Inmates Not Housed at or Designated to the ADX or about Conditions at Other Facilities are Relevant

BOP claims allegations related to several prisoners who are no longer housed at ADX should be stricken as irrelevant. Mot. at 10–14. It also argues that, by transferring them, BOP has successfully deprived them of standing, made them unsuitable to be class representatives, and rendered their claims moot. But BOP cannot satisfy its burden of showing that what happened to these men has "no possible bearing on the controversy" and is properly addressed on motion under Rule 12(f). *See Tri-State*, 173 F.R.D. at 285 (allegations will not be stricken under Rule 12(f) unless they "have no possible bearing on the controversy"). Nor can BOP show that it may transfer these men out of the case.

Plaintiffs seek class-wide relief on behalf of all prisoners who were housed at ADX at the time of filing the complaint, presently, or in the future. 2d Am. Compl. ¶¶ 11, 581–83, 586–593.

---

[1] While the Tenth Circuit in *Burrell v. Armijo*, 603 F.3d 825, 836 (10th Cir. 2010), did not explicitly state that a showing of prejudice was required to support a motion to strike in its brief review of the district court's decision to strike allegations from the plaintiff's complaint, nowhere did it indicate that a showing of prejudice was not required. Because the district court has significant discretion in determining whether to grant a motion to strike (*see, e.g.*, *Shell Oil*, 605 F. Supp. at 1085), the *Burrell* court was not required to address all of the elements of a Rule 12(f) motion in its review of the district court's actions. *Burrell*, 603 F.3d at 836.

- 5 -

All such prisoners are members of the putative class seeking proper mental health screening and diagnosis.  All such prisoners with a diagnosed serious mental illness or mental illness (as defined by BOP) are members of the putative subclass seeking constitutionally adequate mental health treatment.   2d Am. Compl. ¶¶ 11, 581, 584–85, 586–593.  The stories of prisoners at ADX — whether or not they are currently there — will be key evidence in proving the longstanding practice of BOP to deny mental health care to prisoners who demonstrably, obviously, suffer from serious mental illness, and of the horrific consequences of that systematic failure.  Those stories will help show that, even when BOP has policies to address mental illness at ADX, it routinely fails to follow them, and allows a culture to flourish in which serious mental illness is ignored, or not taken seriously, or even punished.  That evidence will help demonstrate the need for injunctive relief.

For example, Mr. Knott (who is not a plaintiff) committed suicide at ADX on September 7, 2013, well more than a year after this lawsuit was filed,  and while BOP's last motion to strike "immaterial, scandalous" allegations was pending.  As alleged in the SAC, BOP knew he suffered from schizophrenia, failed to exclude him from ADX, and failed to properly treat him. *Id.* ¶¶110–19.  It is difficult to fathom how BOP — which no doubt will claim at trial it has addressed the issues raised in the SAC — can claim its failure to prevent a suicide by an inmate with a serious mental illness, during the pendency of this lawsuit, despite its policies to address mental illness and suicidal behavior, is immaterial to the issues before this Court.   Similarly, Mr. Perkins's repeated suicide attempts and the staff's amusement that met them are highly relevant to establishing the impact of BOP's longstanding failure to treat mental illness.  *See id.*

¶¶ 366–382.[2]  Indeed, the stories alleged in the SAC of each of the prisoners at ADX help demonstrate the longstanding pattern and practice of constitutionally insufficient mental health treatment this lawsuit seeks to remedy; they are relevant, factual allegations that go to the heart of the claims and the need for relief.  BOP can contest these facts at trial if it wishes; it has no reasonable ground to argue that these facts need not be answered, and should never be addressed.

BOP also raises in passing three substantive challenges to these factual allegations.  All assert that BOP, by choosing to transfer prisoners from ADX, has unilaterally deprived these men of their right to sue.  None of these arguments is appropriate for a motion to strike, and given the obvious relevance of these facts, the Court not address them at this time.  In any event, all are legally wrong.

