IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

HAROLD CUNNINGHAM, PERCY BARRON,     )
ALPHONSO BLAKE, JABBAR CURRENCE,     )
CARLTON DUNBAR, SCOTT FOUNTAIN,      )
SEAN GILLESPIE, CHARLES HIPPS,       )
RONNIE HOUSTON, JOHN LAMB,           )
HERBERT PERKINS, JOHN POWERS,        )
ARNELL SHELTON, MARCELLUS            )
WASHINGTON, CENTER FOR LEGAL         )     1:12-cv-01570-RPM-MEH
ADVOCACY,                            )
                                     )
              Plaintiffs,            )
                                     )
         vs.                         )
                                     )
FEDERAL BUREAU OF PRISONS,           )
                                     )
              Defendants.            )
_____

ORAL ARGUMENT
TRANSCRIPT OF PROCEEDINGS
_____

          Proceedings held before the HONORABLE RICHARD P.

MATSCH, U.S. District Judge for the District of Colorado,

beginning at 9:56 a.m. on the 2nd day of October, 2015, in

Courtroom A, the United States Courthouse, Denver, Colorado.


APPEARANCES

For the Plaintiffs:          Robert Reeves Anderson, Esq.
                             Arnold & Porter LLP-Denver
                             370 Seventeenth Street
                             Suite 4400
                             Denver, CO  80202-1370


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

                         APPEARANCES (Continued)

For the Plaintiffs:              Edwin Packard Aro, Esq.
                                 Arnold & Porter LLP-Denver
                                 370 Seventeenth Street
                                 Suite 4400
                                 Denver, CO 80202-1370

For the Defendant:              Amy L. Padden, Esq.
                                 U.S. Attorney's Office-Denver
                                 1225 17th Street East
                                 Suite 700
                                 Denver, CO  80202

                                 Marcy Elizabeth Cook, Esq.
                                 U.S. Attorney's Office-Denver
                                 1225 17th Street East
                                 Suite 700
                                 Denver, CO  80202

1                  P R O C E E D I N G S

2      THE COURT:  Please be seated.  Good morning.  We're here

3  in 12-cv-01570, Harold Cunningham and others with the Bureau

4  of Prisons as the defendant, and we're on the plaintiffs'

5  motion to compel document discovery.  So we have a new

6  arrival in the case, Mr. Anderson.

7      MR. ANDERSON:  Good morning, Your Honor.  Reeves

8  Anderson and Ed Aro from Arnold & Porter for the plaintiffs.

9      THE COURT:  All right.

10      MR. ARO:  Good morning, Your Honor.

11      THE COURT:  And good morning.

12          And, Ms. Padden and Ms. Cook.

13      MS. PADDEN:  Good morning, Your Honor.

14      MS. COOK:  Good morning.

15      THE COURT:  Good morning.  So I've read the papers filed

16  here, the motion and the response and the reply.  And

17  everybody disagreed, I guess, that there are five categories

18  here that are matters in dispute.  And I guess my initial

19  question is of the plaintiff, and that--of the plaintiffs and

20  that is what do you want to do with all this stuff?

21          So, Mr. Anderson, you're on this.

22      MR. ANDERSON:  Thank you, Your Honor.  One point of

23  clarification, due to the accelerated nature of the briefing,

24  because we wanted to get in front of Your Honor on this

25  important issue quickly, we did not actually file a reply

1   brief.  And so what I wanted to use my beginning remarks to

2   do would be to wiggle down--

3       THE COURT:  Answer my question.

4       MR. ANDERSON:  Yes, sir.  We need these documents for

5   two different reasons, and they are quite overlapping.  One

6   is for class certification and also to the merits.

7       THE COURT:  What specifically are you looking for?

8       MR. ANDERSON:  What are we looking for from these

9   documents?

10      THE COURT:  Yes.

11      MR. ANDERSON:  We're looking for more instances of

12  individuals that the Bureau of Prisons has failed to provide

13  constitutionally adequate care or shown deliberate

14  indifference, which are reflected in these five sets of

15  documents, to establish a pattern and practice, both to show

16  commonality, typicality, numerosity, and the underlying

17  merits of the case itself which is what the inquiry is.

18      THE COURT:  Well, yeah.  Part of the problem here is the

19  burdensome nature of this and the delay that is involved in

20  trying to get all of this stuff out of the data banks that

21  it's in and then get it through a privilege review and then

22  get it to you.  So in my view the way to proceed here is not

23  compelling the production of all of the documents, but asking

24  some questions and using the electronic discovery principles

25  for the defendant to answer these questions doing its own

1  search.

