IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01570-RPM

HAROLD CUNNINGHAM,
CARLTON DUNBAR,
JOHN W. NARDUCCI, JR.,
JEREMY PINSON,
JOHN J. POWERS,
ERNEST NORMAN SHAIFER, and
MARCELLUS WASHINGTON,
each individually and on behalf of all others similarly situated,
and
CENTER FOR LEGAL ADVOCACY,
D.B.A. THE LEGAL CENTER FOR PEOPLE WITH DISABILITIES AND OLDER PEOPLE, COLORADO'S PROTECTION AND ADVOCACY SYSTEM,

     Plaintiffs,
v.

FEDERAL BUREAU OF PRISONS,

     Defendant.

_____

ORDER ON CLA STANDING
_____

The Center for Legal Advocacy, d.b.a The Legal Center for People with Disabilities and Older People ("CLA") is one of the plaintiffs in the Second Amended Complaint, filed on June 15, 2015 (Doc. 274). It sues as an association on behalf of prisoners with mental illness housed in the United States Penitentiary Administrative Maximum facility in Florence, Colorado, ("ADX") operated by the defendant Bureau of Prisons ("BOP"). The defendant has challenged CLA's standing to pursue the claims for declaratory and injunctive relief sought by it and the individual plaintiffs. That challenge has been briefed and argued as a motion for partial summary judgment.

The CLA is a non-profit corporation designated by the State of Colorado to receive allotments pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"). The relevant allegations of the Second Amended Complaint are set out in the attached Appendix.

The purposes of the PAMII are set out in 42 U.S.C. § 10801(b) as follows:

(1) to ensure that the rights of individuals with mental illness are protected; and

(2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will–

> (A) protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; and

> (B) investigate incidents of abuse and neglect of mentally ill individuals if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.

The allegations about the creation, structure, operations and actions of the CLA relevant to its joinder in this lawsuit are not disputed.

Prisons are included in the definition of "facilities" in § 10802(3), as one rendering care or treatment of mentally ill persons subject to the protections of the statute. The CLA meets the eligible system requirements in § 10805 and therefore has authority to pursue legal remedies "to ensure the protection of individuals with mental illness who are receiving care or treatment in the State," § 10805(1)(B).

The Eighth Amendment to the United States Constitution protects inmates at ADX from injury caused by deliberate indifference to the need for treatment of their mental health needs. This civil action seeks to ensure that protection.

The BOP asserts that the CLA does not have Article III standing for a case or controversy because it has not shown that its litigating position is supported by the inmates it seeks to represent, and it does not show that it has its own injury in fact. The defendant also claims that there is no associational standing because the CLA may not represent inmates who have not requested representation as required by § 10804(c).

The Ninth Circuit Court of Appeals has definitively decided that a PAMII organization has both Constitutional and prudential standing to seek declaratory and injunctive relief for mentally incapacitated persons being held without treatment in county jails. The opinion deciding that appeal is adopted as decisional for this case. *Oregon Advocacy Center v. Mink,* 322 F.3d 1101 (9th Cir. 2003).

The BOP rejects its applicability to this action against a federal facility because of the language in § 10804(c). That is a subsection of § 10804, which is entitled "Use of Allotments." Read in context, the requirement of a request for representation is only a restriction on the use of allotted federal funds. Because the CLA is not using federal funds to support this litigation, this subsection is not a limitation on its capacity to represent all inmates with mental illness at the ADX affected by the alleged unconstitutional practices of the BOP.[1]

The defendant claims that in this case the requested equitable relief requires the participation of individual inmates, contrary to the third prong of *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 334 (1977). The Ninth Circuit rejected that

---

[1] The fact that no federally allotted funds have been or are being used is attested by the Declaration of CLA's Director of Administrative Services, William J. McBride. He declared that CLA receives non-Federal funds including charitable contributions, workshop and training income, client fees and court awards. (Doc. 108-1).

argument for the same reason it must be rejected here. The CLA and the individual plaintiffs are claiming systemic violations of the Eighth Amendment. Proof of those claims may make some testimony from individual inmates necessary but it does not require the participation of all inmates affected by those practices.

The CLA has established standing to pursue claims for declaratory and injunctive relief for prisoners with mental illness housed at ADX.

It is SO ORDERED.

DATED:   November 3rd, 2015.

