IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

ANTOINO BRUCE,                        )
                                      )
                Interested Party,     )
                                      )
HAROLD CUNNINGHAM, PERCY BARRON,      )
ALPHONSO BLAKE, JABBAR CURRENCE,      )
CARLTON DUNBAR, SCOTT FOUNTAIN,       )
SEAN GILLESPIE, CHARLES HIPPS,        )
RONNIE HOUSTON, JOHN LAMB,            )
HERBERT PERKINS, JOHN POWERS,         )
ARNELL SHELTON, MARCELLUS             )
WASHINGTON, and CENTER FOR LEGAL      )    1:12-cv-01570-RPM-MEH
ADVOCACY,                             )
                                      )
                Plaintiffs,           )
                                      )
        vs.                           )
                                      )
WARREN DANIEL CLINTON,                )
                                      )
                Interested Party,     )
                                      )
FEDERAL BUREAU OF PRISONS,            )
                                      )
                Defendant.            )
_____

                FURTHER STATUS CONFERENCE
                TRANSCRIPT OF PROCEEDINGS
_____

        Proceedings held before the HONORABLE RICHARD P.

MATSCH, U.S. District Judge for the District of Colorado,

beginning at 1:54 p.m., on the 28th day of August, 2015, in

the Conference Room, United States Courthouse, Denver,

Colorado.


        Proceedings recorded by electronic sound recording;
        transcript produced by transcription service.

APPEARANCES

For the Plaintiffs:          Maurice Abraham Leiter, Esq.
                             Arnold & Porter LLP-Los Angeles
                             777 South Figueroa Street
                             44th Floor
                             Los Angeles, CA  90017-5844

                             Edwin Packard Aro, Esq.
                             Arnold & Porter LLP-DC
                             370 Seventeenth Street
                             Suite 4400
                             Denver, CO  80202-1510


For the Defendant:           Amy L. Padden, Esq.
                             U.S. Attorney's Office-Denver
                             1225 17th Street East
                             Suite 700
                             Denver, CO  80202

                             Marcy Elizabeth Cook, Esq.
                             U.S. Attorney's Office-Denver
                             1225 17th Street East
                             Suite 700
                             Denver, CO  80202

                             Karl L. Schock
                             U.S. Attorney's Office-Denver
                             1225 17th Street East
                             Suite 700
                             Denver, CO  80202

```
 1              P R O C E E D I N G S

 2        (At 1:54 p.m. on August 28, 2015, in the United States

 3   District Court at Denver, Colorado, before the HONORABLE

 4   RICHARD P. MATSCH, U.S. District Judge, with counsel for the

 5   parties present, the following proceedings were had:)

 6        THE COURT:  Hi.

 7        MS. PADDEN:  Good afternoon.

 8        MR. LEITER:  Good afternoon.

 9        THE COURT:  Good afternoon.

10        MR. ARO:  Good afternoon, Your Honor.

11        THE COURT:  Well, for those of you who have been on

12   vacation--

13        MS. PADDEN:  Yes.

14        THE COURT:  --I hope you're rejuvenated.

15        MS. PADDEN:  I am.  It's hard to come back though.

16        THE COURT:  Really.  Okay.  Well, we've got a new filing

17   here on behalf of somebody named David Womack.  Do you know

18   who David Womack is?

19        MR. ARO:  I do certainly.

20        MS. PADDEN:  Yes.

21        THE COURT:  Well, this is filed by somebody apparently

22   on his behalf because it says he's illiterate and the person

23   writing this also is not particularly literate.  But I don't

24   know what to do with him as an additional party or what you

25   know.
```

1          And what about Jeremy Pinson, what is--he's been

2   transferred out of here--out of ADX so is he still in the

3   case?

4        MS. PADDEN:  He is no longer in the case; I believe he

5   removed himself from the case.

6        THE COURT:  He did.

7        MS. PADDEN:  Yeah.

8        THE COURT:  Well, he removed himself from being

9   represented by you, Mr. Aro.

10       MR. ARO:  He did.  And I think he filed a voluntary

11   notice of dismissal of his claims--

12       THE COURT:  Okay.

13       MR. ARO:  --before we filed the most recent complaint

14   and so he was just omitted from that complaint.

