# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01570-RPM

HAROLD CUNNINGHAM,
PERCY BARRON,
ALPHONSO BLAKE,
JABBAR CURRENCE,
CARLTON DUNBAR,
SCOTT FOUNTAIN,
SEAN GILLESPIE,
CHARLES HIPPS,
JOHN LAMB,
HERBERT PERKINS,
JOHN J. POWERS,
ARNELL SHELTON, and
MARCELLUS WASHINGTON,

     Each individually and on behalf of all others similarly situated,

and

DISABILITY LAW COLORADO,
COLORADO'S PROTECTION AND ADVOCACY SYSTEM,

     Plaintiffs,

vs.

FEDERAL BUREAU OF PRISONS,

     Defendant.

---

## ADDENDUM TO JOINT MOTION TO APPROVE SETTLEMENT
---

### I.     INTRODUCTION

    1.     On June 15, 2015, Plaintiffs Harold Cunningham, Percy Barron, Alphonso Blake,

Jabbar Currence, Carlton Dunbar,  Scott Fountain, Sean Gillespie, Charles Hipps, Ronnie

Houston, John Lamb, Herbert Perkins John J. Powers, Arnell Shelton and Marcellus

Washington, each individually and on behalf of others similarly situated, and Disability Law Colorado (collectively "Plaintiffs") filed a Second Amended Complaint ("Complaint") alleging that the treatment of inmates with mental illness by the Federal Bureau of Prisons (hereafter "Defendant" or "Bureau") at the United States Penitentiary, Administrative Maximum, located in Florence, Colorado ("ADX"), has failed to meet the minimum level of care necessary to satisfy the Eighth Amendment to the U.S. Constitution.  Since June 2012, Plaintiffs and Defendant (collectively "the Parties"), through their respective counsel identified on the signature page below, have exchanged information and conducted discovery, both under the Freedom of Information Act ("FOIA") and by way of voluntary and informal disclosures of information.

2.      Plaintiffs define in their Complaint two different classes of inmates for whom this lawsuit was brought.  Plaintiffs first define a class regarding screening as "[a]ll persons who are now, or will be in the future, confined to the custody of the Federal Bureau of Prisons at [ADX]."  Plaintiffs next define a subclass regarding treatment as "[a]ll persons who are now, or will be in the future, confined to the custody of the Bureau [at the ADX] and have been diagnosed by the [Bureau] or its representative personnel [or contractors] with [a mental illness]."

3.      Defendant denies the allegations in the Second Amended Complaint.  The issue of liability has not been litigated.  Defendant, prior to and since the initiation of this litigation, commenced significant initiatives to enhance the delivery of mental health services to inmates housed in the ADX and that process has been ongoing throughout this litigation.  Defendant represented the interests of the Bureau of Prisons, which include decisions regarding its constitutional duty to provide care for mentally ill inmates and to protect their safety, along with

2

the safety of its staff and the public. Defendant does not concede that the policies and initiatives contained within this Addendum are required by the Constitution.

4.      This Addendum is also the result of nearly four years of collaborative, arm's length settlement negotiations by energetic and experienced counsel for the Parties and their respective consultants and experts, aided by an experienced United States Magistrate Judge, to resolve the claims raised by this action. The Parties, without conceding any infirmity in their claims or defenses, engaged in extensive arm's length settlement negotiations to implement changes related to the constitutional violations alleged in the Second Amended Complaint. Plaintiffs' counsel received sufficient formal and informal discovery prior to and during settlement negotiations to enable them to make informed decisions. The Parties also benefited from the informed advice of two psychiatrists, Jeffrey Metzner, M.D., and Sally Johnson, M.D., with correctional experience, who have significant experience as expert witnesses and monitors in corrections mental health litigation, as well as other outside and Bureau experts. This collaborative attitude allowed Defendant to address the issues raised in association with the alleged constitutional violations with practical creativity.

5.      Defendant's voluntary, significant initiatives, and the Parties' collaborative work resulted in the following:

a.      The creation, revision, and implementation of the following Program Statements and Institutional Supplements (the "Policies"), which contain negotiated substantive provisions regarding, among other matters, screening and diagnosis of mental illness, provision of mental health care, suicide prevention, and conditions of confinement to reduce the risk of development or exacerbation of mental illness:

i.      Program Statement 5310.16, *Treatment and Care of Inmates with Mental Illness.*

3

      ii.      Institutional Supplement FLM 5310.16, *Treatment and Care of Inmates with Mental Illness.*

      iii.      Institutional Supplement FLM 5324.08, *Suicide Prevention Program.*

      iv.      Institutional Supplement FLP 53310.11A, *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program.*

      v.      Institutional Supplement FLM 5212.07J, *Control Unit Programs.*

      vi.      Institutional Supplement FLM 5321.07(1)B, *General Population and Step-Down Unit Operations.*

      vii.      Institutional Supplement FLM 5321.07(4)A, *High Security Adult Alternative Housing Program.*

b.      The development and activation of the following units for mental health treatment:

      i.      A secure mental health unit at the United States Penitentiary in Atlanta, Georgia.

      ii.      A second secure mental health unit at the United States Penitentiary in Allenwood, Pennsylvania.

      iii.      A Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program at the United States Penitentiary, High Security, in Florence, Colorado.

c.      The undertaking of the following significant initiatives:

      i.      The development and implementation of privilege incentive programs for inmates housed at ADX.

      ii.      The continued use and enhancement of an at-risk recreation program to identify inmates who are not participating in any recreation programs, attempting to educate them on wellness, and encouraging their participation in a structured recreation program.

      iii.      Constructing, maintaining, and employing facilities for group therapy at ADX.

      iv.      Constructing, maintaining, and employing areas for private psychological and psychiatric counselling sessions in all housing units at ADX.

v.     Changes to the manner in which telepsychiatry is conducted at ADX to allow those sessions to take place in private without the presence of correctional officers.

vi.     The screening of all inmates housed at ADX as of August 2014, to determine, among other things, whether the inmates have a mental illness.  This included a screening record review of all inmates and in-depth clinical interviews of approximately 130 inmates by outside psychiatrists and non-ADX Bureau psychologists.

vii.     Clarifying that psychotropic medications will be available to any inmate for whom such medication is prescribed, regardless of the inmate's housing assignment (i.e., Control Unit)

viii.     Taking steps to ensure that inmates receiving psychiatric medications at the ADX are seen by a psychiatrist, physician, or psychiatric nurse every ninety (90) days, or more often as clinically indicated for, at a minimum, the first year.

ix.     Taking steps to ensure that the screening and classification of inmates prior to, and when, they arrive at ADX, to ensure those inmates with mental illness are identified, provided accurate diagnosis, and assessed to determine the severity of any mental illness and any suicide risk.

x.     The development and implementation of procedures to ensure that Health Services notifies the psychiatrist, psychiatric mid-level provider, psychiatric nurse, or physician and Psychology Services of inmates who refuse or consistently miss doses of their prescribed psychotropic medications.

xi.     Health Services staff taking steps to ensure that psychotropic medications are prescribed so that they are distributed on pill line.

xii.     The periodic assessment of all inmates at ADX to determine whether mental illness has developed since the last screening.

xiii.     The use of mental health care levels as defined in Program Statement 5310.16, *Treatment and Care of Inmates with Mental Illness*, dated May 1, 2014, for classification of inmates housed at ADX.

xiv.     The exclusion of certain inmates with a Serious Mental Illness, as defined in the Bureau's Program Statement 5310.16, *Treatment and Care of Inmates with Mental Illness*, from ADX, except when extraordinary security needs exist; when extraordinary security needs exist, ensuring those inmates are provided treatment and care commensurate with their mental health needs, which includes the

development of an individualized treatment plan in accordance with the Policies.

