IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 12-cv-01570-RPM-MEH

HAROLD CUNNINGHAM,
PERCY BARRON,
ALPHONSO BLAKE,
JABBAR CURRENCE,
CARLTON DUNBAR,
SCOTT FOUNTAIN,
SEAN GILLESPIE,
CHARLES HIPPS,
RONNIE HOUSTON,
JOHN LAMB,
HERBERT PERKINS,
JOHN J. POWERS,
ARNELL SHELTON, and
MARCELLUS WASHINGTON,
each individually and on behalf of all others similarly situated,
and
CENTER FOR LEGAL ADVOCACY ,
D.B.A. DISABILITY LAW COLORADO,

     Plaintiffs,
v.

FEDERAL BUREAU OF PRISONS,

     Defendant.
_____

ORDER APPROVING SETTLEMENT
_____

This civil action was initiated by a complaint filed on June 18, 2012, by counsel representing five inmates housed by the Federal Bureau of Prisons (BOP) in the United States Penitentiary, Administrative Maximum, Florence, Colorado ("ADX").[1] That institution was designed and built to house and control those prisoners considered by

---

[1] Five individual BOP officials were also named as defendants in their official capacities.

the BOP to be the most violent, dangerous or otherwise in need of the highest level of security available in any of the BOP facilities.  The plaintiffs claimed that the conditions of their confinement constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.  More particularly each of the named plaintiffs alleges that he has a mental and/or emotional condition requiring an appropriate diagnosis and treatment which he has not received and that there are others similarly situated for whom the plaintiffs are adequate representatives to seek declaratory and injunctive relief pursuant to Fed.R.Civ.P. 23(b)(2) and 23(c)(5).

The named defendants moved to dismiss the complaint on both procedural and jurisdictional grounds pursuant to Rules 12(b)(2) and 12(b)(6).  After briefing and hearing that motion was denied as to the BOP by an order entered on April 23, 2013, (Doc. 58).

The case came to issue on the Second Amended Complaint filed on June 15, 2015.  (Doc. 274).  The fourteen named plaintiffs, then current and former ADX inmates, seek sweeping injunctive relief concerning the diagnosis and treatment of mental illness among ADX inmates, asking the court to certify a class action consisting of all inmates who were as of June 18, 2012, are on June 15, 2015, and will in the future be confined at ADX and requesting implementation of a "constitutionally adequate program of mental health diagnosis and treatment.  (Doc. 274 at 194).  The main class is for screening and diagnosis for serious mental health issues of those prisoners assigned and who in the future will be assigned to ADX.  A sub-class is for treatment of those in ADX with a diagnosis of serious mental health conditions.

The Center for Legal Advocacy d/b/a Disability Law Colorado ("DLC") joined as a plaintiff, asserting standing as an association to represent the putative class and sub-class pursuant to its designation by the State of Colorado pursuant to the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act), 42 U.S.C. § § 10801, *et al.* The defendant challenged association standing of the CLA to represent inmates at the ADX in a motion for partial summary judgment. This court's Order of CLA Standing entered on November 3, 2015, (Doc. 324) addressed the defendant's legal objections in detail, holding that participation in this action for injunctive and declaratory relief was within the statutory mission of the CLA authorized by its Advisory Council and federally allotted funds were not being used. The Order also held that the CLA's actions need not be limited to representing those inmates who had requested representation.

Negotiations for settlement began early in this case. This Court authorized U.S. Magistrate Judge Michael Hegarty to mediate and facilitate those efforts, including participation in interviews with inmates at ADX.

The BOP was fully cooperative in permitting access to the ADX and to inmates not named as plaintiffs who would be members of the putative class and sub-class. Counsel for the Washington Lawyers' Committee for Civil Rights and Urban Affairs joined in the proceedings. Psychiatrists with extensive experience in prison conditions were enlisted as active consultants as were other attorneys with prison litigation experience.

Most notably, the BOP relaxed the adversarial stance taken in its early motions by providing records and information without the need for the use of formal discovery

rules. Additionally, the BOP voluntarily made program changes and established new diagnosis and treatment facilities at the United States Penitentiary, High Security, in Florence, the United States Penitentiary in Atlanta, Georgia, and the United States Penitentiary in Allenwood, Pennsylvania. Some of the named plaintiffs and other inmates have been transferred into those facilities.

These efforts to achieve amicable resolution of the issues raised by the plaintiffs are described in the Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Terms and Proposed Notice to the Class (Doc. 382).

Counsel for the parties agreed to delay proceedings to seek certification of the class and sub-class requested in the Second Amended Complaint to enable them to devote their resources to the settlement negotiations.

The ability of this Court to grant the relief requested, assuming adequate proof of Constitutional violations, is problematic given the jurisdictional limitations imposed by Congress by the enactment of the Prison Litigation Reform Act in 1996, now codified in 18 U.S.C. § 3626. ("PLRA"). There is some uncertainty as to whether class-wide relief can be granted because of the language in § 3626(a)(1) and the limited duration of prospective relief required in § 3626(b).

On November 16, 2016, the plaintiffs filed Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Terms and Proposed Notice to the Class (Doc. 382) with attachments setting forth the terms of a settlement agreement in Addendum to Joint Motion to Approve Settlement (Doc. 382-1) and 12 exhibits detailing policies and procedures to provide for diagnosis and treatment for prisoners in ADX and those to be

housed at ADX in the future.  Preliminary approval was given providing for notice and setting a fairness hearing required by Fed.R.Civ.P. 23(a).