*First*, BOP claims prisoners it has transferred from ADX no longer have standing, and their stories should be stricken from the complaint, though it has not actually moved to dismiss their claims for lack of standing.  BOP's own cases undermine this claim.  In *Jordan v. Sosa*, for example, the Tenth Circuit found a prisoner transferred to another facility had standing to bring a constitutional challenge to a ban on explicit publications.  654 F.3d 1012, 1019 (10th Cir. 2011).  The court explained that standing is determined at the time the action is brought."  *Id.* (citing *Mink v. Suthers*, 482 F.3d 1244, 1253–54 (10th Cir. 2007) ("[S]tanding is determined at the time the action is brought, and we generally look to when the complaint was first filed, not to subsequent events." (citation omitted)).  *See also Utah Animal Rights Coal. v. Salt Lake City*

---

[2] The stories of other named plaintiffs and interested individual which BOP wants to delete from the SAC are similarly powerful evidence of its wrongdoing.  2d Am. Compl. ¶¶ 145–163 (Cunningham); ¶¶ 255–276 (Fountain); ¶¶ 383–418 (Powers); ¶¶ 507–512 (Cole); ¶¶ 513–18 (Francisco); ¶¶ 519–524 (Harris); ¶¶ 525–551 (Hearne); ¶¶ 552–574 (Sablan).  BOP also seeks to strike the stories of former inmates Richie Hill and David Shelby, though BOP cannot explain why it would have trouble admitting or denying allegations related to the former ADX prisoners (¶¶ 89–96, ¶¶ 455–488).

- 7 -

*Corp.*, 371 F.3d 1248, 1263 (10th Cir. 2004) ("Standing doctrine addresses whether, at the inception of the litigation, the plaintiff had suffered a concrete injury that could be redressed by action of the court.")).  Intentionally or not, BOP's Motion conflates standing and mootness (which is addressed below) and draws a hasty, incorrect conclusion this Court may reject.

*Second*, BOP, citing a single case, argues the paragraphs referencing prisoners housed outside of ADX should be stricken because these men may not be class representatives.  While this is an issue that will be addressed properly in class certification briefing, BOP's lone case again betrays it.  In *Sosna v. Iowa*, the named plaintiff sought to challenge a residency requirement on behalf of a class of plaintiffs seeking divorces.  419 U.S. 393, 399 (1975).  The Supreme Court noted the named plaintiff had met the residency requirement before the case reached its review, which would have rendered her case moot had she brought her claim only on her behalf; however, because she represented a class for whom the residency requirement was still enforced, her case was not moot, and she was able to serve as class representative.  *Id.* at 402.  There is nothing wrong with including former prisoners of ADX as named class representatives.

BOP's decision to transfer some prisoners from ADX does not disqualify them as class representatives, nor does it render their testimony irrelevant to establishing the need for prospective relief.  *PETA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002) (noting a plaintiff may present evidence of a past injury to establish standing for retrospective relief, provided he demonstrates a continuing injury to establish standing for prospective relief).  In *Wilkerson v. Bowen*, for example, the Third Circuit reversed a district court's dismissal of plaintiffs' class action to receive disability benefits for alcoholism claims where the Secretary of Health and Human Services awarded benefits to the original named plaintiffs.  828 F.2d 117, 121 (3d Cir.

1987).  The court noted the alleged mootness of the named plaintiffs' cases did not moot the claim.  *Id.*  The Court observed that whether the particular claim of the proposed class plaintiff is resolved while a class certification motion is pending in the district court or while an appeal from denial of a class certification motion is pending in the court of appeals, "[i]n neither event is the plaintiff automatically disqualified from being a class representative and the question still must be decided whether, all other factors being considered, the plaintiff can fairly and adequately represent the class and meet the other requirements of Fed. R. Civ. P. 23."  *Id.*  (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980)).

*Third*, BOP seems to argue it has mooted the claims of former ADX prisoners by transferring them to other facilities.  This Court has warned BOP that simply removing plaintiffs from ADX to moot this case "would be unjust."  Nov. 1, 2013 Hr'g Tr. at 11–12.  But while, on the one hand, BOP says it is would allow a new ADX prisoner to be added, on the other hand it claims an unfettered right to remove a prisoner as a plaintiff by transferring him, and also a right to remove from the Court's consideration the stories of the plaintiffs it transfers.  There is no basis in law or common sense to allow BOP to dictate who may bring this suit, or to fashion the evidence at trial to its liking.