2      MR. ANDERSON:  Your Honor, perhaps I could help by

3  clearing up some of the burden issue as well.  So one of the

4  points you mentioned was the privilege review which is far

5  and away the largest time consuming aspect of the opposition

6  brief.

7      THE COURT:  Not--no, it isn't according to these

8  declarations.  Just doing it takes a lot of time apart from

9  the review.

10      MR. ANDERSON:  Yes, Your Honor.  They calculated

11  twenty-nine 40-hour weeks for retrieving the documents

12  themselves, and then another 170 hours--or 170 weeks for

13  privilege review.  And we think the privilege review is

14  completely off the table.  We don't want redacted documents.

15  We think it's absolutely not required by the Privacy Act

16  because of this--

17      THE COURT:  Well, you're going to get them.  You know,

18  we're going to cut through this.  This is a burdensome

19  discovery request, and I'm not going to grant it.  So we're

20  going to do something in the alternative.  Now, who's going

21  to review all this stuff?

22      MR. ANDERSON:  On both of our ends, Your Honor?

23      THE COURT:  On your end.

24      MR. ANDERSON:  On our end we will staff this so that we

25  are reviewing it ideally on a rolling basis so that, you

1    know, they--

2         THE COURT:   Who is reviewing it and why?   You're going

3    to have an expert on this; right?

4         MR. ANDERSON:   We may have an expert, but the factual, I

5    mean, digging through the documents themselves will be our

6    team.   And we will synthesize those to set up a--you know, we

7    will show--

8         THE COURT:   No.   We're not going to do it that way.   You

9    get what you want in the way of information and ask these

10   questions.

11        MR. ANDERSON:   I want to make sure I understand.   On

12   the--

13        THE COURT:   Well, what's difficult to understand?

14        MR. ANDERSON:   We have made--you know, there's no

15   dispute about the relevance of these documents.   The

16   government has agreed to produce 130--

17        THE COURT:   Well, listen to me.   What I want to do is

18   change this over to electronic discovery using the guidelines

19   or whatever the hell they are that have been adopted here and

20   the Sedona Principles; and you ask the questions, and they

21   can provide the answers.

22        MR. ANDERSON:   I understand, Your Honor.   And all of

23   these documents are electronic.   We are happy to work with

24   the government to right--ask the right questions so we get

25   the information.

1    THE COURT:  Right.

2    MR. ANDERSON:  There's a--they have objected to a legal

3  bar on the Privacy Act saying that they may not, they are

4  restricted from turning these documents over.  And we think

5  that this court's protective order documents--

6    THE COURT:  It depends upon what the questions are and

7  how they answer them.  That's my point.  Instead of just

8  getting all of this stuff, you know, there are not--there are

9  Privacy Act issues here that involve the criminal status of

10  these people.  I have to be concerned about that as well and

11  so does the Bureau of Prisons.

12    MR. ANDERSON:  I recognize that, Your Honor, and the two

13  protective orders that the court has entered in this case

14  should address any of those concerns.

15    THE COURT:  Well, they don't.

16    MR. ANDERSON:  If I may, the supplement protective

17  order, No. 167--

18    THE COURT:  Well, Counsel, I don't think I'm getting

19  through to you.  We're not going to do it that way.  Do you

20  understand that?

21    MR. ANDERSON:  I do, Your Honor.

22    THE COURT:  All right.  So I'm going to take a recess,

23  and you discuss it with Ms. Padden and Ms. Cook as to how you

24  can do this using the electronic discovery, Sedona

25  Principles, and asking these questions, and they can review

1   it and give answers.

2        MR. ANDERSON:  Thank you, Your Honor.

3        MR. ARO:  May I ask--

4        THE COURT:  Yes.

5        MR. ARO:  May I ask one classifying question?

6        THE COURT:  Yes.

7        MR. ARO:  One of the things that the BOP has done

8   repeatedly in the past is object to producing reports that

9   are not generated in the ordinary course.  And what I

10  understand Your Honor to be saying is that you want us to

11  give them pinpoint--you need to give us this data, and

12  whether or not the record is--

13       THE COURT:  No.  You need to answer these questions.

14  For example, how many of the people in whatever time period

15  have been diagnosed with a condition?  Right?

16       MR. ARO:  Right.

17       THE COURT:  I mean, you don't need all of the

18  individuals.