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge

APPENDIX

## IX. ALLEGATIONS RELATING TO THE CENTER FOR LEGAL ADVOCACY

489. The Center for Legal Advocacy d.b.a. Disability Law Colorado ("CLA"), is a non-profit corporation headquartered in Denver, Colorado. Plaintiff was designated in 1977 by Governor Richard Lamm as Colorado's protection and advocacy system (P&A System) to protect and advocate for the rights of persons with developmental disabilities under subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. §§ 15041 et seq. Since 1986, CLA has received federal allotments-grants on an annual basis, and has established and administered a P &A System in Colorado for individuals with mental illness pursuant to 42 U.S.C. §§ 10803 and 10805 of the Protection and Advocacy for Individuals with Mental Illness Act, (PAIMI Act). Since 1986, CLA has been and is currently the eligible P&A System for individuals with mental illness in Colorado as defined at 42 U.S.C. § 10802(2).

490. CLA has associational standing to bring this lawsuit. CLA is the functional equivalent of a voluntary membership organization that was created by Congress to protect and advocate for its Colorado Constituents, which include ADX prisoners with significant mental illness or emotional impairment who are being abused, neglected and subject to civil rights violations by being denied Constitutionally guaranteed necessary and appropriate mental health treatment. CLA's Colorado Constituents possess many indicia of membership, to include influencing what issues CLA takes on in the performance of its federal mandate, some of which are alleged in the following paragraphs.

491. CLA publishes the annual PAIMI Program Priorities and Objectives on its website inviting Constituents to comment on their relative importance to CLA's statutory charge to protect and advocate for individuals with mental illness.

492. CLA has a governing board of directors, which is composed of members who broadly represent and who are knowledgeable about the needs of individuals with mental illness. CLA's board of directors includes members who have received or are receiving mental health services or family members of directors who have received or are receiving mental health services.

493. CLA has established a PAIMI Advisory Council which advises the P&A System on the policies, priorities and objectives designed to protect and advocate for the rights of CLA's Constituents - individuals with a significant mental illness or emotional impairment.

494. The PAIMI Advisory Council includes attorneys, mental health professionals, members of the public who are knowledgeable about mental illness, a provider of mental health services, and individuals who have received or are receiving mental health services or who have family members who have received or are receiving mental health services. Over sixty percent (60%) of CLA's PAIMI Advisory Council consists of members who have received or are receiving mental health services or who have family members who have received or are receiving mental health services.

495. CLA's PAIMI Advisory Council is chaired by an individual who themselves or a family member has received or is receiving mental health services. CLA's PAIMI Advisory Council chairperson and one council member are also members of CLA's governing board of directors. Together, CLA's board of directors and CLA's PAIMI

Advisory Council with assistance of PAIMI Program staff develop the annual priorities and objectives of the P&A System.

496. CLA's PAIMI Advisory Council meets six times per year. At these meetings, the Advisory Council discusses issues that concern abuse, neglect and rights violations, as well as the delivery of mental health treatment, to CLA's Constituents throughout Colorado. These meetings are attended by members of the public who are interested in mental health issues, CLA's PAIMI program staff, its Legal Director and Executive Director. At these meetings PAIMI program staff report on priority casework and recent developments concerning abuse, neglect and rights violations involving CLA's Constituents.

497. Prior to the April 2013 PAIMI Advisory Council meeting, a meeting reminder notice was sent to interested members of the public and all council members that included links to the "SuperMax ADX" litigation. Everyone who received the notice was encouraged to read the information provided at these websites to facilitate discussions at the Council meeting.

498. At the April 2013, PAIMI Advisory Council meeting PAIMI staff reported on the lack of mental health treatment for prisoners at the U.S. Bureau of Prison's ADX facility in Florence, Colorado. It was reported to attendees and the PAIMI Advisory Council that the denial of necessary mental health treatment to a federal prisoner, diagnosed with a significant mental illness or emotional impairment can be a violation of the Eighth Amendment's cruel and unusual punishment clause, a serious matter that CLA needed to address. The council members and attendees were also informed by PAIMI staff that reports had been received about prisoners with mental illness who had

committed suicide, engaged in self-harming behaviors, were catatonic in their cell, were smearing feces about themselves and their cells and some were screaming out at all hours of the day and night. The PAIMI Advisory Council was shocked by these revelations and thought that something should be done to remedy the situation.

499. Following the April PAIMI Council meeting a new PAIMI Program Priority was circulated to and adopted by both the PAIMI Advisory Council and CLA's governing board. Program Priority 4 directs CLA to investigate and monitor complaints and reports of abuse, neglect and rights violations from PAIMI eligible individuals confined in the ADX facility. Program Priority 4 further directs CLA to take appropriate action, including litigation, to correct any abuse, neglect, or rights violations involving ADX prisoners.