15       THE COURT:  All right.  So he's not a party.

16       MR. ARO:  No.

17       THE COURT:  And I don't know what to do with this guy.

18       MS. PADDEN:  Your Honor, what we've been doing in the

19   past with these types of filings I think is moving to strike

20   them on the grounds that the--

21       THE COURT:  Okay.

22       MS. PADDEN:  --inmates can't proceed pro se because it's

23   a class action case.

24       THE COURT:  Well, it isn't though yet.

25       MS. PADDEN:  Well, yes, okay, but--that's--

1       THE COURT:  Well, anyway I just called it to your

2   attention.  I don't know if you've got it.

3       MS. PADDEN:  We did get it.

4       THE COURT:  Okay.

5       MS. PADDEN:  I still have not read all of them; we had

6   several.

7       THE COURT:  Okay.  Well, I haven't read all of it

8   either; part of it is difficult to read.  Well, so--and fresh

9   off the printer is the supplemental memorandum regarding the

10  role for legal advocacy which was handed to me about five

11  minutes ago.

12      MR. ARO:  Yes, Your Honor.

13      THE COURT:  Now, in that regard, you know, I--at one

14  time we--I was looking at--if we have the Center for Legal

15  Advocacy representing unnamed plaintiffs and the power to do

16  so.  Do we really need class certification.  And then as my

17  thinking has evolved I think we probably do need class

18  certification.  At any rate you seem to be in agreement with

19  that because you're talking in the proposed scheduling order

20  about filing motions for class certification--new motions for

21  class certification, we already have one.

22          As I gather it you're now talking about two

23  classes--

24      MR. ARO:  That's right.

25      THE COURT:  --instead of a subclass.

1     MR. ARO:  I think that's right.

2     THE COURT:  As we talked on July 30th that was still--

3     MR. LEITER:  It's--it's still, Your Honor, a class of

4  everyone for screening and diagnostic--

5     THE COURT:  Yes, understood.

6     MR. LEITER:  --purposes and then a subclass of everyone

7  who has been diagnosed for treatment purposes.

8     THE COURT:  Yes.  But--and you also are talking about

9  mental illness, but I thought we agreed that we were going to

10  be doing serious mental illness as the Bureau of Prisons has

11  defined it.

12     MR. ARO:  Not exactly.

13     THE COURT:  Why, what's wrong with it?

14     MR. ARO:  The history of this is kind of complicated,

15  but it is our view and I think the government disagrees with

16  this view that--but we--we say that the Eighth Amendment

17  extends not just to people who have serious mental illness

18  but to people who have a mental illness that doesn't rise to

19  the level of serious mental illness.

20          And we believe that this class is appropriately the

21  treatment class or subclass is appropriately certified on the

22  basis of who has been determined by BOP to have a mental

23  illness.

24     THE COURT:  A mental illness?

25     MR. ARO:  Mental illness, yes.

1      THE COURT:  Which is the whole DSM-5?

2      MR. ARO:  No.  It's a--a subset of the DSM-5 that

3  constitutes a serious medical condition for purposes of the

4  Eighth Amendment.  And there's some complicated semantics

5  here.

6      THE COURT:  Yeah.

7      MR. ARO:  But the 10th Circuit standard for determining

8  Eighth Amendment coverage is whether a--an inmate suffers

9  from a medical condition that's been diagnosed by a doctor as

10  requiring treatment.

11      THE COURT:  Right.

12      MR. ARO:  There are mental illnesses that do not fall

13  into the more severe subset of serious mental illnesses that

14  nevertheless implicate that Eighth Amendment standard.  And

15  so--

16      THE COURT:  Well, except the standard is medical need.

17      MR. ARO:  That's right.

18      THE COURT:  And whether mental illness is a medical need

19  I don't know.

20      MR. ARO:  We think it is.  And that's--

21      THE COURT:  Well, I know you think it is.

22      MR. LEITER:  Yes.  And--and, Your Honor, just to add one

23  point, we--in the second amendment complaint and when we get

24  to our second class motion there, we define mental illness so

25  that it's--it's clear what it is.  And our definition is

1   largely--either completely or largely taken from the

2   government's definition of mental illness in its program

3   statement so that the people who are the members of the

4   subclass who don't have a serious mental illness would have a

5   mental illness that had been diagnosed by defendant and for

6   which the defendant had determined needs treatment because

7   that person would have been classified in one of their

8   treatment care levels.

9        MR. ARO:  So it is framed in terms of the BOP's policy,

10  their diagnostic criteria and their determination about the

11  circumstances under which treatment is required.