xv.  Taking steps to ensure the prompt identification of inmates who develop signs or symptoms of possible mental illness while incarcerated at ADX, to permit timely and proper diagnosis, care, and treatment.

xvi.  Taking steps to ensure the reasonable access to clinically appropriate mental health treatment for all inmates with mental illness at ADX.

xvii.  Considering a commitment order under 18 U.S.C. § 4245, or other applicable statute or regulation, for inmates who have a need for, but who do not agree to participate in, a Secure Mental Health Unit or for a treatment program at a Medical Referral Center. An inmate's refusal to be designated to a Secure Residential Mental Health Unit or Medical Referral Center, or a court's denial of a commitment order, is not grounds or justification to house an inmate with a Serious Mental Illness at ADX. However, if a court denies commitment or determines that an inmate does not have a Serious Mental Illness, permitting that inmate to be placed at ADX if needed for security and safety reasons and providing treatment commensurate with his mental health care level.

xviii.  Housing certain inmates in need of inpatient psychiatric care (CARE4-MH) at a Medical Referral Center.

xix.  If an inmate with Serious Mental Illness who continues to be housed at ADX due to extraordinary security needs declines treatment consistent with his mental health care level, taking steps to develop and implement a treatment plan that includes regular assessment of the inmate's mental status, rapport-building activities, and other efforts to encourage engagement in a treatment process, and, at a minimum, a weekly attempt to engage the inmate.

xx.  Offering inmates with Serious Mental Illness who continue to be housed at ADX due to extraordinary security needs between 10 and 20 hours of out-of-cell therapeutic and recreational time per week consistent with their individualized treatment plan.

xxi.  Taking steps to support inmates with mental illness through creation of wellness programs and recreational activities, specialized training of staff, and care coordination teams.

xxii.  The development of procedures for heightened review of requests and referrals for mental health services.

6

xxiii.    Ensuring that any calculated use of force or use of restraints involving an inmate at ADX with a mental illness is applied appropriately to an inmate with such conditions, as set forth in the Policies.

xxiv.    The exclusion of mental health clinicians from participation as a use of force team member in a calculated use of force situation, other than for confrontation avoidance.

xxv.    The merging of the Bureau's Electronic Medical Record (BEMR) and Psychology Data System (PDS).

xxvi.    The staffing and hiring of 3 additional full-time psychologists, one psychiatric nurse, and one psychology technician.  One of the 3 additional full-time psychologist positions is to facilitate trauma-informed psychological programming (Resolve Treatment (Trauma) Coordinator).

xxvii.    The ADX Care Coordination and Reentry (CCARE) Team meeting monthly, pursuant to the applicable section ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*.

xxviii.    Taking steps to ensure the completion of a Mental Health Transfer Summary in BEMR/PDS every time an inmate with mental illness (CARE2-MH, CARE3-MH, and CARE4-MH) transfers out of ADX, pursuant to the ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*.

xxix.    Taking steps to ensure the collaboration of Psychology and Health Services staff, beginning no later than 12 months before an inmate's anticipated release with Community Treatment Specialist (CTS) regarding ADX inmates CARE2-MH or higher releasing to an residential re-entry center or home detention, pursuant to the applicable section of the ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*.

xxx.    Hiring a full-time Social Worker for FCC Florence, whose priority is those inmates housed at ADX and who provides Reentry Planning Services within 1 year of an inmate's projected release date, as appropriate, and pursuant to the applicable section of the ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*.

xxxi.    Taking steps to ensure that discipline is applied appropriately to inmates with Serious Mental Illnesses or Mental Illness, as set forth in the Policies.

7

xxxii.   Enhancing mental health training provided to Bureau staff.

6.   The Parties believe the Addendum is fair, reasonable, and adequate to protect the interests of all parties.

7.   Nothing in this Addendum requires Defendant to compel an inmate to accept treatment (including medication) for a mental illness over the inmate's objections; provided that this paragraph shall not limit or otherwise affect the rights or obligations of Defendant or any inmate under 18 U.S.C. § 4245.

8.   Nothing in this Addendum prevents the Defendant from modifying the above referenced Policies.  Defendant maintains its right to amend the Policies without approval of Plaintiffs.  However, during the Compliance Period (as defined in paragraph 36, below), the Defendant agrees that any modifications to these Policies will not diminish the standards for screening or standards for services and treatment specified in the Policies.  Defendant further agrees to inform Plaintiffs' counsel and the Monitor in writing in advance of any changes to the Policies during the Compliance Period.  Compliance with any revised policy or procedure that is consistent with the preceding sentences in this paragraph shall not be deemed a breach of this Addendum.  Any dispute concerning whether services, standards, or treatment provided to inmates have been diminished shall be resolved pursuant to the paragraphs set forth in  sections IX (**DISPUTE RESOLUTION) and X (ENFORCEMENT)** of this Addendum.

9.   The Parties acknowledge that certain documents in this case were produced subject to the Protective Orders entered by the Court, Docket Nos. 73, 85, 167, 213 (collectively, "the Protective Orders").  The Parties agree that the Protective Orders will remain in effect throughout the term of this Addendum.  The Parties further agree that any inmate-specific medical or psychology records previously produced or that are produced in connection with the implementation of this Addendum will be considered "Confidential"—whether or not they are so

8

marked—and subject to the Protective Orders.  At the conclusion of the Compliance Period, the procedures in Paragraph 18 of Docket No. 85 will apply to all documents covered by the protective order.

## II.  PRISON LITIGATION REFORM ACT (PLRA), 18 U.S.C. § 3626

10.     The Parties agree that this Addendum will be submitted to the Court for approval as provided below, and that it will not be effective until approved by the Court, following a hearing and a finding that it is fair, reasonable, and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

11.     The Parties agree that a finding by the Court that the Addendum is fair, reasonable, and adequate does not mean this Addendum is a "consent decree" under 18 U.S.C. § 3626(c)(1).

## III.  CLASS CERTIFICATION

12.     Class Certification.  For the purposes of this Addendum only, the Parties agree to the certification by the Court of a Plaintiff class regarding screening and a Plaintiff subclass regarding treatment of inmates with a Covered Mental Illness (as defined below), pursuant to Federal Rule of Civil Procedure 23(b)(2).

13.     Preliminary approval.  Following the execution of this Addendum, Plaintiffs will file an unopposed motion with this Addendum, requesting that the Court preliminarily approve this Addendum, and further requesting that upon such preliminary approval the Court will schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (hereinafter referred to as the "Fairness Hearing"), after which the Court will determine whether to grant its final approval of the Addendum.  That motion will include an unopposed request that the Court modify the order of reference in this case pursuant to 28 U.S.C. § 636 to permit Magistrate Judge

Hegarty (or his successor) to perform the duties set forth in paragraphs 50-51 and 85-86 of this Addendum.  At the same time, Plaintiffs will move for certification of the Class and Subclass defined above, with such Certification being for the purposes of this Addendum only and being conditional upon final approval of this Addendum.

14.     Notice of Proposed Class Action Settlement and Fairness Hearing.  Within thirty (30) days after the date on which the Court preliminarily approves this Addendum, the Bureau will hand-deliver a Notice of Proposed Class Action Settlement and Fairness Hearing (a copy of which is attached as Ex. A) to each inmate then-housed at ADX and to named Plaintiffs not at that time housed at the ADX, and will also provide a copy of the Notice to any inmate who arrives at ADX after the Notice is initially provided but prior to the time the Addendum is approved by the Court.  The language of the Notice has been agreed to by the Parties.  The Notice contains a brief description of the claims advanced by Plaintiffs and the Bureau's denial of liability for such claims, a summary of the terms of this Addendum, and information regarding the upcoming Fairness Hearing.  The Bureau shall bear the cost of distributing the Notice as required by this section.