Notice was given and the hearing was held on December 15, 16 and 19, 2016. The Court heard statements and testimony from the following witnesses by videotape:

>Ronnie Houston,
>Richie Antonio Hill,
>John Powers,
>Jabbar Currence,
>Carlton Dunbar,
>Herbert Perkins,
>Sean Gillespie,
>Percy Barron,
>Arnell Shelton,
>Marcellus Washington,
>Charles Hipps,
>Alphonso Blake, Jr.

A virtual tour of the ADX was presented.  Hundreds of exhibits were received.

To establish their claims of violations of the Eighth Amendment plaintiffs must prove by a preponderance of the evidence that they were subjected to "cruel and unusual punishment."  At the time of ratification of the Eighth Amendment in 1791, physical punishments which now would be considered inhumane were common.  The uncertainty as to what may be deemed cruel and unusual punishment was expressed by the Supreme Court in *Weems v. United States*, 217 U.S. 349 (1910) and in *Tropp v. Dulles,* 356 U.S. 86 (1957).  Chief Justice Warren, citing *Weems*, coined the phrase that has been often cited by the Court in subsequent opinions: "The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."  *Id.* at 101.

*Estelle v. Gamble,* 429 U.S. 97 (1976) set the standard for a claim of an Eighth Amendment violation based on a failure to address serious medical needs of a prisoner as deliberate indifference to serious medical needs.  To be considered serious, the medical need must be diagnosed by a physician as mandated treatment or be so obvious that even a lay person would easily recognize the need for a doctor's attention. *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir. 2001).

When the inmate's need for treatment results from a mental or emotional disorder the application of these standards is difficult and that difficulty is increased by the need for enhanced security based on the criminal conduct of the convicted prisoner. The motion to dismiss the original complaint challenged the sufficiency of the factual allegations of each plaintiff to meet the law's requirements.

The defendant has not admitted an Eighth Amendment violation as to any of the plaintiffs or a systemic violation at ADX.  The BOP has agreed to the settlement not as redress for previous wrongs but as a recognition of the need for new policies and practices that will better humanize the lives of those confined at ADX with mental illness and the staff that attends them.

The video recorded statements of inmates presented at the fairness hearing gave graphic details of their experiences at the Control Unit in ADX which range from disturbing to disgusting.  Those statements have not been subjected to the adversarial process and the defendant does not concede the accuracy of what has been described. The statements do support a finding that this is a triable case.  The complexities of such a trial are evident.  That is a principal reason for the settlement of this action.

Approval of the settlement agreement requires a determination that it is fair, reasonable and adequate. Plaintiffs' counsel has presented objections received from class members in the recorded statements and in writings received from others. Letters from Carlton Dunbar and Scott Fountain were read into the record by Mr. Aro and the objections of Alphonso Blake,Jr., Sean Gillespie and Marcellus Washington were played from the videos.

Those objections are two-fold. One is that the inmates should receive money damages for what they have endured. Counsel did not include a damages claim in the Second Amended Complaint for the obvious reason that such a claim against the BOP is barred by sovereign immunity. *FDIC v. Meyer,* 510 U.S. 471 (1994). There can be no damage award for medical negligence under the Federal Tort Claims Act, 28 U.S.C. § § 2671, *et seq.* in a class action because the requirements of commonality and typicality in Rule 23(a) are not met. Additionally the common questions of law or fact do not predominate over questions affecting individual members as required by Rule 23(b)(3).

Some of the class members apparently believe that damages could be awarded under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). That would require proof that an individual BOP official acted or failed to act with deliberate indifference to the plaintiff's need for medical care with knowledge that he was violating clearly established law.[2] That, too, is a remedy for an individual and is not subject to class certification.

---

[2]It would be difficult to recover against an individual defendant, given the expansive view of qualified immunity prevalent in this circuit.

Some objectors think it is unfair that the settlement provides for payment of attorney's fees and costs but no payment to inmates. The amounts to be paid under the settlement are much less than would be awarded under a lodestone analysis of the time spent, difficulties encountered and unusual services required for this representation.

The second category of objections made is that someone should be held accountable for the conditions of their confinement. This court has no jurisdiction to impose damages or any sanction on the staff or supervisors at ADX. Even if this case went to trial and evidence was presented as to the conduct of certain corrections officers, there could be no redress against them. A trial would also provide an opportunity to present evidence of inmates' abuse of staff, manipulative conduct and malicious acts.

This settlement is a singular achievement. The programs, policies and staffing that has been and will be implemented will advance understanding of the complex relationship between criminal conduct and mental illness and provide some measure of human dignity to the confinement of those who have been shown to be too dangerous to live with others in an open population penal institution.

The adequacy of the settlement terms to effectively diagnose and treat mental illness is not within the competence of the Court and is not a finding required to be made under Rule 23(e). The ADX is not a mental hospital. What is required is a finding that these programs and policies are expected to reasonably respond to the complex problem of balancing the need for severe restrictions on liberty with a humane consideration of mental illness causing aberrant conduct.

The settlement is not an admission by either side of what is required by the

Constitution. It may not be used to support or defend an individual claim of liability against a BOP official or employee in a *Bivens* action which any inmate may pursue.

A settlement agreement is a contract. Different from most contracts there is an enforcement mechanism which has been negotiated providing for a possible future court involvement with the retention of jurisdiction as a condition of a voluntary dismissal of this civil action under Rule 41(b)(2).

The results that may be achieved by implementing the terms of the settlement agreement will depend upon the willingness of those who are responsible for instituting and abiding by these policies and programs in good faith and the extent to which the tension between inmates and staff is reduced.

The settlement agreement meets all of the requirements of Rule 23(e) and is approved.

So Ordered.

DATED: December 29, 2016

                                  BY THE COURT:

                                  s/Richard P. Matsch

                                  _____
                                  Richard P. Matsch, Senior District Judge