Moreover, BOP may not transfer prisoners from ADX because it chooses to provide mental health treatment elsewhere, and then contend that it is of no concern to this Court whether they actually are properly treated.  As to these individuals, as well as to the ADX prisoner population as a whole, BOP retains the power to disregard the policies and programs it instituted since this lawsuit began, to deny or modify promised treatment at other facilities, or even to transfer prisoners with serious mental illness back to ADX, despite its newly-revised policies.  BOP may not use these transfers to evade or limit scrutiny.  *See Sosna v. Iowa*, 419 U.S. 393,

- 9 -

401 (1975) ("We believe that a case such as this, in which, as in Dunn, the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs.") (citing *Dunn v. Blumstein*, 405 U.S. 330 (1972)).

Indeed, voluntary cessation "of an alleged illegal practice which the defendant is free to resume at any time" — such as BOP's transfer of ADX prisoners to other facilities that can provide better (if still constitutionally deficient) care — is an exception to a claim of mootness. *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008); *see also Parents Involved in Cmty. Sch. v. Seattle Sch.*, 551 U.S. 701, 719 (2007) ("Voluntary cessation does not moot a case or controversy unless subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur") (internal quotation marks and citation omitted). "Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Meltzer v. Bd. of Pub. Instruction of Orange Cnty., Fla.*, 548 F.2d 559, 568 (5th Cir. 1977) (citing *United States v. Trans-Mo. Freight Assn.*, 166 U.S. 290 (1897); *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37 (1944); *Hecht Co. v. Bowles*, 321 U.S. 321 (1944)).   The Court may find a continued controversy, such as "a dispute over the legality of the challenged practices" where the defendant may return to his old ways.  *Meltzer*, 548 F.2d at 568 n.13 (citations omitted).  Court "have rightly refused to grant defendants such a powerful weapon" as mootness.[3]  *Id.*

---

[3] BOP's case law in support of striking these allegations is inapposite.  Many of the cases it cites relate to paroled or otherwise released prisoners.  *See, e.g.*, *Wardell v. Duncan*, 470 F.3d 954, 957 n.1 (10th Cir. 2006) (noting in passing that appellant's claims were moot where plaintiff was paroled); *Tootle v. McGuire*, 90 F. App'x 379, 380 (10th Cir. 2004) (appeal mooted by release); *Escobar v. Maifield*, No. 12-cv-1662, 2015 WL 902692, at *1 (D. Colo. Feb. 27, 2015) (release from incarceration rendered claim moot); *Rivera v. Dowis*, No. 08-cv-2715, 2010 WL 745018, at *15 (D. Colo. Feb. 24, 2010).  The former named plaintiff prisoners that have been released from BOP already have been removed as named plaintiffs.

- 10 -

The possibility that BOP's voluntary transfer of prisoners named in this lawsuit can be reversed is far from the speculative chance that the plaintiff in *Lucero v. Hilkey*, cited by BOP, might return to the facility about which he filed his lawsuit in order to attend a possible (but unscheduled) evidentiary hearing.  As alleged in the SAC, BOP has indeed returned some prisoners with serious mental illness to ADX.  *Compare Lucero v. Hilkey*, No. 06-cv-1467, 2008 WL 552863, at *19 (D. Colo. Feb. 27, 2008) ("It is purely a matter of speculation whether Mr. Lucero's motion would be granted, whether the state court judge would hold an evidentiary hearing, or whether Mr. Lucero would be held at MCDF again.") *with* 2d Am. Compl. ¶¶389–391, 399–400, 410 (Mr. Powers' repeated transfers between ADX and USP Springfield);  ¶¶ 101–03 (Mr. Vega's transfers between ADX and USP Springfield); ¶ 254 (Mr. Dunbar's repeated transfers between ADX and USP Florence in 2014 and 2015), ¶¶ 455, 487 (Mr. Shelby's transfer from, and back to, ADX).

BOP's effort to expunge from the complaint the stories of former ADX prisoners whom it has transferred, or who committed suicide on BOP's watch, is far beyond any proper motion to strike.  BOP's arguments about class representatives, mootness and standing are not only improperly made here but also legally incorrect.  There is no basis to remove from the ambit of this case the stories of prisoners who were allowed to fester at ADX without proper mental health care, and whose stories help prove the need for injunctive relief.