19       MR. ARO:  But the idea is we give them questions.  They

20  generate answers using whatever means they have--

21       THE COURT:  Exactly.

22       MR. ARO:  --give us back reports or answers or whatever

23  the answers to our questions even if the materials they have

24  to collect are not maintained in the ordinary course.  Is

25  that--am I understanding you correct, Your Honor?

1      THE COURT:  Well, I don't know when you say in the

2  ordinary course.

3      MR. ARO:  Let me say it a different way.  I may not be

4  being clear.  The idea is the BOP strains its data in

5  certain, specific ways.  They have certain reports that you

6  can hit a button and it spits out that report.  It may very

7  well be that the questions we have require them to present

8  data in a different way than they would typically do in their

9  ordinary operations.  And what I hear you to be saying, I

10  just want to make sure I'm right about this, is if we ask a

11  question that is material and that requests information that

12  is discoverable, they may have to generate electronic output

13  from their systems that is not of the sort that they would

14  typically generate in the ordinary course--

15      THE COURT:  Understood.  Yes.

16      MR. ARO:  Is--

17      THE COURT:  You're talking about a search.

18      MR. ARO:  Fair enough.  All right.

19      THE COURT:  Just like you would be doing a search with,

20  you know, key phrases and all of that sort of thing.

21      MR. ARO:  Fair enough, Your Honor.  I think with that

22  understanding we can have a conversation with them.  Shall we

23  let the Court know when we've gotten to a place where we

24  can--

25      THE COURT:  Yes.

1        MR. ARO:  --cut through to this (inaudible)?  Thank you.

2        THE COURT:  All right.  Talk about it.

3          Ms. Padden, are you willing to cooperate in this

4    venture?

5        MS. PADDEN:  Yes, Your Honor.

6        THE COURT:  All right.  We'll take a recess.

7        (10:05 a.m. - Recess accordingly.)

8        (At 10:26 a.m. on October 2, 2015, with counsel for the

9    parties present, the following proceedings were had:)

10       THE COURT:  Be seated, please.

11       MR. ARO:  So we talked through various questions that we

12   have, and Ms. Padden and Ms. Cook and I are going to have a

13   conversation early next week where we try to figure out

14   whether what Your Honor is contemplating is technologically

15   feasible given the way the Bureau's computers are set up.

16   It's not clear how much of a search capacity they have of the

17   sort that we're talking about here because of their systems.

18       THE COURT:  Well, you know what I--I didn't make it all

19   together clear, perhaps, but my thought is--and I'm no, as

20   you know, expert in all this or even literate about it, but

21   here we've got databases, and my suggestion is that you

22   develop what I think they call queries.

23       MR. ARO:  Yes.

24       THE COURT:  Which can--and then you can help with the

25   phraseology of queries that would be consistent with the way

1    some of these files, or whatever they are, are organized so

2    that the search terms might be agreed to; and then proceed

3    with that and rely on the integrity of the people responding

4    to the queries and going through the electronically stored

5    data to respond to the queries.

6         MR. ARO:  That's--we understood that that's what Your

7    Honor had in mind.

8         THE COURT:  That's--okay.

9         MR. ARO:  What we--I will tell you is we have--I don't

10   know how many documents, but it's hundreds of thousands of

11   pages that we've put into our own databases in my office.

12   And for a couple of reasons even we have trouble with the

13   queries.

14        THE COURT:  Yes.

15        MR. ARO:  Because of a lot of the documents are not

16   electronically searchable with the precision that anybody

17   would like them to be.  I think the challenge as I understand

18   it from the BOP is that their databases are set up in a way

19   that creates two potential issues.  And we're going to try to

20   confer with their technology people to make sure that these

21   issues, if they're a problem, at least we know that they're

22   not--that it's an insurmountable problem.

23            But the ideas are, number one, the records for

24   inmates are stored in different databases, and so you have to

25   go to a bunch of different places to actually do whatever

1   kind of searches are possible.  And secondly, it's not clear

2   that the databases that they have actually permit you to do

3   searches by term.  And if you can't search the documents by

4   term on their system, that may mean you have to extract that

5   data, put it into another database that allows you to do

6   that, and then enter your queries.  Which is essentially what

7   we've tried to do with the material we have.  And believe me,

8   if we can do this by searches, it's going to save us a lot of

9   money.

10       THE COURT:  Right.

11       MR. ARO:  And we--I--you--excuse me.

12       THE COURT:  And time.

13       MR. ARO:  For sure.

14       THE COURT:  I hope.  You know, we need to get on with

15  this.