500. As of June 15, 2015, CLA has received requests for representation from or on behalf of six current or former ADX prisoners. Five of those prisoners, James Cole, William Harris, David Hearne, William Sablan, and James Van Noy have personally requested DLC's assistance. The mother of prisoner Jonathan Francisco requested assistance on his behalf, as his attorney in fact.

501. Each request for representation indicates that the Constituent has a significant mental illness or emotional impairment and calls upon CLA to take action to ensure these prisoners receive necessary and appropriate mental health treatment.

502. CLA has established a grievance procedure for Constituents and prospective Constituents, which allows individuals with mental illness and family members of such individuals to assure themselves that CLA and the PAIMI Program are operating in compliance with the provisions of the PAIMI Act. The Legal Services

Committee of CLA's governing board makes the final decision on Constituent grievances.

503. CLA is sufficiently identified with its Constituents and subject to their influence, which is demonstrated by CLA's actions, after receiving reports of abuse, neglect, and rights violations at ADX. CLA adopted a new PAIMI Program Priority by joint action of the PAIMI Advisory Council and governing board to address the reports of abuse, neglect, and rights violations occurring at ADX. CLA has allocated its limited resources, both personnel and financial-using only nonfederal funds, to investigate and file this lawsuit to stop the abuse, neglect, and rights violations experienced by all PAIMI eligible ADX prisoners. CLA staff traveled from Denver to Florence, Colorado, spending two days interviewing Constituents at the ADX. CLA staff have also spent numerous hours reviewing the pleadings in the *Cunningham* and *Vega* cases; attending partner conferences where prisoner complaints and case strategy are discussed; attending numerous settlement conferences negotiating policy changes and settlement terms; reviewing prisoner letters reporting or complaining about ongoing abuse, neglect, and rights violations at ADX; reviewing media reports about ADX's treatment of prisoners with significant mental illness or emotional impairment; conducting legal research; and drafting portions of the First and Second Amended Complaints.

504. When CLA's Constituents are abused, neglected, and their Constitutional right to receive necessary and appropriate mental health treatment is violated, CLA has the authority to pursue administrative, legal, and other appropriate remedies to ensure the protection of these vulnerable individuals. This lawsuit seeks to remedy the abuse, neglect, and rights violations inflicted on CLA's Constituents at the ADX facility and

elsewhere by agents of the U.S. Bureau of Prisons. Specifically CLA's authority to sue the U.S. Bureau of Prisons for the relief sought is conferred by federal law. See 42 U.S.C. §10804(c); 42 U.S.C. §10805(a)(1)(A) & (B); and 42 U.S.C. §10807.

505. CLA is not required to exhaust the Bureau of Prisons "Administrative Remedies Program" (ARP) under the PLRA, 42 U.S.C. §1997e(a). CLA has met its exhaustion burden concerning administrative remedies, under 42 U.S.C. §10807, based on the following facts: (1) Administrative remedies are not appropriate in this case, because there are no administrative remedies available. The U.S. Bureau of Prison's "Administrative Remedies Program" prohibits anyone from submitting a request or appeal on a prisoners' behalf, see 28 C.F.R § 542.16; (2) CLA is exempt from the exhaustion requirement because this legal action is intended to prevent or eliminate imminent serious harm to ADX prisoners with mental illness; and (3) Requiring CLA to seek administrative remedies at this time (three years after the initial complaint was filed), is not appropriate and would most likely be a futile exercise. The abuse, neglect, and rights violations inflicted on ADX prisoners with mental illness has not abated since the filing of the *Cunningham* and Vega complaints, some three years ago. Given the fact that the filing of a lawsuit has not caused Defendant to correct all deficient practices at ADX, no administrative action by CLA is likely to change this picture. Also, the current posture of the *Cunningham* case leads CLA to believe there will be lengthy pretrial delays while class certification, settlement talks, and discovery proceed. Thus CLA has determined this lawsuit will not be resolved within a reasonable time, when the reasonableness of delay is measured by the ongoing suffering of ADX prisoners with mental illness. Requiring CLA to make an administrative remedies request prior to filing

this lawsuit would unnecessarily delay the ultimate disposition of this case causing ADX prisoners with mental illness to endure more suffering.

506. CLA has the authority and standing to represent all inmates at ADX with significant mental illness or emotional impairment, even those who have not requested representation by CLA, since CLA is not using its federal allotment to provide representation to any ADX constituents, in accordance with 42 U.S.C. §10804(c); 42 U.S.C. §10805(a)(1)(A) & (B); and 42 U.S.C. §10807.