12       THE COURT:  Well, for--you know, does that include

13  transient illness as for example depression, is that a mental

14  illness in your--

15       MR. ARO:  So there are probably five different varieties

16  of depression.

17       THE COURT:  Yes.

18       MR. ARO:  You've got major depressive disorder which

19  they and we all agree is a serious mental illness within the

20  rubric we're talking about.  There are also forms of

21  depression that are transient or that are acute that

22  depending upon on severe they are may or may not require

23  treatment.

24           And so the way that we pled this is not based on an

25  individualized determination by you or by us about whether

1    somebody meets the criteria, it's when their policy and their

2    diagnoses put people into this category of mental illness

3    they then become part of the class and they then become folks

4    who are regulated by the--

5        THE COURT:   Okay.  Well, we don't have to decide that

6    today but it's going to be in your motion?

7        MR. ARO:   Absolutely.

8        THE COURT:   And--so we'll deal with how you're defining

9    it in the motion and we'll deal with whether you are

10   contending that's not a certifiable class.

11            Now, I've also been thinking about class

12   certification, in terms of the 10th Circuit, and the 10th

13   Circuit's holding that the Prison Litigation Reform Act does

14   not preclude class certification under Rule 23, (b)(2) which

15   we take it as the law of the case.

16            And if then a class is certified it seems to me

17   looking at the language of the statute and I'm thinking about

18   the terms of the relief requested which comes up in your

19   proposed scheduling order it says plaintiffs plural.  So I

20   think that the restrictions on the relief that can be granted

21   by this Court if we read plaintiffs as the class plaintiffs

22   it's not a restriction in the PLRA so I'm not going to worry

23   about that.  And you can challenge that as you already--I

24   don't say you would, but it does seem to me that if we are

25   dealing with a class that has been appropriately certified

1   then the relief can be whatever is appropriate to eliminate

2   the Eighth Amendment violation for that class and it doesn't

3   have to be tailored to one individual or several individuals;

4   that's my observation.

5         But getting back then to what I think we have is

6   sort of a belt and suspenders approach to the plaintiffs by

7   one certifying a class--or maybe--and second saying that the

8   Center for Legal Advocacy can represent people who are not

9   named plaintiffs; that being the case we should go forward--I

10  should go forward with ruling on that question.

11        You've already filed your supplement; you're going

12  to file a supplement or not?

13        MS. PADDEN:  Yes, Your Honor.

14        THE COURT:  When?

15        MS. PADDEN:  I think that we had agreed that it would

16  be--

17        MR. SCHOCK:  September 25th.

18        MS. PADDEN:  --September 25th I believe.

19        THE COURT:  Is that in the scheduling order?

20        MS. PADDEN:  It's not in the scheduling order, I think

21  it was in a separate motion that we filed.

22        MR. SCHOCK:  It was in the status conference.

23        MR. LEITER:  Status conference from our last hearing.

24        THE COURT:  Status--yeah, I've got that here too.  Okay.

25  So what we have for pleadings on this--and I'm a little

1    confused about that because I had pulled out the plaintiffs--

2    where is it--plaintiffs' memorandum re the role of the

3    Center, 8/26/13 document 92.  And defendant's response

4    document 97.  And then I have plaintiffs reply in support of

5    partial summary judgment.

6              Is there a summary judgment on this issue in

7    addition to the memorandum in support?

8         MR. LEITER:  No, Your Honor, at some point while we were

9    briefing back in 2013 this issue, Your Honor asked that--

10        THE COURT:  Yeah.

11        MR. LEITER:  --we treat it as a motion for partial

12   summary judgment so the title of the briefs changed--

13        THE COURT:  Okay.

14        MR. LEITER:  --in the middle of the briefing process.

15        THE COURT:  So this is the document 109.

16        MR. LEITER:  It's the same--yes.

17        THE COURT:  And then there was a defendant's surreply--I

18   don't quite know how it got to be a surreply, but that's

19   document 119.

20        MR. LEITER:  Yes, Your Honor.

21        THE COURT:  And then there's a new supplemental

22   memorandum document 301.

23        MR. LEITER:  Yes.  And I discovered when I was writing--

24   when we were writing that supplemental memorandum there are a

25   couple of other documents which are referenced in that

1   supplemental memorandum after oral argument which was on

2   November 1st, 2013.  The government submitted a brief

3   stipulation, which was a unilateral statement by the

4   defendant.