15.     Class and Subclass.  The Screening Class and the Treatment Subclass are each defined in section **V**, **DEFINITIONS**.

16.     Upon certification of the Screening Class and Treatment Subclass, all the Screening Class and Treatment Subclass members will be bound by the terms of this Addendum subject to the limitations on the preclusive effect of this Addendum specified in paragraphs 73, below.

17.     The relief provided in this Addendum is for the benefit of all Screening Class and Treatment Subclass members.

## IV.   CLA – ACKNOWLEDGEMENT & ROLE

18.    The District Court in this case has held that the CLA has standing to pursue claims for declaratory and injunctive relief for inmates with mental illness housed at ADX. (Doc. 324.)  For the purposes of this Addendum only, Defendant does not object to the CLA's standing to pursue claims for declaratory and injunctive relief for inmates with mental illness housed at ADX

19.    Defendant shall distribute to all inmates at ADX, within thirty days from the Effective Date, a letter drafted by CLA, and approved by the Parties.  Generally, the letter will advise inmates that CLA is available, at the inmate's request, to represent inmates in connection with complaints concerning the implementation of this Addendum, and will provide CLA's contact information.  Defendant will provide CLA with the names and registration numbers of all inmates who arrive at ADX after the Effective Date and during the Compliance Period, to permit CLA to contact them and advise them of CLA's availability.  Such information shall be provided at the earliest practicable date, but in all events no more than 30 days after each such inmate arrives at ADX.

20.    CLA shall take reasonable steps to resolve any complaints it receives from inmates concerning the implementation of this Addendum in accordance with the provisions of the Protection and Advocacy for Individuals With Mental Illness Act, 42 U.S.C. §§ 10801, *et seq.*, and the paragraphs set forth in section IX, **DISPUTE RESOLUTION,** and section **X, ENFORCEMENT**.

21.    Except as specifically set forth in paragraph 73, below, this Addendum does not restrict the CLA's ability to seek remedies outside of this litigation on behalf of inmates with

mental illness or compromise the authority of CLA to pursue such remedies through other litigation, legal action, or other forms of advocacy.

## V.    DEFINITIONS

22.    The term "ADX" means the United States Penitentiary, Administrative Maximum, Florence, Colorado.

23.    The term "USP Florence" means the United States Penitentiary, High Security, Florence, Colorado.

24.    The term "FCC Florence" means the Federal Correctional Complex, Florence, Colorado.

25.    The term "Covered Mental Illness" means a mental disorder as defined in the most current edition of the *Diagnostic and Statistical Manual of Mental Disorders* that results in classification of the inmate as a CARE2-MH or higher.

26.    The term "Serious Mental Illness" is defined as in the Bureau's current Program Statement regarding the *Treatment and Care of Inmates with Mental Illnes*s.

27.    The Mental Health Care Levels are defined in the Bureau's current Program Statement regarding the *Treatment and Care of Inmates with Mental Illness*.

28.    The term "Serious Suicide Attempt" means an incident of serious self-harm coupled with suicidal intent that requires medical treatment.

29.    The term "Screening Class" means all persons who are confined at ADX at any time between the Effective Date and the last day of the Compliance Period.

30.    The term "Treatment Subclass" means all persons who are confined at ADX at any time between the Effective Date and the last day of the Compliance Period and have been

diagnosed by the Bureau or its representative personnel or contractors with a Covered Mental Illness, as defined in paragraph 25 above.

31.     "Secure Mental Health Unit," or "Secure Mental Health Program" means a residential psychology treatment program that provides mental health treatment for male inmates who (1) have a Serious Mental Illness, diagnosed by the Bureau; (2) do not require inpatient treatment, but have been classified as a CARE3-MH or as a CARE2-MH with SMI and in need of enhanced mental health treatment, and require intensive, specialized psychiatric services or psychological interventions in a residential setting; and (3) have a history of violent behavior resulting in a referral, or consideration for referral, to ADX Florence or a Special Management Unit (SMU).

32.     The term "Secure STAGES" means a residential, unit-based Psychology Treatment Program for inmates with Borderline Personality Disorder or Other Specified Personality Disorders, as diagnosed by the Bureau, who have a chronic history of self-injurious behavior or do not function effectively in a prison setting.

33.     The term "Legally Privileged Information" means information that is classified or implicates national security concerns or that is protected by one or more of the following privileges or doctrines:  the attorney-client privilege, the attorney work product doctrine, the law enforcement privilege, or the deliberative process privilege.

34.     The term "Effective Date" shall mean the date that the United States District Court for the District of Colorado (herein, the "Court") enters an Order pursuant to Federal Rules of Civil Procedure 23(e), finding the Addendum is fair, reasonable, and adequate, and thereby approves this Addendum.

35.     The term "Expiration Date" means the date upon which the parties' obligations and the Court's jurisdiction under this Addendum terminates as set forth in section VIII below.

36.     The term "Compliance Period" means the period of time starting on the Effective Date and ending on the Expiration Date.

37.     The term "Site Visit" shall mean a visit by the Monitor(s) to FCC Florence to visit either the ADX, the Secure STAGES Program at USP Florence, or both.

38.     The term "Monitored Initiatives" means all provisions of the policies and procedures, which are applicable to ADX and the Secure STAGES Program at USP Florence only, with respect to which the Monitor(s) will assess compliance pursuant to sections 43, 44 and 45, below.

## VI.     MONITORING & REPORTING

39.     The parties agree that Sally Johnson, M.D., and Jeffrey Metzner, M.D. will serve as co-Monitors in this action, to assess Defendant's compliance with the Monitored Initiatives. If Dr. Johnson or Dr. Metzner becomes unavailable to monitor Defendant's obligations under the Monitored Initiatives, the Parties shall, within 30 days, jointly decide whether to proceed with one monitor, or if both Dr. Johnson and Dr. Metzner become unavailable, the parties will jointly select one or two other Monitors.  If the Parties are unable to agree upon a replacement Monitor, the Court will appoint one after receiving one suggestion from each of the Parties and remaining Monitor, if any.

40.     The Monitor(s) shall not be liable for any claim, lawsuit or demand arising out of a Monitor's performance pursuant to this Addendum.

41.     Defendant agrees to pay all reasonable fees and costs incurred by the Monitors, subject to the Monitors complying with the appropriate payment procedures, up to a maximum

of 330 hours of work a year for Dr. Johnson (or any replacement expert who resides outside of the state of Colorado), and 290 hours of work a year for Dr. Metzner (or any replacement expert who resides within the state of Colorado).  The Monitor(s) will be paid an hourly rate of no more than $450.  In the event that the Monitor(s) reasonably believe that time in excess of the foregoing limitations will be necessary to complete the work contemplated by this Addendum, they shall notify the Parties, who will confer concerning the matter.  If the Parties are unable to agree on a modification of the foregoing limitations, Plaintiffs may file an appropriate motion with the Court, which may be granted for good cause shown.

42.    Except as may be provided in a separate Agreement signed by the Parties, the Monitor(s) shall only have access to, and shall only monitor Defendant's policy compliance with respect to, the ADX and the Secure STAGES Program at USP Florence.  Defendant intends to continue to house the Secure STAGES Program at USP Florence during the Compliance Period.  Defendant will provide Plaintiffs' counsel with advance notice if Defendant decides that it needs to move the program to a different institution.