### B.      The Allegations Defendant Argues are "Immaterial" are Relevant

BOP contends that four general categories of allegations are "immaterial" and should be stricken from the SAC.  We turn to each below.  For *none* of these generic categories has BOP made any showing of prejudice; BOP has the informational and staffing resources to respond to the SAC.  That alone is sufficient grounds to deny this motion.  Nor can BOP show that these allegations have "no bearing" on this case.

- 11 -

1.    "Unnecessary Particulars"

BOP argues that the SAC contains "unnecessary particulars" that would be unduly burdensome to answer.  Mot. at 18–20. Among the paragraphs BOP would like to edit out are key components of the mental health histories of the Plaintiffs, many of the details of which come from records contained in BOP's own files.  BOP also seeks to avoid answering descriptions of the behaviors of prisoners that are obvious manifestations of mental illness, but were ignored by BOP.

For example, BOP asserts that it has no bearing on this case to allege that Plaintiff John Lamb has a family history of mental illness, has been in and out of prison custody since the mid-1990s, and that for years BOP ignored his requests for mental health treatment.  2d Am. Compl. ¶¶ 348–355, 357.[4]

Similarly, BOP — which in its motion to dismiss claimed Plaintiffs alleged insufficient facts of its deliberate indifference to the mental health needs of its prisoners — now believes it has no relationship to this lawsuit that some prisoners at ADX howl or shriek continuously, speak to themselves continuously, smear feces on themselves or their cells, are denied psychotropic medication even with obvious serious mental illness, and dismember themselves. 2d Am. Compl. ¶¶ 63–65.

BOP also considers "irrelevant" allegations about the Joker Unit.  Mot. at 19; 2d Am. Compl. ¶¶ 37–42.  This unit should permit prisoners to "step down" from the isolation of ADX's other units, eventually to transfer to another institution or, if their sentences expire, to the

---

[4] BOP similarly hopes to surgically remove portions of the stories of each named plaintiff and interested individual.  2d Am. Compl. ¶¶ 167–170 (Barron); ¶¶ 189–199 (Blake); ¶¶ 210–18 (Currence); ¶¶ 241–44, 246, 248–49, 253 (Dunbar); ¶¶ 279–288 (Gillespie); ¶¶ 302–07 (Hipps); ¶¶ 330–33, 336–39 (Houston); ¶¶ 421–26 (Shelton); ¶¶ 448–451 (Washington); ¶¶ 576–77 (Van Noy).

community.  But for prisoners with inadequately-treated mental illness this becomes an insurmountable obstacle.  They cannot cope in this unit, and they cannot hold themselves together long enough to complete its program.  Indeed, obviously and undisputedly mentally ill prisoners have repeatedly been attacked and seriously injured by other prisoners while in the ADX step down program.  Unless the mental health treatment program at ADX and the method to step down from its harsh treatment are repaired, ADX for them becomes a dead end.

At trial, Plaintiffs will prove the systematic failure of BOP to diagnose and treat mental illness in part through testimony and evidence chronicling what has happened to Plaintiffs and others represented by CLA.  We will also show the horrendous consequences of that failure, many of which were obvious to anyone who could see and hear these prisoners.  Carving up the SAC to eliminate these facts will not make them irrelevant at trial.  BOP's effort to have the Court declare these allegations "so unrelated to the plaintiff's claims as to be unworthy of any consideration," *Shell Oil*, 605 F. Supp. at 1085, must fail.

2. <u>"Allegations About Other Litigation"</u>

BOP asks the Court to strike allegations in ¶¶ 120–27 and 99–109 that relate to other litigation filed by prisoners at ADX raising the issue of inadequate treatment of mental illness. These paragraphs outline the lawsuits filed by current or former ADX  prisoners prior to (and in one case, after) this case was filed that put BOP on notice of the conditions that are the subject of the present suit.  These lawsuits — which individually and collectively gave notice to BOP that its mental health treatment at ADX was seriously deficient — are directly relevant to show BOP's deliberate indifference. *See Tri-State*, 173 F.R.D. at 285–86 (allegations regarding prior litigation deemed relevant and not stricken).  BOP argued in its Motion to Dismiss that Plaintiffs must show that a prison official knew facts showing that denial of treatment would result in a serious danger to the prisoner. *See* Def.'s Mot. to Dismiss at 24–25 (filed Oct. 9, 2012).  These