16       MR. ARO:  I totally--

17       THE COURT:  And the focus ought to be on what you need.

18  And it doesn't seem to me you need all of this or the motion

19  for class certification.  You know, instead of--and I realize

20  that there's spillover into merits.

21       MR. ARO:  That's true.

22       THE COURT:  But the merits are going to be in the area

23  of how--you know, applying the deliberate indifference

24  standard.  But that's a little different from what I think

25  you need and I need on a motion for class certification

1   because, you know, numerosity and all that and commonality.

2        MR. ARO:  Right.

3        THE COURT:  And the commonality is, I think, pretty

4   clear, and I would think numerosity is too.  So it's more of

5   can we address it under 23(b)(2), and that's, I think, the

6   focus of our inquiry at this preliminary--preliminary--at

7   this stage.

8        MR. ARO:  Completely understand and agree, Your Honor.

9   And I think one of the biggest challenges we have that goes

10  right to the heart of why we want this data is we

11  understand--actually, let me back up.  The government as Your

12  Honor is aware has been defending the case primarily by

13  reference to the policy.  What was our policy?

14       THE COURT:  Right.

15       MR. ARO:  What was on paper?  Our position is that the

16  policy was not what was being done and that we need to

17  establish the practice by examples of what was really

18  happening to these people.

19       THE COURT:  Understood.

20       MR. ARO:  And we have evidence that concerns something

21  more than 100 inmates who either are or were at this prison.

22  If they can see that those--that group of 100 is typical and

23  that their issues are common with the 350 we don't have--

24       THE COURT:  Yeah.

25       MR. ARO:  --that issue goes away, and much of this

1    evidence that we are asking for here doesn't matter for class

2    certification purposes.  But to the extent that they are

3    advancing the idea that there is atypicality with this other

4    subset and that we have a--you know, essentially a

5    cherry-picked sample, that's why we have to understand what's

6    on the other side of the curtain.

7         THE COURT:  Well, I know.  But, you know, I don't want

8    to get into the idea of a statistically--validity of a

9    sample.

10        MR. ARO:  I totally understand.

11        THE COURT:  But, you know, if it's 50, if it's 100, if

12   it's 150, it's all the same for purposes of whether this

13   issue should be addressed as a class as opposed to individual

14   claims.  And it doesn't seem to me that, you know, the cherry

15   picking would be the defendants doing it.  But you could, I

16   think, develop queries that would be a test of, you know,

17   this hundred or however many you're talking about is

18   representative of the problem.

19        MR. ARO:  Assuming that their data is searchable the way

20   that we hope is it and Your Honor hopes it is, that's true.

21   And we're going to try to figure that out.

22        THE COURT:  All right.

23        MR. ARO:  And so what we--I think where we've left it,

24   subject to Your Honor's approval, is we'd ask that you hold

25   the motion in advance.  We're going to have a meeting.  And

1    we will file something to explain to you--

2         THE COURT:  Yes.

3         MR. ARO:  --where we get with that process.  And we'll

4    do it as quickly as we can.  I'm actually in the middle of a

5    trial of another case right now, and that's going to

6    potentially complicate getting this done in the next few

7    days.  But it shouldn't complicate getting it done in the

8    next few weeks.

9         THE COURT:  Well, I finally had a trial too.  So they've

10   been looking for it for some time.

11              So well, Ms. Padden, are you agreeable to trying to

12   work in accordance with what I hope is some meaningful

13   direction?

14        MS. PADDEN:  Yes, Your Honor.

15        THE COURT:  Okay.  So good luck.

16        MR. ARO:  We appreciate the time, Your Honor.

17        THE COURT:  All right.

18        MR. ARO:  Have a nice weekend.  Thank you.

19        THE COURT:  Try to get this done in a way--you know, the

20   magic word "proportionality" now.  Okay.  Thank you.

21              So the matter is continued.  Court is in

22   recess--the motion is continued.

23        (10:34 a.m. - Whereupon, the proceedings were

24   concluded.)

25

1                           TRANSCRIBER'S CERTIFICATE

2              I hereby certify that the foregoing has been

3    transcribed by me to the best of my ability, and constitutes

4    a true and accurate transcript of the mechanically recorded

5    proceedings in the above matter.

6              Dated at Aurora, Colorado, this 22nd day of

7    October, 2015.

8

9

10                          /s/ Patti Petersen

11                          Patti Petersen

12                          Federal Reporting Service, Inc.

13                          17454 East Asbury Place

14                          Aurora, Colorado  80013

15                          (303) 751-2777

16

17

18

19

20

21

22

23

24

25