5      THE COURT:  About not mooting.

6      MR. LEITER:  About mooting and we filed a very short

7   response to that.  I don't have the document numbers but--

8      THE COURT:  Yeah, would you get it--

9      MR. LEITER:  --it was very--

10     THE COURT:  --I want to make sure--

11     MR. LEITER:  Yeah.

12     THE COURT:  --I've got the universe of--

13     MR. LEITER:  The--the document numbers are mentioned in

14  the paper we filed just half an hour ago or so, but we can

15  also supply them to you separately.

16     THE COURT:  Okay.  And then the next thing is going to

17  be whatever you file.

18     MS. PADDEN:  Correct.

19     THE COURT:  So I'll give those--this is Ms. Rhine I

20  think you met her--or she met you some time back, she's the--

21  she's trying to assist me in this endeavor.  Tell me if she

22  sees me drooling, I think is her main role here.

23         Now, we have as you've identified here a lot of new

24  things that have happened including High Security Adult

25  Alternative Housing Program.  I'll withhold comment about

1    that.  I tried to see what kind of an acronym does that

2    spell.

3          MS. PADDEN:  I don't have an answer.

4          THE COURT:  It doesn't seem to spell anything

5    significant.

6          MS. PADDEN:  We have lots of acronyms, Your Honor.

7          THE COURT:  Yeah, I know, and I have trouble keeping

8    track of them.  But one of the things you've got in the

9    proposed scheduling order is a deadline for joinder of

10   parties and amendment of pleading.  I don't set a deadline

11   for that.  You've got two different proposals.  My view of

12   that is Rule 15 applies and whenever somebody seeks to amend

13   a pleading you comply with Rule 15 and file a motion and show

14   cause.

15          So the suggestion here in--in my mind there's an

16   implicit suggestion that if you file something I'll grant it

17   to amend, but I don't do it that way.  So I will strike that

18   and we will just put in Rule 15.

19          Now, you talk in here that there's going to be a

20   lot of electronic documents; I've already told you that if

21   that comes up as a discovery dispute I'll use somebody else

22   who understands Sedona Principles and the underlying

23   technology better than I do.

24          So that's the only thing as I told you before that

25   I would refer out if there's a discovery dispute.  And you

1   have as proposed deponents--it looks like the whole

2   population of ADX, so that's one of those we don't want to

3   leave anything out.

4        MR. ARO:  It's noticed, it's not a declaration that

5   we're going to depose all of those folks.

6        THE COURT:  Yeah.  And we also come back to the HIPAA

7   and as I understood it from what you said, Mr. Aro, before

8   you got releases from the plaintiffs named and persons

9   identified in the amended complaint, second amended

10  complaint?

11       MR. ARO:  Among others, yes.

12       THE COURT:  Among others, okay.  But to the extent that

13  we don't then we'll have a motion to give it a level

14  something or rather classification.

15       MR. ARO:  I think it will be--we'd like to talk about

16  trying to get this resolved sooner rather than later because

17  I think it is going to impact the class certification

18  timeline.  I think it will be styled as a motion to compel

19  the production of data that has been requested and the

20  government has declined to provide.

21            Ms. Padden and I are trying to figure out a way to

22  avoid or at least narrow that fight.  And my expectation is

23  we're going to get part of the way there but not all the way

24  there, so there will be a brief thing that we will ask the

25  court to rule on because both of us want to get to the class

1   certification process soon--

2        THE COURT:  Well, I do too.

3        MR. ARO:  --all three of us.

4        THE COURT:  Yeah.  All interested parties.

5        MR. ARO:  We would request that the Court consider that

6   issue on a schedule that we--we talk about today.  But I

7   think we're going to get to wherever we're going to get in

8   the next couple of weeks and can file that motion to compel.

9   The government obviously needs time to respond.  If Your

10  Honor would like to have an argument on that we would ask

11  that it be set so at least we can get that issue resolved and

12  whatever the resolution is going to be won't impede the march

13  towards class certification.

14        So assuming--

15        THE COURT:  You want a day today is that what you're

16  saying?

17        MR. ARO:  Or I would like to talk about whether that's

18  acceptable to the Court.  We think we can file whatever we're

19  going to file within two weeks from today.  And, you know,

20  we've been going back and forth on both factual and legal

21  issues and trying to solve problems so I don't think there's

22  going to be any surprises from either side, however much time

23  they'd like to respond is fine.