43.    Monitoring:

a.    Monitoring at ADX:  The Monitor(s) will assess and report on Defendant's compliance with all of the following Monitored Initiatives at the ADX during the first two Site Visits and will assess and report on Defendant's compliance with any or all (as they deem appropriate) of the following Monitored Initiatives at the ADX during subsequent Site Visits:

i.    Application of the definition of Serious Mental Illness to mental disorders diagnosed by Defendant.  Pursuant to paragraph 26, above, Serious Mental Illness is defined as in the Bureau's current Program Statement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the Effective Date of this Addendum is located in section 1 of the Program Statement and section IV(F) of the ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*.

ii.    Screening

1. The screening of inmates pursuant to **Mental Health Care Levels**, **Psychology Intake Screening**, **Assignment and Change of Mental Health Care Level Assignment, ADX Referral Review Procedures**, and **Extended Restrictive Housing Reviews** sections of the Bureau's Program Statement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the Effective Date of this Addendum are sections 5, 6(c)-(e), 8(b)(2), 8(d), respectively.

2. The requirements concerning the screening of inmates pursuant to **Procedures for Assessment, Identification, and Referral** section of the ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the Effective Date of this Addendum is section IX.

iii. Exclusion

1. The requirement that inmates diagnosed with Serious Mental Illness, as determined by Defendant, are only designated to the ADX if the inmates have extraordinary security needs, as determined by Defendant, pursuant to the **SMU/ADX Exclusionary Criteria** of the Bureau's Program Statement regarding *Treatment and Care of Inmates with Mental Illness*, which at the time of this Addendum is section 8(c).

2. The requirement that inmates diagnosed with a Serious Mental Illness while housed at the ADX, as determined by Defendant, only remain at the ADX if the inmates have extraordinary security needs, as determined by Defendant, pursuant to the ADX exclusion criteria and ADX removal process sections of the Bureau Program Statement and ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*, which at the effective date of this Addendum are sections 8(e), and VII and X, respectively.

3. The requirement that inmates classified as CARE4-MH are not placed at, or are removed from, the ADX as provided in section X of the ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*.

4. The requirement that ADX inmates who, while housed at ADX, are diagnosed by Defendant as suffering from a Serious Mental Illness, and who do not have extraordinary

16

security issues as determined by Defendant, are referred to an alternative, appropriate placement outside ADX, pursuant to section X(E) of the ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*.

iv.   Treatment

1.   The requirement that inmates diagnosed with a Serious Mental Illness by Defendant and who must remain at the ADX due to extraordinary security needs are housed and treated in accordance with the **Treatment and Care for Inmates with Serious Mental Illnesses Remaining at ADX Due to Extraordinary Security Concerns** section of the ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*, which at the Effective Date of this Addendum is section XI(F).

2.   The following sections of ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*:  **Responsibilities**; **Mental Health Staffing**; **Team Approach to Care**;  **Individual Counseling/Therapy**; **Group Treatment**; **Psychiatric Services**; **Turning Point Protocol**; **Adjunctive In-Cell Therapeutic Activities**; and **Achievement Awards & Incentives**, which at the effective date of this Addendum are sections V-VI, VIII, XI(A)-(E), and XV.

3.   The *following* sections of Bureau Program Statement regarding the *Treatment and Care of Inmates with Mental Illness* as they are implemented at the ADX:  **Recovery-Oriented Program Model**; **Evidence-Based Practices**; **Team Approach to Care**; **Services for Inmates in Restrictive Housing**; **Mental Health Treatment Achievement Awards**; and **Continuity of Care Between Institutions**, which at the Effective Date of this Addendum are sections 3, 4, 7, 8(a), 12, and 13(b).

4.   Defendant's maintenance and use of suitable facilities for group therapy at ADX.

5.   Defendant's maintenance and use of suitable private areas for psychiatric and psychological consultation sessions in all units at ADX.

6.   The **Between Bureau Institutions** section of ADX Institutional Supplement regarding the *Treatment and Care*

17

*of Inmates with Mental Illness*, which at the effective date of this Addendum is section XVI(C).

7.   The **Behavioral Health Committee Meeting (BHCM)** section of ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the effective date of this Addendum is section XVI(B).

8.   The **Calculated Use of Force** section of ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the effective date of this Addendum is section XIV.

v.   Reentry Planning Services

1.   The following applicable sections of the Bureau Program Statement regarding *Treatment and Care of Inmates with Mental Illness* that pertain to **Reentry**, which at the effective date of this Addendum are sections 14(a)-(e).

2.   The following sections of the ADX Institutional Supplement regarding *Treatment and Care of Inmates with Mental Illness*: **Community Treatment Services**; and **Reentry Planning Services**, which at the effective date of this Addendum are sections XVI(D)-(E).

vi.   Discipline:  The inmate discipline section of the ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the effective date of this Addendum is section XIII, **Inmate Discipline**.

vii.   Suicide Prevention

1.   The following sections of the Bureau's Program Statement regarding the *Suicide Prevention Program*: 7, 8(a), 14(a), 14(d), and 15.

2.   The ADX Institutional Supplement regarding *Suicide Prevention Program*.

3.   The following sections of ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*: **Inmates Who Are Known to Require Special Precautions** and **Suicide Prevention**, which at the effective date of this Addendum are sections XVI(A), and (F).

viii.   Training:  The **Mental Health Training** section of ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the effective date of this Addendum is section XII.

ix.   Quality Improvement:  The **Quality Improvement** section of ADX Institutional Supplement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the effective date of this Addendum is section XVI(G).

b.   <u>Monitoring at Secure STAGES</u>:  The Monitor(s) will assess and report on Defendant's compliance with all of the following Monitored Initiatives at the Secure STAGES program during the first two Site Visits and will assess and report on Defendant's compliance with any or all (as they deem appropriate) of the following Monitored Initiatives at the Secure STAGES program during subsequent Site Visits:

i.   The following sections of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*: **Program Overview** and **Program Responsibilities**, which at the effective date of this Addendum are sections IV and V.

ii.   The requirement of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program* that only inmates affiliated with Secure STAGES program are allowed to live in the Program Unit, which at the effective date of this Addendum is the first sentence of subsection B(1) of section VI.

iii.   The requirement of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program* concerning community meetings, which at the effective date of this Addendum is subsection B(2) of section VI.

iv.   The provisions of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program* concerning Admission and Orientation, which at the effective date of this Addendum is subsection C of section VI.

v.   The following subsections of the **Conditions of Confinement** section of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*: **Residential Program Unit**, **Recreation**, and **Mental Health Care**, which at the effective date of this Addendum are subsections A, K, and T of section VI.

vi. The **Treatment Assessment Procedures** section of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, which at the effective date of this Addendum is section VIII.

vii. The **Treatment Phases**, **Program Completion**, **Program Withdrawals**, **Program Incompletes**, and **Program Expulsions** sections of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES)* Program, which at the effective date of this Addendum are sections IX, XII-XV.

viii. The **Security Levels** section of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, which at the effective date of this Addendum is section X.

ix. The **Psychology Treatment Program Achievement Awards** section of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, which at the effective date of this agreement is section XI.

x. Subsections C, E, and F of the **Secure STAGES Companions** section of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, which at the effective date of this Addendum is section XVI.

xi. The **Discipline Procedures** section of USP Florence's Institutional Supplement regarding the S*ecure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, which at the effective date of this Addendum is section XVIII.

xii. The Bureau's Program Statement regarding the *Suicide Prevention Program*, except that because sections 7(a), 7(b), 7(c) and 14(b) of that Program Statement do not apply to the Secure STAGES Program, they will not be monitored.

xiii. The **Program Participant Appeal Rights** section of USP Florence's Institutional Supplement regarding the S*ecure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, which at the effective date of this Addendum is section XIX.

xiv. The **Staff Training** section of USP Florence's Institutional Supplement regarding the S*ecure Steps Toward Awareness Growth*

*and Emotional Strength (STAGES) Program*, which at the effective date of this Addendum is section XX.

xv.    The **Inmate Monitoring Form** section of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, which at the effective date of this Addendum is section XXI.

xvi.    The **Reentry** section of the Bureau's Program Statement regarding the *Treatment and Care of Inmates with Mental Illness*, which at the effective date is section 14.