- 13 -

lawsuits are poignant examples of prisoners telling BOP directly that they are not receiving adequate mental health treatment.  Many of the complaints describe these problems in excruciating detail.  Rather than investigate the complaints to determine the accuracy of the allegations or the existence or severity of the problems identified, BOP deployed procedural mechanisms to dismiss these cases and shut them down, while taking no action to remedy the circumstances underlying the lawsuits.

Had Defendant even scratched the surface of some of those complaints instead of finding procedural devices to dismiss them, it would have gathered critical information about the failure of the mental health care system at ADX.  Indeed, with respect to many of the prisoners filing complaints, simply looking into their cells would have been sufficient for BOP or its agents to determine that a serious problem required their attention.  These are relevant factual allegations.

### 3. Allegations "Not Directed to Pleaded Claims"

BOP argues that five groups of allegations are not "directed" at Plaintiffs' pleaded claims for relief.  Mot. at 14–16.  BOP, however, cannot show that these allegations are immaterial. Indeed, even if these allegations do not fit precisely with a claim for relief, a motion to strike cannot be granted if they have an important relationship to the claims for relief.  *See Shell Oil*, 605 F. Supp. at 1085.  All of the allegations identified by Defendant are directly related to Plaintiffs' claims for relief.

#### a. *Risks to Staff*

Paragraph 13 describes the risks to staff that can arise from untreated mental illness of ADX prisoners.  The failure to treat mental illness in a constitutionally-adequate manner leads to more disciplinary issues, and more risk to staff, who then respond to the risks with more punishment.  How the corrections staff deals with prisoners suffering from a serious mental

illness needs to be part of the remedy here, which will have as an effect reducing the risk to staff, and reducing the need for a disciplinary response.

### b. *"Objectives of the Litigation"*

BOP challenges the section of the SAC subtitled "Objectives of the Litigation" (¶¶ 16–24), claiming that these paragraphs "do[] not focus the claims." Mot. at 15. This is absurd. We included this section in an effort to advise BOP and the Court with some particularity about the relief Plaintiffs seek, and the elements of a constitutionally adequate mental health treatment program. This is precisely the type of allegation that provides a better understanding of the litigation. *See* 5 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1382 (1969); *see also Home Quest Mortg.*, 393 F. Supp. 2d at 1100 (allegations that "aid in giving a full understanding of the complaint as a whole . . . need not be stricken").

The frivolous nature of BOP's objection to this section is perhaps best illustrated by BOP's request that, if not stricken, this section be "moved to the 'Prayer for Relief' section of the complaint." Mot. at 15. As noted above, Rule 12(f) is not a vehicle for cosmetic editing of a complaint. If BOP prefers to avoid answering these paragraphs by stating that they address legal rather than factual matters, Plaintiffs will not object, but there is no basis for striking the sections of the SAC — wherever located — that inform BOP and the Court what this lawsuit aims to accomplish.

### c. *Allegations Relating to Standing and Mootness*

Citing no authority for its position, BOP claims that a paragraphs 23 and 9 (sixth sentence) should be stricken because they contain "legal argument about standing and mootness." Mot. at 15. The allegations are consistent with the Federal Rules, and BOP should respond to them. *See* Fed. R. Civ. P. 8(a)(1) (pleadings must contain a "statement of the grounds

- 15 -

for the court's jurisdiction . . . .").  Indeed, there is no need to "argue these points in a brief" unless BOP further delays this lawsuit by moving to dismiss on the grounds they challenge in these paragraphs.  Mot. at 15.

> d.      *Effects of Solitary Confinement on Mental Health*

Solitary confinement exacerbates mental illness and can accelerate the decline of formerly healthy prisoners into mental illness.  The facts alleged in ¶¶ 46–48 are the results of scientific studies, and provide a context and better understanding of Plaintiffs' condition.  *See Home Quest Mortg.*, 393 F. Supp. 2d at 1100 (allegations that "aid in giving a full understanding of the complaint as a whole . . . need not be stricken").  BOP can admit, deny or claim lack of knowledge of those studies.