24        Is it your expectation you would want to have an

25  oral argument on that?

 1      THE COURT:  I always like oral argument, yes.

 2      MR. ARO:  Okay.

 3      THE COURT:  It keeps me awake.

 4      MS. PADDEN:  We can respond within two weeks of

 5   receiving the notice.

 6      THE COURT:  Well, let's get a calendar.  So, yeah, we'll

 7   set a date--

 8      MR. ARO:  Okay.

 9      THE COURT:  --while we're here.  And are--where are we

10   in the Vega--or Vegas what--

11      MS. PADDEN:  Our response to the claim is due today.

12      THE COURT:  Today.

13      MS. PADDEN:  Yes.

14      THE COURT:  Did you file it?

15      MS. PADDEN:  Not yet.

16      THE COURT:  Are you going to file it by midnight?

17      MS. PADDEN:  Hopefully as soon as I get back to the

18   office.

19      THE COURT:  Okay.  And what is it going to be?

20      MS. PADDEN:  It's going to be another motion to dismiss.

21      THE COURT:  Yeah.  Oh, well, you could set an argument

22   for that too pretty soon here maybe.  Well, I'm pretty open,

23   you know, nobody wants to dance with me.  I can't get anybody

24   in the courtroom.

25      MR. ARO:  We will come see you whenever you would like.

1     THE COURT:  So we were talking--we're talking about late

2  October--or not late October, you're going to get this done

3  within September.

4     MS. PADDEN:  Correct.

5     MR. ARO:  We're suggesting--we'll file ours on or before

6  the 11th.  And if we waited until then their response would

7  be due then the 25th of September.

8     THE COURT:  Yeah.

9     MR. ARO:  Frankly, we're going to try to get it done

10  sooner than that but we've got another couple of filings that

11  we have to attend to and we want to make sure we do right.

12  So I think it would be right for an argument as early as the

13  first week of October.

14     THE COURT:  Second--October 2nd?

15     MR. ARO:  That would be fine with us, Your Honor.

16     MS. PADDEN:  Yes, that's fine with me, Your Honor.

17     THE COURT:  Okay.  So October 2nd, do you want to do it

18  in the morning?

19     MR. ARO:  Whenever it's convenient.

20     THE COURT:  It's better for me in the morning because I

21  have got a trial--I do have a trial scheduled for the 5th.

22     MS. PADDEN:  Okay.

23     THE COURT:  So 10 a.m.?

24     MS. PADDEN:  That works.

25     MR. ARO:  That's fine.

1      THE COURT:  Okay.  And what are we going to call it,

2  motion to compel?

3      MR. ARO:  I think that's what the motion is going to be

4  filed as.

5      THE COURT:  Okay.  All right.  Done.  When did you say

6  you were going to have your response on this role of the CLA?

7      MS. PADDEN:  September 25th I believe.

8      MR. SCHOCK:  Right.

9      THE COURT:  Okay.  And we probably will have a hearing

10  on that too, but I have to--I have to wait on that until I

11  read these things because frankly I didn't--I don't remember

12  reading what you've already filed.

13      MS. PADDEN:  Neither do we, Your Honor, so--

14      THE COURT:  Yeah.

15      MS. PADDEN:  --it was a long time ago.

16      THE COURT:  Yeah, I don't--I don't think I read it but

17  at any rate if I had I need to do it again.  So--

18      MR. ARO:  Would you like to have those argued at the

19  same time, Your Honor, since we're all going to be here?

20  Because I think their submission would have come in a week or

21  so before that--the 2nd.

22      THE COURT:  Sure.

23      MR. SCHOCK:  When--so I will--I will be gone on October

24  2nd.

25      MS. PADDEN:  Okay.

1    MR. SCHOCK:  So I don't know--

2    MS. PADDEN:  Mr. Schock has been working on that

3    briefing and will probably be doing the argument so maybe if

4    we could--

5    THE COURT:  On the CLA?

6    MR. SCHOCK:  So we either need to move everything--I

7    mean move the other one as well or have separate--separate

8    hearings.