44.    With respect to both the ADX and the Secure STAGES Program, the Monitor(s) may access, review, and utilize other sections within the following Bureau Program Statements and Institutional Supplements to inform their assessment of the Defendant's compliance, where, when, and if applicable, with the initiatives identified in paragraph 43, above:

a.    Bureau Program Statement regarding *Psychiatric Services*.

b.    Bureau Program Statement regarding *Psychiatric Evaluation and Treatment*.

c.    USP Florence Institutional Supplement regarding *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*.

45.    In monitoring the Secure STAGES Program, the Monitor(s) shall not monitor and report on compliance with the conditions of confinement  provisions in section VI(D), (F)-(J), and (L)-(S) of USP Florence's Institutional Supplement regarding the *Secure Steps Toward Awareness Growth and Emotional Strength (STAGES) Program*, unless (1) Plaintiffs' counsel or the CLA has alleged that Defendant has substantially failed to comply with one of more of these sections, or (2) a Class or Subclass Member has raised, during a Site Visit, an issue that Defendant has substantially failed to comply with one of more of these sections.  In such circumstances, if the Monitor(s) agree that the alleged failures materially interfered with the effective delivery of mental health services to participants in the Secure STAGES Program, the

Monitor(s) may request access to records that the Monitor(s) reasonably determine are relevant to this issue, with the exception of Legal Privileged Information, which may be redacted.

46.     In the event that the Bureau modifies any Program Statement or Institution Supplement that sets forth any Monitored Initiative in a manner that affects section or paragraph references, the Monitor(s) will monitor the applicable provisions of revised document subject to the same monitoring subject matters and subject matter limitations set forth in paragraphs 43, 44 and 45, above.  For clarity, and as an example, if the Bureau revises its Program Statement regarding the *Treatment and Care of Inmates with Mental Illness* such that SMU referrals are addressed in a paragraph other than 8(b)(1), then the Monitor(s) shall not monitor the SMU referral section of the revised program statement, wherever it appears.  Likewise, if the revised Program Statement addresses the investigation of inmate suicides in section 8(b)(1) of the revised Program Statement, then the Monitor(s) will monitor the revised section 8(b)(1), notwithstanding the specific paragraph references in this Addendum.

47.     The Monitor(s) shall have access to the ADX as provided herein.  While inside the ADX, the Monitor(s) will be escorted by staff pursuant to the institution's standard security procedures.  While inside the ADX, the Monitor(s) may, upon request, be escorted into each housing unit other than the Special Security Unit and Units/Ranges exclusively housing inmates in the Special Security Unit Program, except as authorized in paragraphs 50 and 51, below. While inside the ADX, the Monitor(s) may also request to inspect Health Services, Psychology Services, the group therapy area, the tele-psychiatry area, the visiting room, and receiving and discharge.  While inside the ADX, the Monitor(s) may request and will have the ability to speak confidentially to any inmate who is not housed in the Special Security Unit or Units/Ranges exclusively housing inmates in the Special Security Unit Program; provided that if Defendant

reasonably believes that an inmate with whom the Monitor(s) wishes to communicate confidentially poses a serious risk of harm to Bureau staff members or the Monitor(s) that cannot be managed using procedures and facilities ordinarily used for confidential mental health consultations, then Defendant may employ security measures reasonably necessary to safeguard staff members and the Monitor(s), and in so doing the confidentiality of the communication shall be maintained to the greatest extent possible.  These visits will take place either in the confidential rooms in which therapy takes place, or, if not available in a particular unit, the visiting room.

48.     The Monitor(s) shall have access to USP Florence as specified in this paragraph. While inside USP Florence, the Monitor(s) may, upon request, be escorted into the unit that houses the Secure STAGES Program, Health Services, the visiting room, receiving and discharge and any other area at USP Florence that the Monitor(s) reasonably determine he, she or they need to visit to carry out their duties concerning the Secure STAGES Program.  While inside the Secure STAGES housing unit at USP Florence, the Monitor(s) will be escorted by staff pursuant to the institution's standard security procedures.  While in the Secure STAGES housing unit at USP Florence, the Monitor(s) may request and will have the ability to speak confidentially to inmates; provided that if Defendant reasonably believes that an inmate with whom the Monitors wishes to communicate confidentially poses a serious risk of harm to Bureau staff members or the Monitors that cannot be managed using procedures and facilities ordinarily used for confidential mental health consultations, then Defendant may employ security measures reasonably necessary to safeguard staff members and the Monitor(s), and in so doing the confidentiality of the communication shall be maintained to the greatest extent possible.

49.     There shall be no more than three Site Visits to FCC Florence per year.  On one such visit each year, only the FCC Complex Warden and the Supervisory Attorney, currently Jack Fox and Christopher B. Synsvoll, respectively, shall have prior knowledge of the date and time of the visit.  The Monitor(s) will coordinate the hours of the visits with Warden Fox and Mr. Synsvoll.  Each visit may last for up to four consecutive business days, if necessary.

50.     **Procedures applicable to the Special Security Unit and Any Unit/Range Housing Special Security Unit Program Inmates**.  For any Site Visit, if requested by the Monitor(s), the Monitor(s) will be brought into the "bubble area" of the Special Security Unit and will be permitted to look down the ranges, but not to communicate with any inmate at that time.  Magistrate Judge Hegarty (or his successor) may accompany the Monitor(s) on such a visit, and the Magistrate Judge will be permitted to enter the range on the Special Security Unit and to speak with any of the inmates there, unless such communication is prohibited by a Special Administrative Measure or an applicable court order.

51.     **Procedures applicable to inmates subject to Special Administrative Measures (SAMs), court-imposed communication restrictions, or who are subject to Bureau special security measures.**  Magistrate Judge Hegarty (or his successor) will also be permitted to conduct inmate interview(s) of inmates subject to Special Administrative Measures (SAMs), court-imposed communication restrictions, or who are subject to Bureau special security measures, unless prohibited by law or regulation.  Magistrate Judge Hegarty may seek input from the Monitor(s) before and after the interview.  These visits will be conducted in the visiting room area and will be subject to the monitoring terms of the SAMs.  The inmates selected for such interviews have the right to decline to consent to the interviews.

52.     The Monitor(s) will conduct a close-out meeting with Christopher Synsvoll and/or the Complex Warden, or their designees, and one or more representatives designated by Plaintiffs after each visit, which Plaintiffs' designees may attend in person if they are available, and otherwise by telephone.