> e.      *Retaliation Against Plaintiffs and Other Prisoners*

Paragraphs 375–76 discuss retaliation by the ADX staff against prisoners for their participation in this litigation.  BOP complains that Plaintiffs do not plead a separate claim for relief based on retaliation.  But these allegations illustrate the culture of ADX and the staff's willingness to punish mentally ill individuals simply for being mentally ill or for attempting to seek help in getting adequate treatment for their mental illness.  Retaliation by corrections officers against prisoners seeking adequate mental health treatment in this lawsuit is powerful evidence of deliberate indifference to those mental health needs.  This will be relevant evidence at trial.

> 4.      Allegations Regarding Plaintiff CLA

BOP next asks the Court to strike ¶¶ 491–99 relating to the CLA because, according to BOP, these allegations are "not relevant" to Plaintiffs' claims in the SAC, and responding to them would be "an undue burden," "a waste of resources," and would "cause delay in the litigation."  Mot. at 18.  These allegations, however, plead CLA's constitutional Article III and

- 16 -

prudential standing criteria to intervene and proceed as an associational plaintiff.   Article III standing goes to the court's power under the Constitution to hear CLA's complaint, making these allegations relevant to CLA's causes of action.

> 5.    The Exhibits

BOP seeks to strike Exhibits 1–27 of the SAC, although it failed to ask the Court to strike them at the time they filed their motion to dismiss.  (Most of the Exhibits Defendant now seeks to strike were Exhibits to the original Complaint.)  Defendant's late effort to strike these Exhibits flies in the face of the Federal Rules.  *See* Fed. R. Civ. P. 12(g)(2).  It also smacks of tactical delay, which is one of the reasons courts generally do not favor motions to strike.  *See Archuleta*, 2013 WL 1655978, at *2; *Sawo*, 2011 WL 3611400, at *2.

Notably, the Supreme Court has found the use of photographs of prison facilities to be instructive in recent opinions.  For example, in *Brown v. Plata*, the Court attached several photographs of California prisons to demonstrate the degree of overcrowding  and the inadequate mental health facilities its prisoners endured.  563 U.S. ----, No. 09-1233, slip op. at 4, 5, App'x B, C (2010).  Courts have found photos useful to emphasize a point even where such a photo is only tangentially relevant to the case.  *See Brumfield v. Cain*, 576 U.S. ----, No. 14-1433, slip op. Thomas, J. dissent at 79, App'x (2015) (discussing subsequent success of victim's children and depicting photograph of victim in dissenting the vacation and remand of appellant's habeas claim); *see also id.* at Alito, J. dissent at 1 ("I join all but Part I–C of JUSTICE THOMAS' dissent. The story recounted in that Part is inspiring and will serve a very beneficial purpose if widely read, but I do not want to suggest that it is essential to the legal analysis in this case.").

The attached exhibits here are relevant to the litigation and disclose information for which BOP is equipped to answer.  Every photograph attached to the SAC depicts either a physical feature of ADX (all of which presumably are readily known to BOP), or a prisoner

- 17 -

currently in the custody of BOP (whom BOP undoubtedly has photographed innumerable times and whose physical appearance is therefore reasonably well known to BOP). Thus, BOP likely can confirm fairly easily whether the photos are or are not accurate. That said, we do not object to BOP not "answering" the exhibits. In any case, there is no justification for expunging them from the SAC.

C.     **BOP Cannot Show that the Material It Wants Stricken Is "Scandalous"**

Allegations in a complaint are not scandalous simply because they may offend the moving party, so long as the allegations actually describe facts or events that are relevant to the action. *See Gateway Bottling, Inc. v. Dad's Rootbeer Co.*, 53 F.R.D. 585, 588 (W.D. Pa. 1971) ("To strike material as scandalous it must be obviously false and unrelated to the subject matter of the action."). The cases cited by BOP are not apt here. In *Holderness*, for example, the court found that challenged allegations had no link whatsoever to the plaintiff's claims. *Holderness v. Birner Dental Mgmt. Servs. Inc.*, No. 12-cv-1391-WJM-MJW, 2013 WL 618162, at *2 (D. Colo. Feb. 19, 2013). Similarly, in *Foster*, the court examined the claims of the plaintiff and found that the allegations in question did not relate to the plaintiffs' theories of the case or claims for relief against Pfizer. *Foster v. Pfizer Inc.*, No. 00-1287-JTM, 2000 WL 33170897, at *3–4 (D. Kan. Dec. 12, 2000). Prior to striking the allegations, both courts first determined that the offensive material was not related to the plaintiffs' claims.