9    THE COURT:  All right.

10    MR. SCHOCK:  It's--it's up to--whatever--

11    THE COURT:  Well, I don't want to move the first one

12    because that relates to this class certification and we need

13    to get that out of the way early on so--

14    MR. SCHOCK:  Ideally it would be that week of October

15    5th because I'm also going to be gone the 9th to the 19th of

16    October so--

17    MR. ARO:  But Your Honor said you're going to be in

18    trial that week.

19    THE COURT:  Yeah.

20    MR. SCHOCK:  Oh, so--so after the 19th would--any time

21    after the 19th would be fine.

22    THE COURT:  Well, that's going to--next time that I'm

23    really going to be open is the week of the 26th of October.

24    MR. LEITER:  We can schedule that in.  Your Honor, you

25    may have you read the papers decide that you may or may not

1    want additional oral argument.

2        THE COURT:  Right.

3        MR. LEITER:  So maybe one possibility would be to

4    schedule a date so we have something and then if Your Honor

5    decides you don't need additional argument we can always take

6    it off.

7        THE COURT:  That's--you're overwhelmingly persuasive in

8    what you've filed is that--

9        MR. LEITER:  No, I propose it because it's--because we

10   did--we did have an oral argument back in 2013.

11       THE COURT:  Yeah.  Well--so how about the 26th, October

12   26th, a Monday?

13       MS. PADDEN:  That's fine with me.

14       THE COURT:  Okay.  10 a.m.

15       MS. PADDEN:  That works for us.

16       THE COURT:  Okay.  And--so that's on the role of the

17   CLA.

18       MR. ARO:  You said 10 a.m., Your Honor?

19       THE COURT:  Pardon?

20       MR. ARO:  You said 10?

21       THE COURT:  10, yes, a.m.  And, you know, another

22   observation you speak to the standard here, the Eighth

23   Amendment standard with the objective and subjective intent--

24   the intent element, but I regard that as only applicable to

25   suits against individuals not against the entity.  I don't

1  know that's the way I've looked at it.  Of course we're

2  talking about individual liability when you're talking about

3  most of these cases that you've cited with deliberate

4  indifference Farmer, Estelle, and so forth.

5        So I don't think there's a--I don't think that I

6  can find for the plaintiff need to determine the mental

7  status or intentions of the Bureau of Prisons.

8      MS. PADDEN:  Your Honor, I believe Farmer had both

9  injunctive and personal liability claims if I'm not mistaken,

10  but I might be--

11      THE COURT:  I don't see how you can have a subjective

12  element when you're talking about an entity.  I don't know

13  what--I assume that's your position, but--

14      MR. ARO:  Your assumption is correct, but I think it's

15  one of these many issues in this case that is going to have

16  to get decided at some point and I know the government is

17  going to raise it so we're going to have to brief it.

18      THE COURT:  Right.  Yeah, along with a failure to

19  exhaust which I don't think there is a remedy, so anyway

20  we'll rule on that as--in the fullness of time as some people

21  say.

22        But I'm just giving you some preliminaries here

23  because I don't--you know, I want to keep this--I want to

24  keep this thing moving and not get sidetracked.  And these

25  people on the deposition schedule we talk--or you talk about

1    former clinical director, former psychologist and I guess

2    three former psychologists where--are these people still

3    within the employ of the BOP?

4        MS. PADDEN:  No, they're not, Your Honor.  This was the

5    depositions that plaintiffs have already taken before the

6    case was stayed.

7        THE COURT:  Oh, oh, I see that.

8        MS. PADDEN:  So they were taken about a year and a half

9    ago I think.

10       THE COURT:  Okay.  I see that now.

11       MS. PADDEN:  Yes.

12       THE COURT:  I stand corrected.

13       MS. PADDEN:  So our deposition schedule starts on page

14   24.

15       THE COURT:  Well, I don't--the CLA's constituents, Cole

16   and so forth, are those board members?

17       MS. PADDEN:  No, they are inmates; they're listed--

18       THE COURT:  Oh.

19       MS. PADDEN:  --in the claim.

20       THE COURT:  Oh, constituents, okay.

21       MS. PADDEN:  Yes, constituents that's how they're

22   described in the complaint.

23       THE COURT:  Yeah, I got you.  And what are we doing with

24   family members?  What's that about?

25       MS. PADDEN:  Well, it depends in a lot of cases, the

1   plaintiffs are relying on a past family history, you know, it

2   may be possible that we needed to post family members, I--I

3   don't know if that will be the case or not but I was just

4   including them in the interest of being complete.