53.     The Monitor(s) will be permitted to conduct a baseline visit within 120 days of their appointment.  This baseline visit may last for up to four business days.  The hours of the visit will be coordinate with Warden Fox and Mr. Synsvoll.  Defendant shall provide the Monitor(s) with an orientation to the ADX, and the Monitors may request additional information concerning background matters reasonably related to the Monitored Initiatives.  The Monitor(s) shall have access to all records during the baseline visit as set forth below.  The Monitor(s) may, upon request, meet one-on-one with inmates during the baseline visit.  The inmates selected for such meetings have the right to decline to consent to the meetings.  Upon the request of the Monitor(s) or any inmate, any such meeting shall be conducted confidentially; provided that if Defendant reasonably believes that an inmate with whom the Monitor(s) wishes to communicate confidentially poses a serious risk of harm to Bureau staff members or the Monitor(s) that cannot be managed using procedures and facilities ordinarily used for confidential mental health consultations, then Defendant may employ security measures necessary to safeguard staff members and the Monitor(s) but shall maintain the confidentiality of the communication to the greatest extent possible.

54.     Defendant will direct all employees to cooperate fully with the Monitor(s), subject to any restrictions set forth herein.

55.     Prior to any Site Visit during the Compliance Period,  Defendant will provide the Monitor(s) data and documents collected by Defendant to track compliance with the Monitored Initiatives.

56.     During the Compliance Period, the Monitor(s) shall also have reasonable access to the medical (BEMR) and psychology (PDS) records for Class and Subclass members housed at ADX or Secure STAGES at USP Florence and to additional records that the Monitor(s) reasonably determine are relevant to the Monitored Initiatives (such as disciplinary records, recreation logs, medication compliance records, and relevant information from inmates' Central Files), with the exception of Legal Privileged Information, which may be redacted, and documents relating to inmates assigned to the Special Security Unit Program.  The Monitor(s) may also make reasonable requests for additional reports and documents to be compiled from existing data.

57.     If documents are requested in conjunction with a Site Visit and the Monitor(s) requests the documents at least thirty (30) days prior to the visit, Defendant will provide these documents to the extent feasible within ten (10) business days prior to the visit.

58.     The Monitor(s) will be provided with and sign an acknowledgement form for the confidentiality and Privacy Act Protective Orders entered by the Court.  The Monitor(s) will keep the information he or she learns during the course of monitoring confidential as provided by those Orders, regardless of whether the information provided is specifically designated as confidential.  Excepting only in connection with proceedings to enforce the terms of this Addendum, the Monitor(s) shall not testify in any other litigation or proceeding with regard to any act or omission of Defendant or any of its agents, representatives, or employees related to

this Addendum, nor testify regarding any matter or subject that he or she may have learned as a result of his or her performance under this Addendum.

59.     Following each visit, the Monitor(s) will provide to the Parties with a joint written report concerning the Defendant's compliance with the Monitored Initiatives, which may be organized by those subject matter headings (e.g., Screening, Exclusion, Treatment, Reentry Services Planning, Discipline, Suicide Prevention, Training, Quality Improvement, and Secure STAGES).  Each report may also include additional advice, suggestions or proposals in the nature of quality assurance or quality improvement as the Monitor(s) deem appropriate.  The Monitor(s) will provide each report to the Parties in draft form for comment before finalizing the report, and will allow the Parties two weeks to comment.  These reports shall be written with due regard for the privacy interests of individual inmates and staff.

60.     To assess the current conditions, the Monitor(s) may review pertinent documents; interview necessary staff; and interview a sufficient number of inmates, all as determined by the Monitor(s) in his, her, or their reasonable discretion.  The Monitor(s) may independently verify representations from Defendant and examine supporting documentation, where applicable.  The Monitor's(s') Report may describe the steps taken to analyze conditions and implementation of the Monitored Initiatives, including documents reviewed and individuals interviewed, and the factual basis for each of the Monitor's(s') findings.  If the Monitor(s) reports that Defendant is not in compliance with any Monitored Initiative, the Monitor(s) shall make recommendations as to actions the Monitor(s) believes necessary to meet the terms of the provision or provisions.

61.     The report issued by the Monitor(s) shall not be admissible against Defendant or any current or former employee or contractor of Defendant in any other proceeding other than a proceeding related to the enforcement of this Addendum.

62.     Although Defendant will give full consideration to advice, suggestions, and proposals offered by the Monitor, all decisions concerning the specific diagnosis or assignment of mental health care-levels will be made by the Bureau's mental health providers in accordance with this applicable Bureau policies, including the Monitored Initiatives, and any applicable legal requirements.

63.     In the event that a suicide attempt or incident of self harm is determined by ADX to be serious, the event will be reported to the Monitor(s) within three (3) business days after it occurs.  At the time of the report, the Bureau shall provide the Monitor(s) with the Suicide Risk Assessment or other relevant medical record.  Upon request, the Bureau shall provide the Monitor(s) with additional information about the incident , with the exception of any Legally Privileged Information.  After consulting with the Defendant, the Monitor(s) may in his or her reasonable discretion provide copies of the documents to Plaintiffs' counsel.  Such documents will be considered "Confidential"—whether or not they are so marked—and subject to the Protective Orders previously entered by the Court.

64.     Any suicide will be reported to the Monitor(s) within three business days and will be investigated in accordance with Bureau policy.  The identity of the inmate will not be disclosed until the next of kin has been contacted or until seven days have elapsed since the death and reasonable efforts to locate the next of kin have failed.  All medical and psychological records about the inmate during the time he was housed at ADX shall be made available promptly to the Monitors.  In addition, Defendant shall provide to the Monitors all after-action, incident, and other internal reports, investigations or conclusions concerning the suicide, with the exception of any Legally Privileged Information, within three business days after such materials are completed.  After consulting with the Defendant, the Monitor(s) may in his or her reasonable

discretion provide copies of the documents to Plaintiffs' counsel.  Such documents will be considered "Confidential"—whether or not they are so marked—and subject to the Protective Orders previously entered by the Court.

65.     In the event that the Monitor(s) believe(s) that this Addendum unreasonably restricts his or her ability to monitor Defendant's implementation of the Monitored Initiatives , or to otherwise adequately perform the obligations imposed by this Addendum on the Monitor(s), the Parties agree to negotiate in good faith in an effort to remedy the Monitor's('s) concerns. Any such issues not resolved following such good-faith negotiations shall be resolved as specified by section IX, Enforcement, below.

## VII.   CONSTRUCTION AND IMPLEMENTATION

66.     Underlying Efforts and Collaboration.  This Addendum reflects the substantial, voluntary efforts by Defendant to enhance the mental health services available to the members of the Class and Subclass, and the initiatives developed in collaboration with Plaintiffs' counsel and experts.

67.     Initial Substantial Compliance.  Except where otherwise specifically indicated, Defendant shall achieve substantial compliance with all Monitored Initiatives by the time of the Baseline Visit.

68.     Communication to Bureau Staff.  Within 30 days following the Effective Date, Defendant shall communicate to Bureau employees, and any contractors involved in providing mental health treatment to inmates at the ADX or in the Secure Stages Program at USP Florence, the requirements set forth in this Addendum that are applicable to their respective jobs.

69.     Application to Transferred Inmates.  Nothing in this Addendum shall be deemed to limit any existing authority of Defendant to transfer inmates to other state or federal

jurisdictions.  If Defendant transfers any inmate who is a member the Screening Class or Treatment subclass and who is diagnosed with a Serious Mental Illness to a facility outside the District of Colorado, the Parties each reserve all of their respective rights and claims concerning the jurisdiction and powers of the United States District Court for the District of Colorado with respect to such inmate and specifically whether any failure to comply with the Policies during the time that inmate was housed at ADX or Secure STAGES constitutes a violation of this Addendum.