The allegations in the SAC about which BOP complains are accurate descriptions of what BOP has permitted to happen at ADX. BOP has been deliberately indifferent to the mental health needs of its prisoners at ADX; it has indeed "turned a blind eye to the needs of prisoners with mental[] illness at ADX, and to deplorable conditions of confinement." 2d Am. Compl. ¶ 6. It has subjected prisoners under its control to "harsh and unforgiving disciplinary regimen[s]." *Id*. ¶ 2. BOP's failure has led to "horrible consequences," as described in ¶ 5.

- 18 -

35323364

Staff at ADX has used harsh discipline rather than, where appropriate, mental health treatment, in a "determined and calculated effort to dominate [and control] prisoners." *Id.* ¶ 43. For example, cell rotation has been used as a method of discipline by sending prisoners to a cell just vacated by an prisoner with mental illness, who has spread feces on the wall, *id.* ¶ 67 — showing not only awareness of the obvious distress of the prisoner who spread the feces, but also a motivation among ADX corrections officers to use that mental distress as a disciplinary tool. What has happened there is, indeed, "barbaric." *Id.* ¶ 81.

We do not object to BOP not having to admit or deny an adjective or an analogy, and we are more interested in getting to the merits of this case than in bickering over the language of the SAC. However, BOP's motion sweeps too broadly. For example, it seeks to strike complete paragraphs, containing factual allegations, that include an adjective to which BOP objects. BOP has no justification for declining to answer factual allegations, or for moving to strike relevant factual allegations from the SAC.

## CONCLUSION

BOP's Motion is unsupported by the law, and should be denied. BOP should be ordered to respond to the portions of the Second Amended Complaint to which it failed to respond in its July 22, 2015 Answer.

35323364

Dated:    September 4, 2015              Respectfully Submitted,

                                        **ARNOLD & PORTER LLP**

By      /s/ Edwin P. Aro
        Edwin P. Aro
        370 Seventeenth Street, Suite 4400
        Denver, CO 80202
        Telephone: +1 303.863.1000
        ed.aro@aporter.com

        Maurice A. Leiter
        777 S. Figueroa Street
        44th Floor
        Los Angeles, CA 90017
        Telephone: +1 213.243.4000
        maury.leiter@aporter.com

        Veronica E. Rendon
        Keri L. Arnold
        399 Park Avenue
        New York, NY 10022
        Telephone: +1 212.715.1000
        veronica.rendon@aporter.com
        keri.arnold@aporter.com

        Wilson Mudge
        Danielle Garten
        James Kaiser
        555 Twelfth Street, NW
        Washington, D.C. 20004
        Telephone: +1 202.942.5000
        wilson.mudge@aporter.com

        Kelly A. Welchans
        Three Embarcadero Center
        10th Floor
        San Francisco, CA 94111
        Telephone: +1 415.471.3100
        kelly.welchans@aporter.com

- 20 -

**WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS**

By      /s/ Deborah Golden
      Deborah Golden
      11 Dupont Circle, NW
      Suite 400
      Washington, D.C. 20036
      Telephone: +1 202.319.1000
      deborah_golden@washlaw.org

      *Attorneys for Plaintiffs*

- 21 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of September, 2013, the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO STRIKE** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record as follows:

      Amy L. Padden
      U.S. Attorney's Office - Denver
      1225 Seventeenth Street, Suite 700
      Denver, CO  80202
      amy.padden@usdoj.gov

      Marcy E. Cook
      U.S. Attorney's Office - Denver
      1225 Seventeenth Street, Suite 700
      Denver, CO  80202
      Marcy.cook@usdoj.gov

                    /s/ Linda J. Teater

- 22 -