5          We're obviously not going to take any depositions

6   that we don't need to take so my thought is we'll probably be

7   focused on the plaintiffs and the constituents.

8          THE COURT:  Well, I'm going to assume that you're going

9   to work out deposition schedules and that you're not going to

10  depose as many as you are.

11         MR. ARO:  We have had no trouble with that process to

12  this point and like the government we're--our incentive

13  limits us to taking only the ones that we have.

14         THE COURT:  Okay.  Well, what else do we need to talk

15  about?  This is open mike.

16         MR. ARO:  Nothing from the plaintiffs, Your Honor,

17  unless you have questions about any of the days that we put

18  into the schedule.  We tried to position it so that assuming

19  the--

20         THE COURT:  Yeah.

21         MR. ARO:  --case is not diverted with the motion that it

22  is prepared to be tried starting in the fall of '16.

23         THE COURT:  Right.

24         MR. ARO:  So about a year.

25         THE COURT:  And when we get--you know, I'm not going to

1    give you a trial date today because I don't know what we're

2    trying yet and--but to the extent necessary I'll make this a

3    priority setting given the labor that's already gone into it

4    and will continue to go into it, so if necessary we'll move

5    other things out of the way.

6            And I guess I'll sign this although I don't know

7    that it amounts to a great deal other than the computer will

8    show that there's a scheduling order.  And we don't want to

9    disappoint the computer by not providing a document that it's

10   expecting.

11           Anything else?

12       MR. ARO:  I don't think so, Your Honor.

13       MS. PADDEN:  Does Your Honor want to have a proposal

14   about a class certification schedule or do you want to wait

15   until you decide the discovery issue?

16       THE COURT:  Well, I thought--I thought you were talking

17   about filing a motion for class certification.

18       MR. ARO:  We are, Your Honor, and I think that the issue

19   that Ms. Padden is raising is they proposed or suggested to

20   us a particular date that's in early December for the class

21   certification motions to be filed because that discovery snip

22   that we have is--concerns documents that go straight to the

23   heart of one of our motions and because if we win that motion

24   there will be a lot of documents that they have to collect

25   and produce and that we have to review.

1        Our suggestion has been that if we can't work out

2    the discovery dispute--and as I said earlier I think we're

3    going to narrow it and not get all the way there, we have to

4    have that decision and we have to understand what the Court

5    is going to allow us to have access to--

6        THE COURT:  Right.

7        MR. ARO:  --before we're able to set a rational

8    deadline, so our suggestion would be once the Court has ruled

9    on that motion we can take up the issue of in light of what

10   the Court decides--

11       THE COURT:  At that time--

12       MR. ARO:  --how long do they need to do whatever, how

13   long do we need, and we can set the deadline.

14       THE COURT:  Because you're going to have, one,

15   documents, and two, your opinion witnesses' review of those

16   documents.

17       MR. ARO:  That's right.

18       THE COURT:  Because I assume the evidentiary hearing

19   would be opinions.

20       MR. ARO:  I'm not--really I think that's right.

21       THE COURT:  Yeah.  You notice I don't talk about expert

22   witnesses, opinion witness, okay.  I'm the only expert here.

23       MS. PADDEN:  You are, Your Honor.

24       THE COURT:  Okay.  Yeah, I think that works.  So we'll

25   talk about it at that time in October.  Anything else?

1        MR. LEITER:  I don't think so.

2        MR. ARO:  Nothing from us, Your Honor.

3        MS. PADDEN:  Nothing, Your Honor, thank you.

4        THE COURT:  Okay.  I'll sign off.

5        MR. LEITER:  Thank you, Your Honor.

6        THE COURT:  Thank you.

7        MR. ARO:  Have a good afternoon.

8        THE COURT:  Yeah, the same to you.  They had a--

9        (2:26 p.m. - Whereupon, the proceedings were concluded.)

10

11                    TRANSCRIBER'S CERTIFICATE

12        I hereby certify that the foregoing has been

13 transcribed by me to the best of my ability, and constitutes

14 a true and accurate transcript of the mechanically recorded

15 proceedings in the above matter.

16        Dated at Aurora, Colorado, this 1st day of

17 February, 2016.

18

19

20                         /s/ Theresa Ornelas

21                         Theresa Ornelas

22                         Federal Reporting Service, Inc.

23                         17454 East Asbury Place

24                         Aurora, Colorado  80013

25                         (303) 751-2777