70.     <u>Admission, Waiver, and Sovereign Immunity</u>.   Neither this Addendum, nor any policies or procedures established thereunder, shall define any federal constitutional rights, be deemed an admission, or a waiver of sovereign immunity.

71.     <u>Governing Law</u>.  This Addendum shall be governed by federal law as enunciated or applicable in the Tenth Circuit, and to the extent that state law applies to any issue arising under, by the laws of the State of Colorado.

72.     <u>No Third Party Beneficiaries</u>.  No person or entity is intended to be a third-party beneficiary of this Addendum for purposes of any civil, criminal, or administrative action.  This Addendum is not intended to impair or expand the right of any person or entity to seek relief against Defendant or its officials, employees or agents for their conduct, except as specifically provided in this Addendum.  Moreover, the Parties will not contend that any of the provisions, policies, and procedures stated herein define clearly established constitutional rights of inmates. This Addendum is not intended to alter legal standards governing any such claims.  Accordingly, this Addendum is not intended to have any preclusive effect except between Plaintiffs, Screening Class Members and Treatment Subclass Members on the one hand, and Defendant on the other

hand, with respect to the relief provided for in this Addendum, other than as provided in paragraph 73, below.

73. <u>Legal Release</u>. Plaintiffs, the members of Screening Class and Treatment Subclass, and their heirs, administrators, representatives, successors, and assigns, and each of them hereby release, waive, acquit, and forever discharge the United States, the Federal Bureau of Prisons, and its employees in their official capacities from, and are hereby forever barred and precluded from prosecuting, any and all claims, causes of action, or requests for any injunctive or declaratory relief, including costs, attorneys' fees, expenses, and/or interest, whether presently known or unknown, that have been asserted in this litigation, or that pertain to the treatment of ADX inmates' mental health; provided that in no event shall this Release be deemed to release or otherwise affect in any way: (1) any claim for money damages; (2) any claim by any inmate for a judicial determination concerning the inmate's personal mental health diagnosis; or (3) any claim based in whole or substantial part on events occurring during the Compliance Period and that does not concern one of the Monitored Initiatives.

74. <u>Inmates Must Comply With Policies and Procedures</u>. This Addendum in no way waives or otherwise affects, limits or modifies the obligations of inmates to comply with Bureau regulations, Program Statements, and Institutional Supplements; or any current or future federal law governing the rights and obligations of incarcerated persons.

75. <u>Possible Conflict with Legal Obligations or Collective Bargaining Agreements</u>. Nothing in this Addendum shall be deemed to require or permit Defendant to violate the laws of the United States, or to violate any terms or conditions of any collective bargaining agreement to which Defendant is a party. Defendant is not aware of any conflict between any of the

provisions of this Addendum and any such law or collective bargaining agreement referred to in this section.

76.     Entire Agreement.  This Addendum shall constitute the entire integrated agreement of the parties; provided that the parties may enter into one or more separate agreements concerning any subject, which shall be enforceable according to their terms.  No prior contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for any purpose in this litigation or in any other proceeding.

77.     Successors and Assigns. This Addendum shall be applicable to, and binding upon, all Parties, their officers, agents, employees, assigns, and their successors in office.

78.     Partial Invalidity.  If any provision of this Addendum is declared invalid for any reason by a court of competent jurisdiction, said finding shall not affect the remaining provisions of this Addendum.

79.     Use of Addendum in Other Proceedings.  Neither the fact of this Addendum nor any statements contained herein may be used in any way, including in any other case or administrative proceeding, by any person, whether or not a party to this action, except that Defendant and its employees reserve the right to use this Addendum and the language herein to assert issue preclusion, res judicata, satisfaction, and release in other litigation matters seeking class or systemic relief regarding mental health services at ADX.

## VIII.  DURATION

80.     Defendant shall not move to terminate the parties' obligations and/or the Court's jurisdiction under this Addendum before the second anniversary of the Effective Date.

81.     Defendant shall not move to terminate the parties' obligations and the Court's jurisdiction under this Addendum at any time on or after the second anniversary and before the

third anniversary of the Effective Date, unless Plaintiffs consent, in advance, in writing. A motion filed pursuant to this paragraph may seek to terminate all or portions of the obligations under this Addendum. Defendant may request that the Parties meet and confer about termination or partial termination at any time. Plaintiffs will consider in good faith any request by Defendant to terminate made under this paragraph, will not unreasonably withhold their consent to such a request, and if they do withhold consent will provide Defendant with the reason(s) consent was withheld, stated in reasonable detail. In the event the parties are unable to reach agreement on a request or partial request to terminate under the paragraph, either party may invoke the dispute resolution procedures in section IX below.

82.     In the event that there is no motion filed and granted pursuant to the prior paragraph, the Parties' obligations under this Addendum and the Court's jurisdiction shall terminate on the third anniversary of the Effective Date; provided, however, that the Court may order a one-time, one-year extension of the Term of the Addendum (i.e., to a total term of four years from the Effective Date) for a specific obligation(s), upon a motion by Plaintiffs filed prior to the end of the three-year presumptive term. Such a motion may only be filed if the District Court has previously determined, based on a motion filed pursuant to paragraphs 92 or 93, below, that Defendant was not in substantial compliance during the first three years of the agreement, or if there is a pending appeal by Plaintiffs challenging the denial of such a motion. The parties will meet and confer prior to the filing of any such motion. In the event the parties are unable to reach agreement Plaintiffs' proposed motion, either party may invoke the dispute resolution procedures in section IX below. If the motion is granted by the Court, the one-year, one-time extension shall apply only to the specific obligation(s) that was/were the subject of the motion to enforce compliance. Under no circumstances will the term of any

33

provision of this Addendum, the parties' obligations thereunder, or the Court's jurisdiction extend beyond four years.

## IX.     DISPUTE RESOLUTION

83.     If Plaintiffs' counsel believes Defendant is not in substantial compliance with any Monitored Initiative and/or provision of this Addendum as it relates to a Class or Subclass member, Plaintiffs' counsel shall contact Christopher Synsvoll or successor, or his designee, by email or telephone in an effort to resolve the matter informally.

84.     If the foregoing informal effort does not resolve Plaintiffs' counsel's concerns within five (5) days, then Plaintiffs' counsel shall notify Defendant in writing of the specific reasons why they believe Defendant is not in substantial compliance, including a reference to any finding of the Monitor(s) if Plaintiffs are relying on those findings or opinions.  Defendant shall investigate and respond in writing within thirty (30) calendar days; provided that if Plaintiffs' counsel reasonably believe that an issue presents a substantial risk of death or serious injury, then Defendant shall investigate and provide a preliminary verbal response as soon as practicable and in all events within five (5) business days, and shall provide a written response as soon thereafter as is practicable.  Defendant's response shall contain a description of the steps it took to investigate the issues addressed in the notification, the results of the investigation and whether or not Defendant proposes corrective action (and if so, a specific plan for addressing the issues).

85.     If Plaintiffs' counsel contend that Defendant's response does not adequately resolve the issue, they shall request a prompt meet and confer with Defendant, unless the Parties have already met and conferred on such issue prior to Defendant's written response.  Either Party may request at any time that Magistrate Judge Hegarty, or his successor, participate in a meet

and confer, or in a meeting subsequent to a meet and confer, in order to facilitate informal resolution of the issue.

86.     If the Parties are unable to resolve informally a claim that Defendant is not in substantial compliance with one or more of the Monitored Initiatives or provisions of the Addendum, either side may seek mediation by Magistrate Judge Hegarty, or his successor, or by a private mediator, to mediate the dispute; or alternatively, may invoke the procedures in the "Enforcement" section, above.

87.     If the Court enters an order pursuant to paragraph 92 and Plaintiffs contend that Defendant has not complied with that order, the procedures in paragraphs 83-86, above, will apply.

## X.     ENFORCEMENT

88.     The parties stipulate and agree that this Addendum complies in all respects with the requirements for prospective relief under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a), and that Act shall govern the terms of this Addendum.  Except to enforce, modify, or terminate this Addendum, this Addendum, and any findings made to effectuate this Addendum, will not be admissible against the Bureau or its current or former employees in any court for any purpose.  Moreover, this Addendum is not an admission of any liability on the part of United States and/or its employees, agents, and former employees and agents, or any other persons, and will not constitute evidence of any pattern or practice of wrongdoing.

89.     This Addendum will be filed in the United States District Court as part of an unopposed motion by Plaintiffs pursuant to Federal Rule of Civil Procedure 23(e) and 41(a)(2) to approve this Addendum and to dismiss the Complaint subject to the parties' compliance with the terms of this Addendum, as contemplated by *Kokkonen v. Guardian Life Insurance Co. of*

*America*, 511 U.S. 375 (1994). This case will remain on the Court's inactive docket for the Compliance Period. The Court will retain jurisdiction only to enforce the terms of this Addendum.

90. The Court shall be the sole forum for enforcement of this Addendum. The Parties agree to continue to work collaboratively and in good faith to avoid enforcement actions. The Bureau agrees that Christopher Synsvoll, Supervisory Attorney at the Federal Correctional Complex, Florence, Colorado, will remain the principal point of contact for any enforcement-related issues, regardless of whether he later holds a different position within the Bureau. If Mr. Synsvoll is no longer employed as an attorney by the Bureau, the successor Supervisory Attorney at the Federal Correctional Complex in Florence will undertake this role.

91. The Parties agree that temporary or isolated incidents of non-compliance shall not constitute substantial non-compliance. The Parties also agree that Defendant is in substantial compliance unless there is evidence of something more than failure to comply with technicalities. However, the Parties agree that intermittent compliance during a period of sustained non-compliance shall not constitute substantial compliance.

92. If the Parties are unable to resolve informally a claim by Plaintiffs that Defendant is not in substantial compliance with one or more Monitored Initiatives or provisions of this Addendum pursuant to the procedures in the "Informal Resolution" section above, Plaintiffs, and only through counsel, may petition the Court to effect substantial compliance with such Monitored Initiatives or provision of this Addendum, but not through a petition for contempt, and only on the provision or provisions in which Plaintiffs claim Defendant is in substantial non-compliance through the dispute resolution process. Any relevant report of the Monitor(s) may be filed with the Court in connection with such a petition. The only issue before the Court will be

whether Defendant is or is not in substantial compliance with a specific provision or provisions of the Monitored Initiatives or this Addendum. No petition may raise any claim for money damages or any claim by any inmate for a judicial determination concerning the inmate's personal mental health diagnosis. If the Court determines that Defendant is not in substantial compliance, the Court may enter an order within the Court's equitable or inherent authority to remedy the substantial non-compliance, but Plaintiffs may not seek an order of contempt.

93.     If the Court enters an order pursuant to the preceding paragraph and Plaintiffs contend that Defendant has not complied with that order, they may, after reasonable notice to Defendant and an opportunity to cure, seek further relief from the Court. Reasonable notice shall include written notice providing specific facts and at least a 14-day time period to cure. Such further relief may include further equitable orders. Nothing in this paragraph purports to (i) limit the remedies or orders available to the Court in enforcing an order entered pursuant to the preceding paragraph; or (ii) waive the sovereign immunity of the United States.

## XI.     MODIFICATION

94.     If, at any time, any party to this Addendum desires to modify this Addendum for any reason, that party will notify the other party in writing of the proposed modification and the reasons for it thirty (30) days before filing any motion seeking a modification. No modification will occur unless there is written agreement by the parties and unless the Court approves the modification under Fed. R. Civ. P. 23.

## XII.     ATTORNEYS' FEES AND COSTS

95.     The Parties do not agree as to the prevailing party in this matter. Defendant maintains its position was substantially justified.

96.     Nevertheless, upon the Effective Date of this Addendum, Defendant will:

a.      pay the Washington Lawyers Committee for Civil Rights and Urban Affairs the sum of $30,424 to reimburse it for out-of-pocket expenses incurred and paid by that organization in connection with the Lawsuit, and make a separate lump sum payment of $73,704 to the Washington Lawyers Committee for Civil Rights and Urban Affairs to defray the attorneys' fees incurred by that organization in connection with the case; and

b.      pay Disability Law Colorado the sum of $5,500 to reimburse it for out-of-pocket expenses incurred and paid by that organization in connection with the Lawsuit, and make a separate lump sum payment of $48,217 to Disability Law Colorado to defray the attorneys' fees incurred by that organization in connection with the case; and

c.      pay Arnold & Porter LLP the sum of $3,692,155, which includes $880,297 to reimburse it for expert witness fees and other out-of-pocket expenses incurred and paid by that firm in connection with the Lawsuit.  Of this total amount, Arnold & Porter will request the Court to approve a transfer of a lump sum payment of $2,811,858 to the Arnold & Porter LLP Foundation, which funds various public interest legal services efforts using money recovered from its work on pro bono matters.

97.     Plaintiffs and their counsel agree not to seek further fees and costs with respect to work incurred prior to the Effective Date of this Addendum.

98.     The parties shall bear their own costs and attorney's fees for any subsequent proceedings following the Effective Date, other than Plaintiffs reserve their rights to seek fees and costs in only two circumstances:  (1) if Defendant files a motion to terminate this Addendum prior to the second anniversary of the Effective Date, or (2) Plaintiff files and prevails on a motion to enforce based on substantial non-compliance.

IT IS SO STIPULATED AND AGREED.

**For Plaintiffs:**

DATED: **11-11-2016**

Edwin P. Aro
Partner
Arnold & Porter LLP

DATED: _____

Deborah Golden
Project Director, D.C. Prisoners' Project
Washington Committee for Civil Rights and
Urban Affairs

DATED: _____

Mark Ivandick
Managing Attorney / Program Coordinator
Disability Law Colorado

IT IS SO STIPULATED AND AGREED.

**For Plaintiffs:**

DATED: _____

                                          _____
                                          Edwin P. Aro
                                          Partner
                                          Arnold & Porter LLP

DATED: __11 / 11 / 2016__

                                          Deborah Golden
                                          Project Director, D.C. Prisoners' Project
                                          Washington Committee for Civil Rights and
                                                Urban Affairs

DATED: _____

                                          _____
                                          Mark Ivandick
                                          Managing Attorney / Program Coordinator
                                          Disability Law Colorado

**IT IS SO STIPULATED AND AGREED.**

**For Plaintiffs:**

DATED: _____

                    Edwin P. Aro
                    Partner
                    Arnold & Porter LLP

DATED: _____

                    Deborah Golden
                    Project Director, D.C. Prisoners' Project
                    Washington Committee for Civil Rights and
                    *Urban Affairs*

DATED: _11/11/2016_

                    Mark Ivandick
                    Managing Attorney / Program Coordinator
                    Disability Law Colorado

**For Defendants:**

DATED: 11/10/16

Kathleen M. Kenney
Assistant Director / General Counsel
Office of the General Counsel
Federal Bureau of Prisons


DATED: 11/9/16

Amy L. Padden
Acting Executive Assistant U.S. Attorney
Deputy Chief, Civil Division
U.S. Attorney's Office, District of Colorado

40